# **EXHIBIT 1**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

1

The Honorable Thomas S. Zilly

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                  AT SEATTLE

9   CHERYL BISHOP,                          No. C18-00599-TSZ

10                   Plaintiff,             DEFENDANT'S RESPONSES AND
                                            OBJECTIONS TO PLAINTIFF CHERYL
11              v.                          BISHOP'S FIRST SET OF DISCOVERY TO
                                            DEFENDANT
12   JEFF SESSIONS, ATTORNEY GENERAL,
     DEPARTMENT OF JUSTICE, ALCOHOL,
13   TOBACCO, FIREARMS & EXPLOSIVES,

14                   Defendant.

15

16          Defendant Jefferson Sessions, in his official capacity, ("Defendant"), by and through his

17   attorneys, Annette L. Hayes, United States Attorney for the Western District of Washington, and

18   Priscilla T. Chan and Sarah K. Morehead, Assistant United States Attorneys for said District,

19
     pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, provides the following
20
     objections and responses to Plaintiff's First Set of Discovery to Defendant.
21

22          GENERAL OBJECTIONS

23   1.     Defendant objects to Plaintiff's First Set of Discovery to the extent it seeks information

24   that is privileged from disclosure, including information and documents protected by the

25   attorney-client privilege and the attorney work-product doctrine.  Defendant also objects to these

26   interrogatories and document requests as duplicative to the extent they request information that

27

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 1

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant has already disclosed or provided as part of Defendant's Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1).

2.     Defendant objects to these discovery requests to the extent they seek to impose duties or obligations that exceed the requirements of the Federal and Local Rules of Civil Procedure.

3.     Defendant objects to these discovery requests to the extent they seek information or documents that are not available to Defendant, or that are already known, possessed by, or equally available to Plaintiff, or that are not in the custody or control of Defendant.

4.     Defendant objects to the definitions provided by Plaintiff to the extent that any given definition is broader or narrower than the generally understood definition of a given word.

5.     Defendant objects to Plaintiff's multiple requests seeking "all," "any and all," "each and every document," or the like on the grounds that such a blanket statement and request lacks any specificity, is overbroad, unduly burdensome, disproportionate to the needs of the case and potentially requires Defendant to expend unnecessary resources to obtain information and/or documents responsive to this interrogatory.  *In re eBay Seller Antitrust Litig.*, 2008 WL 521270 at *2 (N.D. Cal., Dec. 11, 2008); *see also In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal., Oct. 28, 1985).  A party cannot be forced to prepare his opponent's case or make investigations for his adversary.  *See Territory of Alaska v. Artic Maid, et al.*, 135 F.Supp.164 (D. Alaska 1955).

6.     Defendant provides these responses based upon his present knowledge, information and belief, and after a reasonable inquiry. Defendant, however, has not completed discovery or trial preparation in this case and reserves his right to amend, correct, or supplement these responses.

7.     Defendant is continuing to gather information and reserves his right to revise, correct, add to, supplement and clarify any of the following responses.

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 2

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      By responding to Plaintiff's requests in as full and complete a manner as possible, Defendant does not waive the general and specific objections set forth herein, and all general objections are incorporated by reference.

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**   Please produce all communications and other documents pertaining to Complainant's temporary assignment to ATF headquarters in Washington, D.C., in 2016, that is reflected in **Exhibit A** to these requests, including but not limited to all communications, offers, memoranda, instructions, approvals, authorizations, notifications, and denials.

        **RESPONSE:**  Defendant objects to this request as overly broad in scope and not narrowly tailored as there is no limitation as to the time frame or parties to the requested "all communications" and "other documents."  Furthermore, Defendant objects to the extent the request seeks documents protected by the attorney client privilege and work product doctrines.

        Notwithstanding Defendant's objections and without waiving same, see produced documents Bates numbered PROD-00001-374; 390-401; 482-759; 766-1352.

**REQUEST FOR PRODUCTION NO. 2:**   Please produce all policies, procedures, protocols, and guidelines pertaining to an ATF Canine Handler's responsibilities for maintaining his or her Canine on a daily, weekly, and monthly basis, including but not limited to the number of hours required for training, feeding, testing, and all other duties.

        **RESPONSE:**  Defendant objects to this request as overly broad in scope and not narrowly tailored as there is no limitation as to the time frame or to documents that pertained to plaintiff.  As such, the request seeks irrelevant documents and it is not proportional to the needs of the case.

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 3

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Notwithstanding Defendant's objections and without waiving same, see produced

2    documents Bates numbered PROD-712-715; 1010-1015; 1572-1599.

3

4    **REQUEST FOR PRODUCTION NO. 3:**   Please produce all policies, procedures, protocols,

5    and guidelines pertaining to the assignments or responsibilities an ATF Canine Handler may be

6    assigned while maintaining his or her Canine Handler's responsibilities, including any limits or

7    restrictions on such additional assignments or responsibilities, the length of such assignments or

8    responsibilities, and the identity (name and job title) of the persons who had the authority to

9    waive, modify, or change any such restrictions, limits, or responsibilities.

10   **RESPONSE:**  Defendant objects to this request as overly broad in scope and not

11   narrowly tailored as there is no limitation as to the time frame or to documents that pertained to

12   plaintiff.  As such, the request seeks irrelevant documents and it is not proportional to the needs

13   of the case.

14   Notwithstanding Defendant's objections and without waiving same, see produced

15   documents Bates numbered PROD-00001-374; 390-401; 482-759; 766-1352, 1572-1599.

16

17   **INTERROGATORY NO. 1:**  For each ATF Canine Handler who has been given assignments

18   or responsibilities in addition to his or her Canine Handler's responsibilities since January 1,

19   2011, please identify their:

20      (a)     Name;

21      (b)     The specific non-Canine handling assignments or responsibilities;

22      (c)     Beginning and ending dates of such assignment or responsibilities;

23      (d)     Number of hours per week that the assignment or responsibilities required (or

24      range of hours, if it varied);

25      (e)     The Agent's job location as a Canine Handler;

26      (f)     The location(s) of each non-Canine Handler assignment or duties;

27

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 4

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(g)     The name and job title of the ATF official who approved the non-Canine
        Handler's additional assignment or duties while the Canine Handler maintained
        his or her Canine-Handling duties;

(h)     The Race of the Canine Handler;

(i)     All protected activity within the meaning of anti-discrimination laws (e.g., Title
        VII, ADEA, ADA, etc.) that the Canine Handler engaged in before receiving the non-
        Canine handling assignments or responsibilities, and when.

**ANSWER:** Defendant objects to this interrogatory as overly broad in time as this interrogatory seeks information from January 1, 2011 to the present, which well exceeds the period of time which is relevant to this complaint, wherein the relevant time period is April to June 2016. Defendant further objects to this interrogatory as vague and lacking specificity as to "assignments and responsibilities" in addition to Canine Handler responsibilities. Defendant additionally objects to this interrogatory as overly broad in scope, irrelevant, and not proportional to the needs of the case to the extent this interrogatory requests "assignments or responsibilities" that were not promotional detail assignments to non-canine handler positions. The allegations in this complaint relate to Plaintiff's allegation that the terms of a one-year promotional temporary detail assignment to a non-canine handler position were changed by management. Thus, any type of "assignments or responsibilities" other than promotional detail assignments to non-Canine Handler positions are not relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

Defendant responds to this interrogatory, limiting it to non-canine handling assignments or duties that took on average of two (2) or more hours of the work day in addition to canine handling duties extending a minimum of 120 days.

The following Special Agent Canine Handler (SACH) performed non-canine handling assignments or duties that took on average of two (2) or more hours of the work day which extended for a minimum of 120 days in addition to SACH duties:

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 5

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Scott Dvorak (race: white; no prior EEO activity): From mid-June 2015 to February 19,

2    2017, while assigned as a SACH in the Billings, Montana Field Office, SACH Dvorak was the

3    Special Agent On the Job Training (OJT) Instructor to new Special Agents (SAs) in the Billings

4    Field Office because he was the only senior Special Agent in the Billings Field Office.  The

5    number of SAs SACH Dvorak was assigned to as Special Agent OJT Instructor ranged from 2-4

6    SAs throughout the time period.  This additional duty took an average of 6-8 hours a day,

7    depending on the workflow of the office.  The duties were assigned to SACH Dvorak by former

8    Resident Agent in Charge Ken Bray, Billings Field Office, and Assistant Special Agent in

9    Charge Ron Humphries, Denver Field Division.

10   **REQUEST FOR PRODUCTION NO. 4:**   Please produce all documents pertaining to the non-

11   Canine Handling assignments or responsibilities of the ATF Canine Handlers that you identify in

12   your answer to Interrogatory 1 above (or that are responsive to Interrogatory even if you failed to

13   provide them in your answer).

14       **RESPONSE:**   Defendant objects to this request for production as overly broad in time as

15   it seeks information from January 1, 2011 to the present, which well exceeds the period of time

16   which is relevant to this complaint, wherein the relevant time period is April to June 2016.

17   Defendant further objects to this request as vague and lacking specificity as to the non-Canine

18   Handling "assignments and responsibilities."  Defendant additionally objects to this request as

19   overly broad in scope, irrelevant, not proportional to the needs of the case, and not likely to lead

20   to the discovery of admissible evidence to the extent it requests "assignments or responsibilities"

21   that were not promotional detail assignments to non-canine handler positions.  The allegations in

22   this complaint relate to Plaintiff's allegation that the terms of a one-year promotional temporary

23   detail assignment to a non-canine handler position were changed by management.  Thus, any

24   type of "assignments or responsibilities" other than promotional detail assignments to non-

25   Canine Handler positions are not relevant, nor reasonably calculated to lead to the discovery of

26   admissible evidence.

27

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 6

Case No. C18-00599-TSZ

1    Without waiving those objections, Defendant responds to this request, limiting it to non-

2    canine handling assignments or duties that took on average of two (2) or more hours of the work

3    day in addition to canine handling duties extending a minimum of 120 days.  The Agency does

4    not have any responsive documents.

5    **REQUEST FOR PRODUCTION NO. 5:**  Please produce a photograph of Bradford I. Devlin's

6    tattoo(s) of an S.S. Eagle, swastika, or other symbols or words associated with white supremacy

7    or race or national origin.

8         **RESPONSE:**  Defendant objects to this request for production as irrelevant and not

9    likely to lead to the discovery of admissible evidence.  Furthermore, to the extent that this

10   request asks the Agency to search and review all photographs in its possession to determine if

11   any depict any such tattoo, such a request is overly broad, unduly burdensome, and not

12   proportional to the needs of the case.  Without waiving those objections, the Agency responds

13   that it is not aware of any responsive photographs.

14   **INTERROGATORY NO. 2:**  Please identify every communication (oral or written) between

15   Brad Devlin and any other person about Cheryl Bishop from January 1, 2016 to the present,

16   stating the name and job title of each person participating or present, the date and who said what.

17        **ANSWER:**  Defendant objects to this request as overly broad in scope and not narrowly

18   tailored because this request seeks the identification of "every communication" between Mr.

19   Devlin and any other person about Plaintiff, and is not limited in scope as to the subject matter of

20   the communication.  Defendant further objects because this overly broad request is not relevant

21   or proportional to the needs of the case.  Notwithstanding those objections and without waiving

22   same, see produced documents Bates numbered PROD-0000473-481.

23   **REQUEST FOR PRODUCTION NO. 6:**  Please produce every written communication

24   between Brad Devlin and any other person about Cheryl Bishop from January 1, 2016 to the

25   present all documents and all documents pertaining to the communications identified in your

26   response to the preceding interrogatory, or to communications that are responsive to the

27   preceding interrogatory.

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 7

Case No. C18-00599-TSZ

1    **RESPONSE:**  Objection.  Defendant objects to this request as overly broad in scope and

2    not narrowly tailored because this request seeks the identification of "every communication"

3    between Mr. Devlin and any other person about Plaintiff, and is not limited in scope as to the

4    subject matter of the communication.  Defendant further objects because this overly broad

5    request is not relevant or proportional to the needs of the case.  Notwithstanding its objections

6    and without waiving same, see documents produced in response to Interrogatory No. 2.

7    **INTERROGATORY NO. 3:**  Please identify each communication pertaining to Cheryl

8    Bishop's temporary assignment outlined in **Exhibit A** hereto, since the date that it was first

9    explored by the ATF, including each participant, the date, the location, and who said what.

10    **ANSWER:**  Defendant objects to this interrogatory as overly broad as to scope and not

11    narrowly tailored.  Notwithstanding its objection and without waiving same, see ROI, Ex. 8, pp.

12    128-129, Qs 14-18 (Declaration of Celinez Nunez); Ex. 8a, pp. 135-36; Ex. 8b, p. 138; Ex. 10,

13    pp. 151-51, Q 14 (Declaration of Michael Gleysteen), Ex. 10a, p. 159; Ex. 10b, pp. 161-62; Ex.

14    10c, p. 164; Ex. 11, p. 168-69, Qs 14-18 (Declaration of Douglas Dawson); Ex. 11a, pp. 175-76;

15    Ex. 11b, pp. 178-179; Ex. 12, p. 183, Qs 14-17 (Declaration of Roger Beasley); Ex. 12a, pp. 190-

16    94; Ex. 12b, pp. 196-216; Ex. 12c, pp. 218-219; Ex. 12d, pp. 221-22; Ex. 21e, pp. 224-52; Ex.

17    12f, pp. 254-55; Ex. 12g, pp. 257-62; Ex. 12h, pp. 264-89; Ex. 12i, p. 291; Ex. 12j, pp. 293-96;

18    Ex. 12k, pp. 298-306; Ex. 12l, pp. 308-16; Ex. 13, pp. 320-21, Qs 14-18 (Declaration of Donald

19    Robinson).  See also response to document Request for Production No. 1 and documents

20    produced in response to that request.

21    **INTERROGATORY NO. 4:**  Please produce all documents pertaining to Cheryl Bishop's May

22    3, 2016 Memo that is **Exhibit B** to these discovery requests, including all communications,

23    notes, memoranda, investigation files and records, and reports.

24    **ANSWER:**  Defendant objects to this request as overly broad in scope and not narrowly

25    tailored.  Defendant additionally objects to the extent it calls for information protected by the

26    attorney client and attorney work product privileges or otherwise calls for attorney impressions.

27    Defendant also objects to the extent the information called for is sensitive and confidential

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 8

Case No. C18-00599-TSZ

1    personnel information, the production of which would infringe on the legitimate, reasonable

2    privacy interest or would otherwise implicate the provisions of the Privacy Act, 5 U.S.C. § 552,

3    as EEO complaints are contained in an agency system of records.  Moreover, the Agency objects

4    that this request calls for information that is law enforcement sensitive.  Notwithstanding its

5    objections and without waiving same, see produced documents Bates numbered PROD-1-7; 366-

6    370; 375-387; 402-434; 468-472; 746-755; 760-765; 770-792; 807-894; 1237-1315; 1347-1348;

7    1350-1352.

8    **INTERROGATORY NO. 5:**  Please identify each EEO Complaint filed against Bradford I.

9    Devlin, Michael Gleysteen, Donald G. Robinson, Douglas R. Dawson, Raphael Martinez, John

10   Ryan, or Celinez Nunez, by stating the case number, the date the charge was filed, the protected

11   class of the complainant alleged in the complaint, the illegal conduct alleged in the complaint,

12   and the specific outcome of the complaint (e.g., pending, settlement terms, outcome of hearing or

13   trial, etc.).

14        **ANSWER:**  Defendant objects to this interrogatory as overly broad in time as it seeks all

15   EEO complaints filed against the identified individuals, and is not limited by any time period.

16   Defendant also objects to this interrogatory as overly broad in scope as it seeks all complaints of

17   discrimination and is not limited to those protected bases (race and reprisal for opposing

18   discriminatory practices) or the same alleged illegal conduct asserted by Plaintiff in her

19   complaint.  Thus, any information as to complaints of discrimination beyond Plaintiff's two

20   asserted bases of discrimination or the alleged illegal conduct are not relevant nor reasonably

21   calculated to lead to the discovery of admissible evidence.  Defendant additionally objects to the

22   extent the information called for is sensitive and confidential personnel information, the

23   production of which would infringe on the legitimate, reasonable privacy interest or would

24   otherwise implicate the provisions of the Privacy Act, 5 U.S.C. § 552, as EEO complaints are

25   contained in an agency system of records and the EEO process is confidential.

26        Notwithstanding those objections and without waiving same, Defendant responds to this

27   interrogatory, limiting its response to EEO complaints filed from August 1, 2012 to the present

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 9

Case No. C18-00599-TSZ

against Bradford Devlin, Michael Gleysteen, Donald Robinson, Douglas Dawson, Raphael Martinez, John Ryan, and Celinez Nunez, wherein claims were raised on the same bases as Complainant (race and reprisal) or the same alleged illegal conduct (alleged change in terms of detail, workplace harassment and defamation of character), and responds as follows:

| RMO | Case Number | Date Complaint Filed | Protected class(es) alleged in complaint | Illegal Conduct alleged | Outcome |
|---|---|---|---|---|---|
| Douglas Dawson | ATF-2016-00924 | 8/31/16 | Race | Reassignment, Harassment | Pending |
| Douglas Dawson | ATF-2016-00909 | 9/24/16 | Race, Age | Promotion/Non Selection, Disciplinary Action | No finding. |
| Bradford Devlin | ATF-2016-00924 | 8/31/16 | Race | Reassignment, Harassment | Pending |
| Bradford Devlin | ATF-2018-00227 | 3/12/18 | Race, Reprisal | Harassment | Pending |
| Michael Gleysteen | ATF-2015-01961 | 7/15/15 | Reprisal, Age | Appointment/Hire | No finding. |
| Michael Gleysteen | ATF-2016-00126 | 12/24/15 | Reprisal | Other Hostile Work Environment | Settlement |
| Michael Gleysteen | ATF-2016-00924 | 8/31/16 | Race | Reassignment, Harassment | Pending |
| Michael Gleysteen | ATF-2016-00556 | 7/8/16 | Reprisal, Race | IA Investigation, Hardship Denied | Pending |
| Michael Gleysteen | ATF-2016-00175 | 1/19/16 | Reprisal, Sex, Age | Harassment, Promotion/Non Selection, Reassignment (Directed), Hostile Work Environment | Pending |
| Michael Gleysteen | ATF-2017-00370 | 2/13/17 | Reprisal, Sex, National Origin, Disability | Reassignment | Settlement |
| Michael Gleysteen | ATF-2017-01010 | 9/25/17 | Race | Termination | Pending |
| Celinez Nunez | ATF-2018-00227 | 3/12/18 | Race, Reprisal | Harassment | Pending |
| Celinez Nunez | ATF-2016-00909 | 9/24/16 | Race, Age | Promotion Non-Selection, Disciplinary Action | No finding |
| Celinez Nunez | ATF-2016-00924 | 8/31/16 | Race | Reassignment, Harassment | Pending |
| Raphael Martinez | ATF-2016-00924 | 8/31/16 | Race | Reassignment, Harassment | Pending |
| Donald Robinson | ATF-2017-00680 | 6/15/17 | Reprisal, Disability | Reasonable Accommodation | Settlement |

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF DISCOVERY TO DEFENDANT - 10

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Donald Robinson | ATF-2017-00370 | 2/13/17 | Reprisal, Sex, National Origin, Disability | Reassignment | Settlement |
| Donald Robinson | ATF-2016-00924 | 8/31/16 | Race | Reassignment, Harassment | Pending |
| Donald Robinson | ATF-2014-00628 | 7/14/14 | Reprisal, Disability | Reasonable Accommodation | No finding |
| John Ryan | ATF-2016-00924 | 8/31/16 | Race | Reassignment, Harassment | Pending |

**REQUEST FOR PRODUCTION NO. 7:** For each EEO complaint filed against the ATF officials identified in the preceding interrogatory, please produce a copy of the EEO Complaint, each declaration of the official identified in the preceding interrogatory, and the document(s) reflecting fully the outcome of the case (e.g., settlement agreement, verdict).

**RESPONSE:** Defendant objects to this request for production as overly broad in time as it seeks all EEO complaints filed against the identified individuals, and is not limited by any time period. Defendant also objects to this request for production as overly broad in scope as it seeks all complaints of discrimination and is not limited to those protected bases (race and reprisal for opposing discriminatory practices) or the same alleged illegal conduct (alleged change in terms of detail, workplace harassment and defamation of character) asserted by Plaintiff in her complaint. See ROI, Ex. 1, p. 24. Thus, any information as to complaints of discrimination beyond Plaintiff's two asserted bases of discrimination or the alleged illegal conduct are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant additionally objects to the extent the information called for is sensitive and confidential personnel information, the production of which would infringe on the legitimate, reasonable privacy interest or would otherwise implicate the provisions of the Rehabilitation Act as the requested documents contain confidential medical information of third-parties, and the provisions of the Privacy Act, 5 U.S.C. § 552, as the requested information is contained in an agency system of records and the EEO process is confidential. Defendant further objects to this request to the extent it seeks settlement agreements, as irrelevant and not likely to lead to the discovery of admissible evidence.

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 11

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Notwithstanding its objections and without waiving same, Defendant responds to this

2    request for production, limiting its response to EEO complaints filed from August 1, 2012 to the

3    present against Bradford Devlin, Michael Gleysteen, Donald Robinson, Douglas Dawson,

4    Raphael Martinez, John Ryan, and Celinez Nunez, wherein claims were raised on the same bases

5    as Plaintiff (race and reprisal) or the same alleged illegal conduct (alleged change in terms of

6    detail, workplace harassment and defamation of character), to include the complaint, the

7    declaration of the official identified in the preceding interrogatory and the document(s) reflecting

8    the outcome of the case, with the exception of settlement agreements.  <u>See</u> produced documents

9    Bates numbered PROD-00001650-1989

10   **REQUEST FOR PRODUCTION NO. 8:**   Please produce Cheryl Bishop's complete

11   personnel file, and all logs showing who has accessed it since January 1, 2016.

12       **RESPONSE:**  Defendant objects to this request as irrelevant, and not likely to lead to the

13   discovery of admissible evidence.  Defendant also objects to this request to the extent the

14   requested information contains sensitive and confidential third-party information, the production

15   of which would implicate the provisions of the Privacy Act, 5 U.S.C. § 552, *et. seq*.

16   Notwithstanding its objections and without waiving same, see produced documents Bates

17   numbered PROD-00001353-1571.

18   **REQUEST FOR PRODUCTION NO. 9:**  Please produce all documents (including official

19   photographs) and communications relating to Canine Handler selection, orientation, training, and

20   graduation of Canine Class #104.

21       **RESPONSE:**  Defendant objects to this request for production as overly broad, irrelevant

22   and not likely to lead to the discovery of admissible evidence.  The requested documents relating

23   to the Canine Handler selection, orientation, training, and graduation of Canine Handler Class

24   #104, which occurred from approximately May to September 2013 are not relevant to the

25   allegations in this complaint.  The allegations in this complaint do not relate to the selection,

26   orientation, training, or graduation of Plaintiff or her Canine Handler Class in 2013.

27   Additionally, this request is overly broad as to scope in that is seeks "all documents and

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 12

Case No. C18-00599-TSZ

1    communications," is not narrowly tailored, and is not proportional to the needs of the case.

2    Defendant also objects to the extent the requested information may contain law enforcement

3    sensitive information.

4    **REQUEST FOR PRODUCTION NO. 10:**  Please produce all documents showing the

5    presence or absence of John F. Ryan at each annual re-certification testing of Canine Handlers

6    since 2014, including but not limited to communications, travel documents, and photographs.

7          **RESPONSE:**  Defendant objects to this request for production as irrelevant and not

8    likely to lead to the discovery of admissible evidence.  The requested documents – whether John

9    Ryan was present or absent at the annual Canine Handler recertification since 2014, to include

10   communications, travel documents, and photographs – are in no way related to the allegations in

11   Plaintiff's complaint.

12   **REQUEST FOR PRODUCTION NO. 11:**  Please produce all Reporting Instructions and

13   Enforcement Operational Plans from 1996-1998 for the Special Response Team (SRT) of which

14   Michael Gleysteen was Team Leader.

15         **RESPONSE:**  Defendant objects to this request for production as irrelevant, not

16   proportional to the needs of the case and not likely to lead to the discovery of admissible

17   evidence.  The requested documents – the reporting instructions and enforcement operational

18   plans form 1996-1998 for the Special Response Team for which Michael Gleysteen was the

19   leader – are in no way related to the allegations in this complaint.  Moreover, this request is

20   overly broad in scope as to time as the events in the accepted issue occurred in 2016, and this

21   document request seeks documents from 1996 to 1998, which is 18 to 20 years before the

22   allegations at issue.  Defendant further objects to this request to the extent the requested

23   documents contain law enforcement sensitive information.

24   **REQUEST FOR PRODUCTION NO. 12:**  Please produce a copy of the entire working file

25   of any expert witness who may testify at trial including, but not limited to:

26         (a)      All documents provided or supplied to the expert by the defendants or their

27                   attorney(s) or agent(s).

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 13

Case No. C18-00599-TSZ

(b)     All documents independently obtained or collected by the expert, or any person acting on the expert's behalf.

(c)     All notes, raw data or other documents generated or created by the expert, or any person acting on the expert's behalf.

(d)     All documents reflecting the hiring, retention, and payment of the expert, including billing information, employment contracts, and communications.

(e)     A current curriculum vitae or resume for the expert.

(f)     Any written report, summary, conclusion, or other work of any kind rendered by the expert or reflecting the expert's opinions or conclusions.

(g)     All drafts of any report disclosed in this case.

(h)     All communications between the expert and defendants or their attorney(s) or agent(s).

**RESPONSE:**  Defendant does not have any responsive documents.  Defendant will supplement this response in accordance with the Court's schedule for producing reports by experts with the information required by the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 6:**  Please identify each person who may testify as an expert witness at trial and the facts, information and data upon which the expert will rely in rendering his/her testimony and all opinions to which the expert is expected to testify and all grounds or bases for each such opinion.

**ANSWER:**  Defendant has not identified any expert witnesses at this time.  See also Response to RFP 12.

**REQUEST FOR PRODUCTION NO. 14:**  Please produce all documents pertaining to each factor or consideration in Michael Gleysteen's:  (1) 2017 change in job position from Assistant Director for the Office of Field Operations to Special Agent in Charge of the Nashville Field Division (as announced in a November 1, 2017 Special Message from the Acting Director); and (2) purported retirement from ATF.  Your production should include, but not be limited, to all communications, complaints, investigations, agreements, notices, interviews, memoranda,

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 14

Case No. C18-00599-TSZ

1  reports, and discipline--whether or not they reflect the final reason for these actions.  Your

2  production should *not* include his wage and insurance information, standard notices and routine

3  new job orientation and assignment information.

4      **RESPONSE:**  Defendant objects to this request as not relevant or reasonably calculated

5  to lead to the discovery of admissible evidence to the extent it seeks documentation unrelated to

6  Plaintiff's allegations as stated in her complaint.  Defendant also objects because the request is

7  not proportional to the needs of the case.  Defendant further objects to this request to the extent

8  the requested information contains sensitive and confidential third-party information, the

9  production of which would implicate the provisions of the Privacy Act, 5 U.S.C. § 552, *et. seq*.

10  **REQUEST FOR PRODUCTION NO. 15:**  Please produce all documents pertaining to

11  Associate Deputy Director Ronald Turk's public remarks about Cheryl Bishop to the Seattle

12  Field office in 2016 during which he issued a coin to her, including a copy of his prepared

13  remarks and notes and all information and documentation supplied to him to prepare his remarks

14  about Cheryl Bishop.

15      **RESPONSE:**  <u>See</u> produced documents Bates numbered PROD-0000388-389; 435-467;

16      1316-1346.

17  **REQUEST FOR PRODUCTION NO. 16:**  Please produce all documents related to EEO

18  Investigation ATF-2018-00227 into Agent Bishop's most recent complaint, including but not

19  limited to ATF's draft or final version of Report of Investigation, all documents collected, all

20  requests for documents, all signed and unsigned declarations or affidavits (in draft and final

21  form), all findings, all communications, and all requests for information or documents.

22      **RESPONSE:**  Defendant objects to the extent this request seeks documents protected by

23  the attorney client privilege and/or work-product doctrine.  Without waiving those objections,

24  see produced documents Bates numbered PROD-00001237-1315; 1600-1649; 1971-2121.

25  //

26  //

27  //

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 15

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    DATED this 9ᵗʰ day of November, 2018.

2                                        Respectfully submitted,

3                                        ANNETTE L. HAYES
                                         United States Attorney
4

5                                        s/ *Priscilla T. Chan*
                                         PRISCILLA T. CHAN, WSBA #28533
6

7                                        s/ *Sarah K. Morehead*
                                         SARAH K. MOREHEAD, WSBA #29680
8                                        Assistant United States Attorneys
                                         United States Attorney's Office
9                                        700 Stewart Street, Suite 5220
                                         Seattle, Washington 98101-1271
10                                       Phone: (206) 553-7970
                                         Email: Priscilla.Chan@usdoj.gov
11                                       Email: Sarah.Morehead@usdoj.gov

12                                       Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 16

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    **VERIFICATION**

2        I, Katherine Bolton, Deputy Associate Chief Counsel (Litigation), Bureau of Alcohol,

3    Tobacco, Firearms and Explosives, being duly sworn, deposes and says:

4        1.    I have read the Defendant's interrogatory responses contained in Defendant's

5    Objections and Responses to Plaintiff's First Set of Discovery to Defendant.

6        2.    The factual information sought by the interrogatories is not within the personal

7    knowledge of any one employee or several employees of defendant.

8        3.    Information necessary to answer these interrogatories seeking factual information

9    was based on information from various sources within ATF or as provided by Plaintiff.

10       4.    I have no firsthand knowledge of the facts, but after a diligent search of ATF's

11   materials, and consultation with the appropriate personnel, I state under penalty of perjury

12   pursuant to 28 U.S.C. § 1746, that to the best of my information and belief, the factual

13   information contained in Defendant's interrogatory responses is true and correct.

14

15

16   DATED this 26th day of November, 2018.

17

18

19

20                                          Katherine Bolton

21

22

23

24

25

26

27

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 17

Case No. C18-00599-TSZ

1

<u>CERTIFICATE OF SERVICE</u>

2

3       I hereby certify that I am an employee in the Office of the United States Attorney for the

4       Western District of Washington and am a person of such age and discretion as to be competent to

5       serve papers;

6       I hereby certify that on this date, I sent the foregoing Defendant's Responses and

7       Objections to Plaintiff's First Set of Discovery to Defendant, Privilege Log and disc containing

8       documents numbered PROD_00000001 - 1990, to the following recipient by e-mail and by

9       United States first class mail, postage pre-paid:

10
            Jesse Wing
11          MacDonald Hoague & Bayless
            705 Second Avenue, Suite 1500
12          Seattle, Washington 98104
            Tel: 206-622-1604
13          Email: JesseW@MHB.com

14
        DATED this 9th day of November, 2018.
15

16
                                    _s/ Julene Delo_____
17                                  JULENE DELO, Legal Assistant
                                    United States Attorney's Office
18                                  700 Stewart Street, Suite 5220
                                    Seattle, Washington 98101-1271
19                                  Phone:  206-553-7970
                                    Fax:  206-553-4067
20                                  Email:  julene.delo@usdoj.gov

21

22

23

24

25

26

27

DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF DISCOVERY TO DEFENDANT - 17

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE,WASHINGTON 98101
(206) 553-7970

# __EXHIBIT 2__

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

I think once you speak to Beesley you will be in a better position to make a decision

Sun, Jun 19, 10:54 AM

Hi Cheryl, I know you're still trying to make your decision on what do with your TDY. Just to give you heads up, according to Doug, if we get a second Dog it will be for Portland, which makes sense since we are starting the CGIC there.

If we get the a March class the only spot you will be looking at upon



#68
DEPOSITION
EXHIBIT
NUNEZ
PENGAD 800-631-6989

June 19th, 2016

Hi Cheryl, I know you're still trying to make your decision on what do with your TDY. Just to give you heads up, according to Doug, if we get a second Dog it will be for Portland, which makes sense since we are starting the CGIC there.

If we get the a March class the only spot you will be looking at upon your return will be Portland

I want to give you everything that might play out in order for you to make an informed decision

**Wed, Jun 29,** 12:12 PM

Are you around?

I'm in Main Justice this week. About to take a break from the class. Wanted to talk to you regarding your status of your TDY?

I'm around – free now for call

Yes

Celinez – please let Dawson known – yes, I am still interested in the TDY but am waiting to hear back from AD

break from the class.
Wanted to talk to you
regarding your status of
your TDY?

Yes

I'm around – free now for call

Celinez – please let
Dawson known – yes, I
am still interested in the
TDY but am waiting to
hear back from AD
Beasley who advised me
to wait because he
wished to confer again
with AD Gleysteen.

Delivered

I will let him know

# **<u>EXHIBIT 3</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

1

1                    UNITED STATES OF AMERICA
              EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
2                    SAN FRANCISCO DISTRICT OFFICE

3
      CHERYL BISHOP,              )
4                                 )
              Complainant,        )
5                                 ) EEOC No. 550-2017-00322X
       -vs-                       )
6                                 ) Agency No.
      JEFF SESSIONS,              ) ATF-2016-00924
7     ATTORNEY GENERAL,           )
      DEPARTMENT OF JUSTICE,      ) Administrative Judge
8     ALCOHOL, TOBACCO,           ) Marianna Warmee
      FIREARMS & EXPLOSIVES,      )
9                                 )
              Agency.             )
10

11

12          The deposition of CELINEZ NUNEZ, called for

13   examination pursuant to the Rules of the Code of

14   Federal Regulations for the United States and the

15   Management Directive of the Equal Employment

16   Opportunity Commission pertaining to the taking

17   of depositions for discovery purposes and/or

18   evidence at hearing, taken before Maribeth

19   Reilly, a Certified Shorthand Reporter, within

20   and for the State of Illinois, at 303 West

21   Madison Street, Suite 2600, Chicago, Illinois, on

22   October 6, 2017, commencing at the hour of

23   10:08 a.m. (CST).

24

1          A.     Correct.

2          Q.     There were times when you were not in

3    the office together, though; is that right?

4          A.     Correct.

5          Q.     And so you'd communicate by phone?

6          A.     By phone.

7          Q.     By texts?

8          A.     By both, phone and text, yes.

9          Q.     Was that -- and by email?

10         A.     By email, as well.

11         Q.     Was that true of the other officers in

12   the Seattle field office?

13         A.     Yes.

14         Q.     Those were three common ways of

15   communicating?

16         A.     Yes, absolutely.

17         Q.     Did you have a conversation with

18   Mr. Devlin in which he said to you that he was

19   disappointed that Cheryl Bishop was going to a

20   headquarters detail?

21              MS. MENG:  Objection.

22                 You may answer.

23              THE WITNESS:  I don't recall that

24   conversation.

1     I was 21 years old without experience and a

2     brand-new agent and a female.

3                    So to answer your question, did I

4     feel that I was treated differently?  Yes.  But

5     it could be a variety of those reasons.

6          Q.    Do you think you have ever witnessed

7     agents of ATF making comments about other agents

8     or just, in general, that you consider derogatory

9     based on their sex or their race or their origin?

10                   MS. MENG:  Objection.

11                   You may answer.

12                   THE WITNESS:  I have never experienced

13    it.  I don't think they would say it in front of

14    me because I am a minority myself.

15                   Do they say it?  Possibly, but not

16    in front of me.  And if they have, I don't recall

17    because I would recall being offended, and I

18    don't recall being offended.

19    BY MR. WING:

20         Q.    What, if anything, did you do to

21    collect documents, texts, or emails or other

22    documents to supply to ATF to produce to us in

23    this lawsuit?

24         A.    Well, when I got the email from Katie,

1   I believe, or someone from the EEO branch to

2   preserve anything I had, I did.  I went into my

3   email and looked for as much email that I could

4   possibly find related to this, made a file, and

5   put as much emails as I possibly can in there.

6                   Text messages, I knew I wasn't

7   going to get because I had lost my phone three

8   times in the past two years, and I lost

9   everything from phone numbers, photographs and

10  everything.  So I know getting text messages

11  would be out of the question.

12                  But I tried at least with the

13  emails and put a folder and going back and

14  putting names and see what pops up and trying to

15  get as much as I possibly can.

16      Q.    That was in Microsoft Outlook?

17      A.    Yes.

18      Q.    Those emails?

19      A.    Yes.

20      Q.    Have you had any communications with

21  Doug Dawson about Cheryl Bishop since you have

22  become SAC in Chicago?

23      A.    No, I have had very little

24  communications since I became SAC in Chicago with

```
 1              UNITED STATES OF AMERICA
        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
 2            SAN FRANCISCO DISTRICT OFFICE

 3
   CHERYL BISHOP,              )
 4           Complainant,      )
             -vs-             ) No. 550-2017-00322X
 5   JEFF SESSIONS,           ) Agency No.
     ATTORNEY GENERAL,         ) ATF-2016-00924
 6   DEPARTMENT OF JUSTICE,    )
     ALCOHOL, TOBACCO,         ) Administrative Judge
 7   FIREARMS & EXPLOSIVES,    ) Marianna Warmee
                              )
 8            Agency.          )

 9        I, CELINEZ NUNEZ, being first duly sworn,

10   on oath say that I am the deponent in the

11   aforesaid deposition taken on October 6, 2017;

12   that I have read the foregoing transcript of my

13   deposition, consisting of testimony pages

14   1 - 230, and affix my signature to same.

15

16              CELINEZ NUNEZ

17

18

19

20
     Subscribed and sworn to
21   before me this  17  day
     of   December     , 2017.
22

23

24   Notary Public
```

232

```
 1   STATE OF ILLINOIS    )

 2                        )   SS:

 3   COUNTY OF DU PAGE     )

 4

 5        I, MARIBETH REILLY, a notary public within

 6   and for the County of DuPage County and State of

 7   Illinois, do hereby certify that heretofore,

 8   to-wit, on October 6, 2017, personally appeared

 9   before me, at 303 West Madison Street, Chicago,

10   Illinois, CELINEZ NUNEZ, in a cause now pending

11   and undetermined before the Equal Employment

12   Opportunity Commission, San Francisco District

13   Office.

14        I further certify that the said CELINEZ

15   NUNEZ was first duly sworn to testify the truth,

16   the whole truth and nothing but the truth in the

17   cause aforesaid; that the testimony then given by

18   said witness was reported stenographically by me

19   in the presence of the said witness, and

20   afterwards reduced to typewriting by

21   Computer-Aided Transcription, and the foregoing

22   is a true and correct transcript of the testimony

23   so given by said witness as aforesaid.

24        I further certify that the signature to the
```

233

1    foregoing deposition was reserved by counsel for

2    the respective parties and that there were

3    present at the deposition the attorneys

4    hereinbefore mentioned.

5        I further certify that I am not counsel for

6    nor in any way related to the parties to this

7    suit, nor am I in any way interested in the

8    outcome thereof.

9        IN TESTIMONY WHEREOF:  I have hereunto set

10   my hand and affixed my notarial seal this 8th

11   day of November, 2017.

12

13

14

15

16

17           NOTARY PUBLIC, DU PAGE COUNTY, ILLINOIS

18           C.S.R. No. 084-002306

19

20

21

22

23

24

```
 1 |  (C. Nunez   10/6/17 - Bishop v. ATF)

 2 |                    ERRATA SHEET

 3 |  PG/LN                    CORRECTION

 4 |  78 / 21 Change from: Correct
 5 |                            Per cousel's advice, I forwarded complaint's memo
     |        Change to: to IAD without discussing with Mr. Devlin.

 6 |  82/ 11 Change from: So I called him, you know, that day.

 7 |        Change to: I don't recall if I called him the same day of the
     |        memo being on my desk.

 8 |  82 /13/14 Change from: So it was not only the memo that prompted me
     |                        to call him but also the conversation that I had with him.

 9 |        Change to: The only conversation I recall having with Mr. Devlin
     |        was after speaking with complaint. As stated on page
10 |        Change from: 78/21, I believe I forwarded the memo without
     |                        further discussions with Mr. Devlin. I further
11 |        Change to: had a discussion with Mr. Devlin after receiving
     |        referral back from IAD.

12 |    /    Change from:

13 |        Change to:

14 |  87/ 1 Change from: Correct
15 |                     The second conversation with Mr. Devlin was
     |        Change to: after IAD returned the referral back
     |        as a management matter.

16 |    /    Change from:

17 |        Change to:

18 |  219/ 2 Change from: I have never seen it, No.

19 |        Change to: I had never seen it prior to the allegations.

20 |    /    Change from:

21 |        Change to:

22 |    /    Change from:

23 |        Change to:

24 |  WITNESS SIGNATURE:
```

# EXHIBIT 4

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel




U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Seattle Field Division*

www.atf.gov

May 3rd, 2016

2130.3
CDB

MEMORANDUM TO:   Special Agent in Charge
Seattle Field Division

THROUGH:   Assistant Special Agent in Charge
Seattle Field Division

FROM:   Cheryl D. Bishop
Seattle Group IV

SUBJECT:   Complaint of Workplace Harassment and Character Defamation

As outlined in ATF O 2130.3, this is submitted to report my concerns regarding a pattern of
workplace harassment, intimidation and personal character defamation by ATF Supervisor Brad
Devlin.

**BACKGROUND**
In 2009, I was assigned to Seattle Group V (Gang Group) in the Seattle Field Division. GS
Devlin was the Supervisor of the group. At that time, I was the only minority person of color
assigned and working in the group. During this time, GS Devlin sent emails to the Group V
mailbox containing references that made fun of ethnic minority groups, predominately African
Americans - to include President Barack Obama (see attached email examples). As the only
ethnic minority in the group, I believe GS Devlin was attempting to harass and intimidate me and
create a hostile work environment to induce me to leave the group. This is my belief because
prior to being assigned to Group V - I was told by Supervisory Special Agent Doug Krogh
(retired) that GS Devlin did not want me in Group V and did not particularly care for people of
color. *NOTE\* I believe an investigative retrieval of emails during the referenced time period
I was assigned to Seattle Group V, as well as time frames immediately preceding my transfer
to the group and then following my transfer out, would reveal additional correspondence and
communications by GS Devlin relevant to my claim of disparaging commentary toward ethnic
minorities and intentional actions of harassment.*



EXHIBIT NO. 43
10/4/17
C. CRUMP

On December 11th, 2009, and while assigned to Seattle Group V under GS Devlin, an incident occurred during which I perceived GS Devlin presented a physical threat of violence against me. I immediately verbally reported the incident to GS Devlin's Supervisor – ASAC Robert Levingston (retired) and followed up with a written email **(see attached email to ASAC Levingston dated 12/13/09)**. The following week ASAC Levingston verbally told me that he had spoken to GS Devlin about the incident. However, ASAC Levingston did not elaborate and gave no further details regarding his conversation with GS Devlin. Soon after this incident, SAC Kelvin Crenshaw (retired) requested I transfer out of Group V and assume duties as the PIO for the Seattle Division. Within a short time frame, GS Devlin received a previously requested and desired PCS to become a RAC in the Portland, Oregon field office. To my knowledge, the reported incidents of threatened physical violence, intimidation and harassment that occurred in 2009 were never reported or forwarded by ASAC Levingston to IAD or OPRSO.

In February, 2011 – a retirement function and gathering was held for ASAC Levingston in Seattle. At this event I observed RAC Devlin roll up the sleeve of his shirt and display a large Nazi swastika tattooed on his shoulder. I was standing a few feet away as RAC Devlin displayed the tattoo to Supervisor Michael Graham (formerly RAC in Anchorage Alaska) and a white female (I recall as being either Jodi Doane or Christie Goldsmith) from the Portland Field Office. As RAC Devlin was displaying the tattoo he looked over at me, made eye contact, turned back to the others – said something, laughed and then rolled down his sleeve.

The next day I spoke with former ASAC Charlie Smith and SAC Kelvin Crenshaw (retired) about RAC Devlin's display of the swastika tattoo. I told the ASAC and SAC that it was upsetting seeing a symbol of hate displayed like that by an ATF agent and that I found it not only offensive and disturbing but that it seemed highly inappropriate it was displayed in such a manner and place. ASAC Smith and SAC Crenshaw said they agreed and that ASAC Smith would speak with Devlin about it. ASAC Smith later told me that he had spoken with Devlin about the tattoo and that Devlin told him he got it for undercover work and that the undercover branch would not pay to have it removed. ASAC Smith further stated he (Smith) later contacted the undercover branch who advised the ASAC that their policy is that if a tattoo was obtained by an agent in furtherance of undercover work then they (undercover branch) would pay to have the tattoo removed. ASAC Smith said he advised RAC Devlin that the undercover branch would pay to have the tattoo removed. I have no knowledge if RAC Devlin still has the tattoo or if there were any further discussions about it.

**RECENT INCIDENT**
On April 21st, 2016, I was told by RAC Colleen Domenech (Portland Field Office) that RAC Devlin (now of the Eugene Field Office) had heard I was interested and/or applying for the upcoming RAC vacancy in Eugene and that RAC Devlin had been telling people I was unqualified to be a supervisor and that in Devlin's opinion I would be a "train wreck" for the Eugene Office. RAC Domenech further told me that RAC Devlin had been making disparaging comments about me and my qualifications to people both inside and outside of the agency.

On this same date, I sent an email to RAC Devlin asking him about the allegation that he had been making disparaging comments. RAC Devlin responded in an email that he did not know what I was talking about and that he had been asked by an AUSA about me and had told the

AUSA I "lacked street experience". RAC Devlin further replied that I may not agree but that was his opinion and he did not care what I thought. I replied to RAC Devlin that he did not know anything about me and that I had been working complex street investigations and T-IIIs (including the first multi-defendant T-III RICO initiated in Washington State) well before he was hired by the agency (see attached emails).

In summation; this is respectfully summited to summarize what I believe has been a long standing pattern of workplace harassment and character defamation perpetrated against me by Supervisor Brad Devlin. I believe the workplace harassment and attacks by Supervisor Devlin have been detrimental and damaging to me both professionally and personally. By submitting this information I hope that an investigation will be conducted into the totality and historical pattern of Supervisor Devlin's behavior and actions in accordance with ATF O 2130.3 and applicable Bureau policies, standards of professional conduct, behavior and Federal laws.

Cheryl Bishop



**Bishop, Cheryl D.**

| | |
|---|---|
| **From:** | Devlin, Bradford L. |
| **Sent:** | Thursday, November 05, 2009 11:43 AM |
| **To:** | Seattle V |
| **Subject:** | FW: |
| **Attachments:** | imagejpeg950.jpg |

Funny...

THAT'S GONNA BE A HARD PILL TO SWALLOW
MYLAN
OBAMACARE
Rx

**From:** Baldwin, Alaina [mailto:Alaina.Baldwin@seterus.com]
**Sent:** Tuesday, December 27, 2011 8:01 AM
**To:** Doane, Jodi R.; 'Debbie Cole'
**Subject:** FW: Merry Christmas from the Johnson's!

---

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged i information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this mes sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message acceptance and it is not intended to be all or part of an agreement.

---

**Bishop, Cheryl D.**

| | |
|---|---|
| **From:** | Devlin, Bradford L. |
| **Sent:** | Wednesday, October 14, 2009 10:30 AM |
| **To:** | Seattle V |
| **Subject:** | FW: Two Quotes to Ponder: |

## Two Quotes to Ponder:

"Life's tough......it's even tougher if you're stupid."
-- John Wayne

"My friends, we live in the greatest nation in the history of the world. I hope you'll join with [
change it."
-- Barack Obama

Unfortunately, now we are beginning to understand what the second quote means...
...and what the first quote says about us.

1

**Bishop, Cheryl D.**

| | |
|---|---|
| **From:** | Devlin, Bradford L |
| **Sent:** | Monday, August 31, 2009 9:45 AM |
| **To:** | Seattle V |
| **Subject:** | FW: Morality Test |

Tough decision...

**Subject:** Fwd: Morality Test

# BE HONEST ...

# TEST OF MORALITY

# The One (1) Question Test

**Please scroll down slowly and give due considerat**

**line.**

## THE SITUATION:

You are in *Florida, Miami* to be specific. There is ch
around you caused by a hurricane with severe floodin
flood of biblical proportions. You are photojournalis
for a major newspaper, and you're caught in the midd
epic disaster. The situation is nearly hopeless.

You're trying to shoot career-making photos. There
and people swirling around you, some disappearing u
water. Nature is unleashing all of its destructive fury

## THE TEST:

Here's the question, and please give an honest answe[r] [3]

========================================

## THE QUESTION:

Suddenly you see a man and a woman in the water. T[hey] fighting for their lives, trying not to be taken down wi[th] debris. You move closer. Somehow they look famili[ar]. suddenly realize who they are. It's *Barack Obama* an[d] *Pelosi!* At the same time you notice that the raging w[ater] about to take them under forever. You have two opti[ons]. can save their lives or you can shoot a dramatic *Puli[tzer]* winning photo, documenting the deaths of two of the [world's] most powerful people.

Would you select high contrast color film, or would y
the classic simplicity of black and white?

**From:** Devlin, Bradford L.
**Sent:** Thursday, December 10, 2009 9:00 AM
**To:** Seattle V
**Cc:** Bishop, Cheryl D.; Stewart, Michael B.
**Subject:** Chatter

Recently, I've heard chatter and rumblings concerning myself and other members of the Gang Group regarding personnel, vehicle assign personal matters. This chatter has progressed to outlying offices and must come to a stop. Chatter of this nature is not productive and is often not true.

If any of you have questions or concerns regarding another employee, please go to that employee first to reconcile any differences. If you resolved, feel free to come by and discuss the matter with me.

Thank You.

Brad

2

**Bishop, Cheryl D.**

| | |
|---|---|
| **From:** | Bishop, Cheryl D. |
| **Sent:** | Sunday, December 13, 2009 3:43 PM |
| **To:** | Levingston, Robert M. |
| **Cc:** | Devlin, Bradford L. |
| **Subject:** | Office Incident |

To: ASAC Robert Levingston

From: Cheryl D. Bishop

RE: Office Incident

On December 11, 2009, at approximately 1:15PM, I verbally advised you of an office incident involving Seattle Group V Supe...
and myself. The following is submitted to document the details of that incident:

On December 11, 2009, at approximately 1:00PM, I contacted GS Devlin in his office to inquire about the below attached ema...
if we could talk about the email and what he might have been referencing. GS Devlin replied in an angry tone; "It's none of y...
GS Devlin why he had copied me on the email as a recipient if it didn't concern me. GS Devlin stated his email had indicated...
discussion. GS Devlin again stated "It's not your business". I again replied that I didn't understand why it was none of my bu...
me in the email. GS Devlin then abruptly stated "get the hell out of my office!" I kept my voice even and again asked GS De...
courtesy". I told GS Devlin that I didn't understand what that meant and had come to talk to him since his email had indicated...
talking about and why he wouldn't he discuss the email. GS Devlin stopped inches from my face and stared at...
toward me. I did not move and remained standing in front of his desk. GS Devlin then suddenly stood up and walked aggressively around his...
it was either GS Devlin's intention to engage in a physical confrontation or attempt to intimidate me by demonstrating an aggr...
neutral voice I told GS Devlin that I was simply asking a question. GS Devlin then turned away from me and sat back down in...
told GS Devlin that I was only asking because I did not understand his email or his reference to "chatter". GS Devlin then thr...
said; "what do you want from me Cheryl?!?" I replied that I wanted to discuss the email. GS Devlin again stated "it's none of...
left GS Devlin's office without further interaction.

Cheryl D. Bishop
Public Information Officer
ATF Seattle Field Division
#O 206-389-5859
C# 206-255-5981

1

**Bishop, Cheryl D.**

| | |
|---|---|
| **From:** | Bishop, Cheryl D. |
| **Sent:** | Thursday, April 21, 2016 1:59 PM |
| **To:** | Devlin, Bradford L |
| **Subject:** | Re: Disparaging Remarks? |

You know nothing about me – you were not even with this agency when I was working undercover and running complex street investigatio... multi dependent ATF T-III RICO gang investigation initiated in Washington that originated from the murder of an FFL. You don't know me... to. What I'm requesting is that you keep the unprofessional personal disparaging commentary to yourself.

Sent from my iPhone

> On Apr 21, 2016, at 1:01 PM, Devlin, Bradford L. <Bradford.Devlin@atf.gov> wrote:
>
> Although I have no idea what you are talking about, I think this is very interesting. I have been asked about your experience as an ATF...
> here in Eugene because they heard you had very little street experience. I gave them my opinion. You probably disagree but I don't care. It is true...
> one AUSA that I thought you heard... We do have an unfortunate history but I have not disparaged yo...
> and character do speak for themselves; our reputations in law enforcement are our most important commodity. I hope others will see...
> hardworking and competent agent.
>
> Brad
>
> -----Original Message-----
> From: Bishop, Cheryl D.
> Sent: Thursday, April 21, 2016 12:24 PM
> To: Devlin, Bradford L <Bradford.Devlin@atf.gov>
> Subject: Disparaging Remarks?
>
> Brad –
>
> I've never been fond of rumor mills - and am old enough to understand the importance of going directly to the source. But it has com...
> you've reportedly been making disparaging remarks about me and my qualifications if I were to put in for the RAC position in Eugene.
> I tend to stand by the belief that people should form opinions of others for themselves and that who I am as a person, my work abili...
> speak for itself. I might think you're a jerk - but it would not be my place to try and convince others of that - they should judge you for...
>
> <

1

}

> If it is true that you've been engaged in making disparaging commentary about me - and comments to the effect that I lack the profession
would be a "train wreck" for the Eugene office - then I'd appreciate it if you would stop.  And if it is your goal to somehow taint the image
especially the cadre of new young impressionable agents coming in, as well as other agency representatives - then your actions do not
not only me both personally and professionally - but the image of our agency as well.
>
> Despite the negative history between us - if you feel you have something you'd like to talk about or say to me directly - or express your
or lack of in your view - or why you feel I should not be the RAC in Eugene (or anywhere else for that matter) - my cell is always on.
>
> If the information I've received is incorrect - then I'd appreciate knowing that as well.
>
> Sent from my iPhone

# **<u>EXHIBIT 5</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

 

U.S. Department of Justice

## Complaint of Discrimination
*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108.
2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if any, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

**1. Complainant's Full Name**

Cheryl D. Bishop

**2. Your Telephone Number (Including area code)**

Home

Work   206-255-5981

Street Address, RD Number, or Post Office Box Number

City, State and Zip Code

**3. Which Department of Justice Office Do You Believe Discriminated Against You?**   Bureau of Alcohol, Tobacco, Firearms and Explosives

**B. Street Address of Office**   915 2nd Ave, Room 790

**C. City, State and Zip Code**   Seattle, WA 98174

**4. Current Work Address**   Bureau of ATF - 915 2nd Ave, Room 790, Seattle, WA 98174

**A. Name of Agency Where You Work**   Bureau of ATF - Seattle Field Division

**B. Street Address of Your Agency**   915 2nd Ave, Room 790

**C. City, State and Zip Code**   Seattle, WA 98174

**D. Title and Grade of Your Job**   Senior Special Agent - GS1811 - Grade 13

**5. Date on Which Most Recent Alleged Discrimination Took Place**

| Month | Day | Year |
|-------|-----|------|
| June  | 19  | 2016 |

**6. Check Below Why You Believe You Were Discriminated Against?**

- ☒ Race or Color (Give Race or Color)   African American
- ☐ Religion (Give Religion) _____
- ☐ Sex (Give Sex)   ☐ Male   ☐ Female
  - ☐ Sexual Harassment
- ☐ Age (Give age) _____
- ☐ National Origin (Give National Origin) _____
- ☐ Disability   ☐ Physical   ☐ Mental

- ☐ Genetic Information
- ☐ Sexual Orientation
- ☐ Gender Identity
- ☒ Reprisal
- ☐ Parental Status
- ☐ Class Complaint

**7. Explain How You Believe You Were Discriminated Against** *(treated differently from other employees or applicants) Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. (You may continue your answer on another sheet of paper if you need more space.)*

Please see attached

**8. What Corrective Action Do You Want Taken on Your Complaint?**

Please see attached

**9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.**

| DATE OF FIRST CONTACT WITH EEO OFFICE | DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: |
|---|---|
| July   22   2016 | Aug   30   2016 |

**B) Name of Counselor**

Brenda Bryant

☐ I Have Not Contacted an EEO Counselor

**10. Date of This Complaint**

| Month | Day | Year |
|-------|-----|------|
| Aug   | 31  | 2016 |

**11. Sign Your Name Here**

FORM DOJ-201A
APR. 2011



Complaint of Discrimination
Cheryl D. Bishop
Continuation: Form DOJ-201A

7. Explain how you believe you were discriminated against:

**Racial discrimination/harassment:** An explanation of my complaint of racial discrimination/harassment by ATF Supervisor Brad Devlin is summarized and outlined in a memorandum (dated May 3rd, 2016) addressed to ATF Seattle Field Division Management (ASAC Celinez Nunez and SAC Douglas Dawson). A copy of this memorandum is attached to this complaint. This memorandum was discussed and a copy provided to ATF EEO Counselor Brenda Bryant.

**Retaliation/reprisal:** As a result of my May 3, 2016 complaint of discrimination and harassment, the Agency retaliated against me the next month (June, 2016) by substantially changing the terms and conditions of my upcoming temporary promotion to make them adverse to me.

Attached to this complaint is a copy of a signed MOU for a one-year promotional detail to D.C as a program manager at the GS-14 step 5 pay grade. In addition to the MOU, I received approvals and assurances (both verbal and written) from ATF management with HQ (senior executives), National Canine Division and Seattle Field Division that during my one-year promotional detail I would continue to maintain my ATF explosives detection canine. The signed MOU, written emails, and verbal assurances all provided that after the D.C assignment I would return to Seattle Group IV and resume my duties as a canine handler with my current canine. The MOU also stipulated that I would retain the GS-14 pay grade.

But on June 14th (conveyed by ASAC Nunez) ATF management changed the conditions of my promotional detail and I was advised that I would be required to permanently retire my current canine, sign a new five-year commitment to continue as a canine handler (through mandatory retirement), thereby preventing me from taking any promotion, and would have to repeat the 16-week canine handler course with a new dog in spite of the documented performance and certifications of my current canine. Then, five days later, on June 19th, I was told (via ASAC Nunez on behalf of SAC Dawson) that when I return from my D.C. assignment I would have to relocate to Portland, which would place me at greater risk of continuous contact with Brad Devlin, and at times be subject to his supervision.

Also discussed with EEO Counselor Bryant were specific statements made to me by SAC Dawson that included (1) "Devlin has always been a separatist" and another statement contributed to SAC Dawson as told to me by ASAC Nunez that SAC Dawson had stated "Devlin does not like black people." In addition, EEO Counselor Bryant was told about statements made to me by ASAC Nunez during a conversation in which ASAC Nunez asked me (1) "would it make you feel better if I put a letter in Devlin's file" and then stated - "but you know he would just wipe his ass with it."

8. What Corrective Action do you want taken on your complaint:

Corrective Actions/remedies:

1.      Receive increase to GS-14 Step 5 as provided in MOU
2.      Be credited with all previous acting assignments during career and have the cumulative acting time factored into promotional eligibility from GS-14 to GS-15

11256.01 jfb316701

Complaint of Discrimination
Cheryl D. Bishop
Continuation: Form DOJ-201A

Remedies continued:

3.     Be promoted to first available supervisor position in Seattle;
4.     Be eligible via waiver for promotion to GS 15 as GS 14 Supervisor;
5.     Be assured Agency will not take away current canine;
6.     Receive GS 15 Step 10 as high 3 upon retirement;
7.     Be compensated reasonable emotional distress damages; and
8.     Payment of attorney fees and costs
9.     Any other appropriate remedies, including protections from retaliation

**ATTACHMENTS:**

Memorandum-- complaint of racial discrimination/harassment by ATF Supervisor Brad Devlin
MOU -- TDY with ATF OST

11256.01 jh316701

# **<u>EXHIBIT 6</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

District Judge Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHERYL BISHOP,

                Plaintiff,

      v.

JEFF SESSIONS, ACTING ATTORNEY
GENERAL, DEPARTMENT OF JUSTICE,
ALCOHOL, TOBACCO, FIREARMS &
EXPLOSIVES,

                Defendant.

No. C18-00599-TSZ

NOTICE OF DEPOSITION OF CR 30(b)(6)
DESIGNEE OF DEFENDANT

TO:          Jeff Sessions, Attorney General, Department of Justice, Alcohol, Tobacco, Firearms & Explosives, Defendant;

AND TO:    Priscilla T. Chan and Sarah K. Morehead, Defendant's Counsel.

Please note that the deposition of the Department's designee(s) will be taken, in part, on:

Date:  Friday, May 31, 2019
Time:  10:00 a.m.
Place:  via video teleconferencing (VTC) from the
       Bureau of Alcohol, Tobacco, Firearms and Explosives Seattle Field Division
       1521 1st Ave S, Suite 600
       Seattle, WA 98134

The Defendant will arrange for designee(s) to attend via video teleconferencing (VTC) at the designee(s)'s preferred location.  The deposition will continue on other dates and locations until completed.

NOTICE OF DEPOSITION OF CR 30(b)(6) DESIGNEE OF
DEFENDANT - 1

No. C18-00599-TSZ
11256.01 me211203

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1      Pursuant to Fed. R. Civ. P. 30(b)(6), please designate one or more officers, directors or

2  managing agents or other persons to appear and testify on the following matters:

3      1.      ATF's policy and practices since January 1, 2010 regarding the requirements for

4  daily and weekly training of canines by their SACHs.

5      2.      ATF's policy and practices since January 1, 2010 regarding SACHs performing

6  assignments, details, job positions, tasks, or responsibilities other than those specifically integral

7  to the position of SACH, both generally and as to specific SACHs including but not limited to

8  Mr. Dvorak, Mr. Plemmons, Mr. Sullivan, Mr. Hodnett, and any other potential comparator.

9      3.      Policies and practice of retention, preservation, collection, spoliation, and

10 production of ESI (including texts) on Agency-issued cell phones, and of reporting and

11 documenting lost, stolen, or replaced cell phones, since January 1, 2016.

12     4.      Retention, preservation (including litigation holds), collection, spoliation, and

13 production of ESI (including texts) on Agency cell phones issued to Doug Dawson, Celinez

14 Nunez, Brad Devlin, Michael Glysteen, Donald Robinson, John Ryan, Raphael Martinez, Charlie

15 Patterson, and Jay Brown, since May 1, 2016.

16     5.      Any actions to investigate, remedy, or prevent Plaintiff's allegations of

17 harassment, discrimination, and retaliation and the reasons therefore, including any warning,

18 caution, or discipline of employees.

19     6.      Disallowing Plaintiff to continue serving as a SACH with her canine while on the

20 promotional detail at HQ as per the MOU, and planning to assign her to work in Oregon upon

21 her return from the detail.

22

23

24

NOTICE OF DEPOSITION OF CR 30(b)(6) DESIGNEE OF
DEFENDANT - 2

No. C18-00599-TSZ
11256.01 me211203

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   DATED this 22nd day of May, 2019.

2                                          MacDONALD HOAGUE & BAYLESS

3

4                                          By ____*/s/Jesse Wing*_____
                                               Jesse Wing, WSBA #27751
5                                              JesseW@mhb.com
                                               705 Second Avenue, Suite 1500
6                                              Seattle, WA 98104
                                               *Attorneys for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

NOTICE OF DEPOSITION OF CR 30(b)(6) DESIGNEE OF
DEFENDANT - 3

No. C18-00599-TSZ
11256.01 me211203

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

DECLARATION OF SERVICE

2

The undersigned declares under penalty of perjury according to the laws of the United

3

States and the State of Washington that on this date I caused to be served in the manner noted

4

below a copy of this document entitled **NOTICE OF DEPOSITION OF CR 30(b)(6)**

5

**DESIGNEE OF DEFENDANT** on the following individual(s):

6

**Counsel for Defendants**

7

UNITED STATES ATTORNEY'S OFFICE
Priscilla T. Chan, WSBA #28533

8

Sarah K. Morehead, WSBA #29680
Assistant United States Attorneys

9

United States Attorney's Office
700 Stewart Street, Suite 5220

10

Seattle, Washington 98101-1271
Phone: (206) 553-7970

11

Email: Priscilla.Chan@usdoj.gov
Email: Sarah.Morehead@usdoj.gov

12

Email: Julene.Delo@usdoj.gov
Email: Caitlin.Froelich@usdoj.gov

13

[ ] Via CM/ECF system
[ ] Via Facsimile

14

[ ] Via First Class Mail
[X] Via Email- *per e-service agreement*

15

[ ] Via Messenger
[ ] Via Overnight Delivery

16

DATED this 22nd day of May, 2019, at Seattle, Washington.

17

18

*/s/Noemi Villegas*
Noemi Villegas, Legal Assistant

19

20

21

22

23

24

NOTICE OF DEPOSITION OF CR 30(b)(6) DESIGNEE OF
DEFENDANT - 4

No. C18-00599-TSZ
11256.01 me211203

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

# **EXHIBIT 7**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

1

1                    UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON AT SEATTLE
2

3       _____

4    CHERYL BISHOP,                 )
                                    )
5            Plaintiff,             )
                                    )
6        vs.                        ) No. C18-00599-TSZ
                                    )
7    JEFF SESSIONS, ACTING          )
     ATTORNEY GENERAL, DEPARTMENT   )
8    OF JUSTICE, ALCOHOL, TOBACCO,  )
     FIREARMS & EXPLOSIVES,         )
9                                   )
             Defendant.             )
10      _____

11

12           30(B)(6) VIDEO TELECONFERENCE DEPOSITION

13                  UPON ORAL EXAMINATION OF

14                     GREGORY CARROLL

15      _____

16                      10:19 A.M.

17                     MAY 31, 2019

18          1521 FIRST AVENUE SOUTH, SUITE 600

19                 SEATTLE, WASHINGTON

20

21

22

23

24    REPORTED BY: JOLENE C. HANECA, RPR, CCR #2741

25

18

```
 1            THE WITNESS:  Sorry.

 2   BY MR. WING:

 3       Q.    And would the issuance of a cell phone, Agency

 4   cell phone to an employee in the field, Office of Field

 5   Operations, be documented in the Sunflower System?

 6       A.    Yes.

 7       Q.    And for the purposes of our discussions today,

 8   I would like you to assume that I am asking for the

 9   period from January 1, 2016, to the present.  Okay?

10       A.    Okay.

11       Q.    And if I ask you for an answer to a question

12   and you think that it has changed during that period from

13   January 1, 2016, to the present, please let me know so we

14   can clarify when that change occurred.  Okay?

15       A.    Sure.

16       Q.    How is the issuance of a cell phone to an

17   employee of the field operations office documented in the

18   Sunflower System?

19       A.    A request is sent in, usually by the person who

20   is requesting it themselves, and it is fulfilled by the

21   mobile device contractor, and it is -- the pin number

22   which is on the cell phone is entered into Sunflower.

23            And then a form is filled out and signed off,

24   it's the 1851.1, is signed off to say, "Here is your cell

25   phone.  Here is the number."  That is signed when it's
```

1    received, and a copy of it is returned to the property

2    folks who then put it into Sunflower.

3        Q.    I understood you to use the word "contractor."

4              Is that a reference to an entity or a person

5    who is not employed by the United States Government?

6        A.    They are contracted to the United States

7    Government.

8        Q.    And what entity is that?

9        A.    WidePoint is the name of the company.

10       Q.    W-I-D-E Point?

11       A.    Correct.

12       Q.    What kind of business is WidePoint?  What do

13   they provide to the Government?

14       A.    Cell phone service and cell phones.

15       Q.    And what kind of -- what brand cell phone do

16   they issue to the Government?

17       A.    There are actually several, but the vast

18   majority are iPhones.

19       Q.    Has that been true since January 1, 2016?

20       A.    Yes.

21       Q.    You said that WidePoint provides service.

22   Could you explain what you mean by that?

23       A.    They handle the warehousing and the shipping

24   and the receipt of them.

25       Q.    The actual phones themselves?

23

1    through the AT&T system instead?

2        A.    AT&T, or Verizon in some cases.

3        Q.    And when you sent a text through the Verizon

4    system, what record besides on your phone was maintained

5    of that communication by ATF?

6        A.    None.

7        Q.    And was that true of texts sent by the

8    employees of the Office of Field Operations?

9        A.    Yes.

10       Q.    And if you received a text, the text that you

11   received was not maintained on any server or other device

12   other than your phone?

13       A.    Correct.

14       Q.    Is this by design?

15       A.    No.  It's just the way it is.

16       Q.    Do you know whether that differs from other

17   government agencies?

18       A.    I can't speak to the other government agencies.

19       Q.    Are you ever involved in communications,

20   conferences or other efforts to compare best practices

21   with other law enforcement agencies, like the FBI?

22       A.    Yes.

23       Q.    And are you aware of the FBI actually retaining

24   copies of their text messages?

25       A.    I have heard that said.

1      Q.    And is that employee expected to transfer the

2    data, or is it within their discretion to not bother to

3    do that?

4      A.    No.   They have instructions on how to make sure

5    that the information that was on the old phone is backed

6    up, generally through iTunes, and then how to get it onto

7    the new phone.

8      Q.    And is that instruction to save the data on

9    iTunes only in the case of a transfer, or are they

10   expected to back up their phone data periodically to

11   iTunes?

12          MS. MOREHEAD:   Object to the form; misstates

13   prior testimony.

14   BY MR. WING:

15     Q.    What is your answer?

16     A.    I'm not understanding your question.   So if --

17   so we would (inaudible.)

18     Q.    Mr. Carroll, you cut out again.   Could you give

19   that answer again, please?

20     A.    I'm sorry.   We would hope they would back up

21   regularly, but it is not a requirement.

22     Q.    And what portions of data on a phone are they

23   expected to upload to iTunes?

24          MS. MOREHEAD:   Object to the form.

25     A.    They generally don't have a choice.   They plug

48

1     Q.    Does ATF ever access the iTunes backup?

2     A.    No.

3     Q.    Why not?

4     A.    Not to my knowledge.  Not to my knowledge.  I

5  don't know why.

6     Q.    Is there an acronym that is used to describe

7  text messaging?

8     A.    Texts, I believe is it.

9     Q.    Is it true that DOJ policy that applies to ATF

10  allows the individual employee to decide whether to

11  preserve electronic messages?

12          MS. MOREHEAD:  Object to the form.

13     A.    I would disagree.

14  BY MR. WING:

15     Q.    Please explain.

16     A.    As I stated before, if something is related to

17  a case or a project, they are required to save it; and if

18  it is transitory, if it is not case or project-related,

19  then they should delete it as soon as possible.

20     Q.    So there is an instruction to delete any text

21  that is not specifically case or project-related; is that

22  correct?

23          MS. MOREHEAD:  Object to the form.

24     A.    That is correct.

25          MS. MOREHEAD:  Misstates testimony.

1     A.    Correct.

2     Q.    And so ATF inserted it into its own records

3  management program?

4     A.    Correct.

5     Q.    Before doing that in 2018, was ATF required to

6  follow the DOJ Policy Statement 0801.04.02, which is

7  Exhibit 8?

8     A.    Yes, we were.

9     Q.    I am going to ask you to please look at RFP20,

10  Bates number 89 through 90.  Please let me know when you

11  find that.

12     A.    Okay.

13     Q.    What is the significance of that document?

14     A.    Is this the email you are referring to?

15     Q.    Yes, it is.

16     A.    This is an in relation to a phone being

17  replaced.  Mike Wallace is the mobile device expert, and

18  he went to go see Mr. Gleysteen to get his new phone,

19  help him to get his new phone set up.

20     Q.    And can you tell from this document whether

21  the phone -- the phone was replaced; it wasn't just a

22  screen replaced?

23     A.    It looks like the phone was replaced.

24     Q.    And according to the protocol or practice,

25  would Mr. Wallace have transferred the data from

1    Mr. Gleysteen's old phone to his new phone?

2         A.    Per protocol, Mr. Gleysteen would have done

3    that, but Michael may have helped him do that.

4                    (Exhibit 12 marked.)

5    BY MR. WING:

6         Q.    I am going to mark RFP20, page 89 and 90 as

7    Exhibit 12.

8               Is this a fairly typical method of providing

9    somebody in headquarters a new phone, or is this a little

10   unusual because of Mr. Gleysteen's role as the ADAD?

11        A.    It is -- it is not typical of headquarters.

12        Q.    And how would you describe it being different,

13   then?

14        A.    We try to give extra attention to the

15   executives.

16        Q.    Okay.  Would Mr. Gleysteen be expected to fill

17   out a Form 1851.1 for his new phone?

18        A.    Yes.

19        Q.    So that should show up in the Sunflower System?

20        A.    Yes.

21        Q.    Do you know whether there is one?

22        A.    I do not know that.

23        Q.    Can you tell from Exhibit 12 where it came

24   from?

25        A.    Where what came from?

1        Q.     Okay.

2        A.     Under the Office of Science and Technology.

3        Q.     So even though she has got an atf.gov email

4    address, she is not a government employee?

5        A.     Correct.  She is a contractor.

6        Q.     Does that mean that since she has got an

7    atf.gov email address that her emails are captured by the

8    ATF's record management systems?

9        A.     Well, there is no record management system, but

10   it's captured by Outlook.

11       Q.     Now, we have talked about, a little bit about

12   Government-issued laptops where employees are encouraged

13   to back up their iTunes, their phones on iTunes; right?

14           MS. MOREHEAD:  Objection; misstates prior

15   testimony.

16   BY MR. WING:

17       Q.     Is that correct?

18       A.     The testimony was, when somebody loses or when

19   somebody breaks a phone, they back up their phone to the

20   computer so they can put that information on the new

21   phone.

22       Q.     And my understanding was that ATF recommends

23   that agents periodically back up their phones to iTunes,

24   and you do it approximately every couple weeks; is that

25   right?

1    A.    That is correct, recommends.

2    Q.    Is the laptop that you back your phone up on a

3    Government-issued laptop?

4    A.    Yes, it is.

5    Q.    And that is where the Agency recommends

6    employees back up their phones, onto their

7    Government-issued laptops; is that right?

8    A.    It is the only place they are allowed to back

9    it up to.

10   Q.    And are most field division, field operations

11   employees issued Government laptops?

12   A.    Yes.

13   Q.    And when those laptops are replaced, is there a

14   practice of backing up the data on those laptops?

15   A.    Yes.

16   Q.    What is that practice?

17   A.    So most --

18        MS. MOREHEAD:  Just a minute.  I am going to

19   state an objection on the record because this topic is

20   beyond the scope of the Rule 30(b)(6) notice.

21   BY MR. WING:

22   Q.    You can answer.

23   A.    It is not -- it is not my area of expertise.

24   Q.    Are there instructions to employees about

25   backing up their laptops before they hand them in to get

64

1     a replacement?

2          A.     Similar to the last one, beyond my expertise.

3          Q.     Have you ever done that?

4          A.     I have done that for myself, yes.

5          Q.     And is it your understanding that you are

6     following some regular policy or practice in doing so?

7          A.     Yes.

8          Q.     Now, Topic No. 4 asks you to testify about the

9     "retention, preservation, including litigation holds,

10    collection, spoliation, and production of ESI on Agency

11    cell phones issued to," and then there's a series of

12    people; right?

13         A.     Yes.

14         Q.     When were litigation holds put on the Agency

15    cell phones of the nine employees identified in Topic 4?

16         A.     I believe it was May of 2017.

17         Q.     And did that litigation hold require those

18    employees to retain their text messages?

19         A.     It would have, yes.  If they had text messages

20    on their phone at that time, it would have, yes.

21         Q.     And when were they first requested to provide

22    any text messages they had?

23         A.     When the litigation hold first was issued.

24         Q.     So they weren't just asked to preserve them;

25    they were asked to provide them at the same time?

1    come and talk about what the policies are for records

2    retention.

3        Q.    And in preparation for today's deposition, you

4    did not go look back at the litigation hold?

5        A.    I did.

6        Q.    When did you do that?

7        A.    Last week.

8        Q.    And what was the instruction regarding the

9    scope of text messages to be retained?

10       A.    I believe it specified with Bishop and with

11   other people's names.

12       Q.    And are you aware that the Government has

13   produced zero text messages in response to discovery in

14   this matter?

15       A.    I am not aware what was produced.

16       Q.    But your understanding was that each of these

17   nine individuals was instructed as of May 2017 that if

18   Cheryl Bishop's name and some other person's name came up

19   in a text message, the text message was to be preserved?

20       A.    Correct.  And if they had them, then they were

21   to do that.

22       Q.    What steps were made, if any, to verify whether

23   those nine individuals had responsive texts on their

24   phones?

25       A.    The chief counsel reached out to each one of

1    them via email and then personally to ask them if they

2    had responsive text messages, and if they had, they were

3    to forward (inaudible) chief counsel.

4        Q.    You broke up a little bit.  Did you say if they

5    had such text messages they were to forward them to the

6    chief counsel's office?

7        A.    Correct.

8        Q.    Did anyone besides the individual -- strike

9    that.

10            Did anyone besides the nine individuals who are

11   listed in Topic 4 check those text messages on the phones

12   of those nine individuals to see whether they had

13   responsive texts?

14       A.    No.

15       Q.    Does ATF ever have somebody besides the

16   custodian of the phone check their phone to see if there

17   are responsive texts?

18       A.    No.

19       Q.    Is that a policy?

20       A.    It's not a policy.

21       Q.    If a person who was instructed to preserve

22   information or records or documents subsequently deletes

23   even inadvertently such data, records or documents, what

24   are they required to do?

25       A.    I'm not sure from the chief counsel's

1   standpoint.

2        Q.    Well, one of the topics --

3        A.    I mean --

4        Q.    Go ahead.

5        A.    I was going to say, from a records standpoint,

6   if there are records lost accidentally, I am supposed to

7   be informed.

8        Q.    And is there a specific method by which you are

9   supposed to be informed?

10        A.    No.

11        Q.    So it could just be an email or a telephone

12   call?

13        A.    Correct.

14        Q.    And what, if anything, are you supposed to do

15   once you receive that information?

16        A.    I am supposed to investigate, and I am supposed

17   to let National Archives know that there was an

18   accidental destruction of records.

19        Q.    Have you ever had to do that?

20        A.    Yes.

21        Q.    When an employee retires or leaves the Agency,

22   what happens to their Agency-issued cell phone?

23        A.    It is returned to WidePoint.  It is wiped

24   clean.  If it hasn't been wiped by the employee

25   themselves before they left, it is wiped clean so it can

1      Q.    And what other job titles are on the LIT Holds

2    email?

3      A.    I don't know.  I do not control that email

4    group.

5      Q.    Now, if we turn to page 3, about almost

6    50 percent of the way down, the left-hand column has

7    RFP18, pages 15 through 25.  It says, "Forward Litigation

8    Hold Notice Cheryl Bishop" on 09/21/17.

9            Do you see that?

10     A.    Yes, I do.

11     Q.    And that forward is to Bradford Devlin.

12           Do you see that?

13     A.    Yes.

14     Q.    And it appears to be the first time that Mr.

15    Devlin is receiving any notice.

16           Is that the first time that he received notice?

17     A.    I can't tell you that.

18     Q.    But if he did receive a notice, it should show

19    up on this privilege log?

20     A.    I guess.  I'm not -- I don't know the inner

21    workings of chief counsel.

22     Q.    Below that, where it says RFP18, 26, there is a

23    message from Robynn Ferguson-Russ to Katherine Meng.

24           Do you see that?

25     A.    Yes.

1          MR. WING:  So I have some questions that it

2    does not appear this witness can answer.  I have

3    questions about what particularly was done to preserve

4    and what was preserved, and what checks were done,

5    responses got from various witnesses, and this witness

6    doesn't know those things.  So we can talk about this

7    separately, but I don't have any more questions for this

8    witness.

9          THE WITNESS:  Actually, can I cue in on that,

10   please?

11         MS. MOREHEAD:  Yes, please.  I was going to

12   ask, because this witness may have knowledge relevant.

13   He is prepared to discuss the topics in Exhibit 1.

14         THE WITNESS:  I actually reached out to each of

15   the folks involved who are still employed with ATF, and

16   all of them said they had nothing, except for Celinez

17   Nunez, who said she had lost her phone.  So everybody

18   said there were no text messages that they had.

19   BY MR. WING:

20      Q.   And did you check to see whether Celinez Nunez,

21   there is a record in Sunflower that she lost her phone?

22      A.   I have not.

23      Q.   Well, you and I have looked at the sole

24   documents that were produced by the Government about any

25   of these nine individuals losing or having their phones

78

1    Q.    That's okay.  Take your time.

2    A.    So RFP 21 through 114.

3          RFP21, 1 through -- there are a lot -- through

4    374.  No, 375, it looks like.  And adding on, for the

5    lost device procedures, it's also RFP21 through 391.

6    Q.    So can I summarize what I think you said?

7    A.    Sure.

8    Q.    You have reviewed Bates numbers RFP17, 5

9    through 12; RFP20, pages 1 through 114; and RFP21, pages

10   1 through 391.

11   A.    Correct.

12   Q.    And in all of those records, the only reports

13   that you have seen of a lost or stolen phone or

14   replacement of a phone is for Mr. Gleysteen and Mr.

15   Patterson, both in 2016; is that right?

16   A.    Correct.

17   Q.    Did you ask Ms. Nunez when she lost her phone?

18   A.    I did not.

19   Q.    Did you ask her whether she lost it before or

20   after she received the litigation hold notice?

21   A.    From the conversation, it sounded like she lost

22   it in 2016.

23   Q.    Did she say that or was that your inference?

24   A.    She suggested that, that she lost it at the end

25   of 2016.

```
1        A.    They said they had no text messages, period.

2        Q.    That they had deleted all text messages?

3              MS. MOREHEAD:  Objection; misstates his

4    testimony.

5        A.    No.  They said they had none.

6    BY MR. WING:

7        Q.    I am just trying to clarify.  They had none

8    that were responsive?  Is that what you mean?

9        A.    No.  They had none.

10       Q.    Did you interpret that to mean they had deleted

11   their text messages?

12       A.    I did not.

13       Q.    What did you interpret that to mean?

14       A.    That they didn't have any text messages that

15   had to do with this matter.

16       Q.    And did you speak to each one of these people

17   in a telephone call?

18       A.    Except for Doug Dawson.  That was by email.

19       Q.    And approximately when did you have these

20   calls?

21       A.    Last week, toward the end of the week.

22       Q.    Did you learn from any other individual,

23   besides Celinez Nunez, that they had lost their phones or

24   no longer had the same phone since January of 2016?

25       A.    No.  Doug Dawson retired, so he does not have
```

1          Q.     Were the nine individuals identified in Topic 4

2    instructed to check their phones for texts that are

3    responsive to the plaintiff's discovery requests?

4          A.     Yes.

5          Q.     And how do you know that?

6          A.     It was in the original request from Katie Meng,

7    and then in follow-ups, chief counsel is required to

8    follow up with holds on a regular basis, and then when I

9    called.

10          Q.     So they confirm -- I see.   So your

11    understanding is that the litigation hold actually

12    included the scope of the plaintiff's discovery requests

13    in it?

14          A.     Correct.

15          Q.     Were there search terms used in order to find

16    documents, records or texts that were responsive to the

17    plaintiff's discovery requests?

18          A.     Could you rephrase that?

19          Q.     Do you know the phrase "search term"?

20          A.     Yes.

21          Q.     So I'm wondering whether employees were given

22    search terms in order to conduct searches for responsive

23    texts?

24          A.     Yes.   That's what I said before.

25          Q.     Okay.   What were those search terms?

1          MS. MOREHEAD:  And I object to the form of the

2     question and instruct you not to answer.  That's work

3     product and attorney-client privileged.

4          A.     I won't.  I will not answer that, then.

5          MR. WING:  So while that might be true for a

6     litigation hold, I don't think it's true for production

7     of response to discovery requests.  In fact, it's

8     frequently something that is negotiated and shared back

9     and forth between counsel and provided to the courts.

10          MS. MOREHEAD:  Well, here it wasn't negotiated

11     back and forth and it's not the product of those

12     negotiations.  You're asking him what they searched, and

13     that was part of the litigation hold.

14          MR. WING:  Okay, I understand you are

15     instructing him not to answer.  It's my position that you

16     can't make it privileged by putting it in your litigation

17     hold, and I don't think that a search term is used to

18     find -- I think it's akin to saying, where did you look

19     for this, did you check your file folders and what are

20     the names of the file folders that things were kept

21     under, and you can't make that privileged.

22          MS. MOREHEAD:  If you have authority for that,

23     I'm happy to consider it.  If you want to send it over,

24     we can work that out.

25     BY MR. WING:

88

1        A.    Well, iTunes is not a backup for text messages.

2        Q.    Are you saying that iTunes does not include

3   text messages?

4        A.    So from my understanding, that if I back up

5   today, it's going to back up what I have on my phone

6   today.  If I back up next month, it's going to wipe

7   everything that was there last month and put the new

8   stuff on.  So, you know, it's not -- it's not a

9   cumulative backup like you would have on, say, a server.

10       Q.    But it does back up text messages; is that

11  correct?

12       A.    Whatever the most -- whenever you most recently

13  attach to the computer, if you attach to the computer, it

14  does.

15       Q.    Did you ask Celinez Nunez whether she had

16  backed up her phone prior to losing it such that her

17  iTunes would have had those text messages on that she had

18  lost?

19       A.    I did not.

20       Q.    Why did you not ask her that?

21       A.    Because iTunes is not a backup device.  It's

22  not specifically meant for backing up text messages.

23  It's for emergency restorations.

24       Q.    Who would be the right person to confirm that

25  Celinez Nunez still had the same phone that had been

1    issued to her since January of 2016 or that she had in

2    fact got a replacement phone?

3         A.    That information should be in Sunflower.

4         Q.    And is there a particular document that would

5    show that or would it be the absence of documents?

6         A.    There should be a document if there was a new

7    phone issued.

8         Q.    And so if there wasn't a new phone issued, then

9    that means she has the same phone?

10        A.    It's possible, yes.

11        Q.    Well, we're in the business of something more

12   than possible.  The purpose of my being here today and

13   you being here today, and me conducting all this

14   discovery, is to find out the answer.  So if I wanted a

15   definitive answer, how would I go about getting it?

16             MS. MOREHEAD:  Objection; argumentative.

17        A.    We will check Sunflower.

18             (Exhibit 16 marked.)

19   BY MR. WING:

20        Q.    Let's mark Defendant's Objections and Responses

21   to Plaintiff Cheryl Bishop's Second Set of Discovery to

22   Defendant as Exhibit 16.

23             Do you have that, Mr. Carroll?

24        A.    I do.

25        Q.    Thank you.  Please let me know when you are

1    there.

2         A.    I'm there.

3         Q.    Thank you.   I'm going to ask you to please look

4    at Request for Production No. 20.

5         A.    Okay, I'm there.

6         Q.    The request asks that the ATF.   "Please produce

7    all documentation of lost, stolen, or replaced Agency

8    phones issued to Doug Dawson, Celinez Nunez, Brad Devlin,

9    Michael Glysteen, Donald Robinson, John Ryan, Raphael

10   Martinez, Charlie Patterson, and Jay Brown since

11   January 2016."

12             Did I read that correctly?

13        A.    Yes, you did.

14        Q.    And there is an objection in the response, and

15   after the objection it states, "Notwithstanding those

16   objections and without waiving same, see produced

17   documents Bates numbered RFP20," and then skipping the

18   zeroes, "1 through 114."

19             Did I read that correctly?

20        A.    Correct.

21        Q.    And you have testified that you have read

22   RFP20, pages 1 through 114; correct?

23        A.    Correct.

24        Q.    And within those pages you have not seen any

25   records reflecting a lost phone or stolen phone by

1   Celinez Nunez; is that correct?

2              MS. MOREHEAD:  Objection; asked and answered.

3       A.    That is correct.  Sorry.

4   BY MR. WING:

5       Q.    And you have not seen any record reflecting any

6   replacement of a phone to Celinez Nunez since

7   January 2016; correct?

8       A.    I have not.

9       Q.    And do you have any reason to believe that the

10  production of these records pages RFP20, pages 1 through

11  114, are incomplete?

12             MS. MOREHEAD:  Object to the form of the

13  question.

14      A.    I would believe it is incomplete.

15  BY MR. WING:

16      Q.    Why do you believe it's incomplete?

17      A.    If Ms. Nunez got a phone, there should be a

18  record of it.

19      Q.    Had you reviewed pages RFP20, 1 through 114,

20  prior to your conversation with Ms. Nunez?

21      A.    No.  It was afterwards.

22      Q.    So your basis for believing this is incomplete,

23  these records are incomplete, is simply because Ms. Nunez

24  claims that she lost her phone; is that right?

25      A.    That is correct.

104

1                    C E R T I F I C A T E

2     STATE OF WASHINGTON )

3     COUNTY OF KING       )

4          I, JOLENE C. HANECA, Certified Court Reporter

5     pursuant to RCW 5.28.010 authorized to administer oaths

6     in and for the State of Washington do hereby certify;

7          The foregoing deposition of GREGORY CARROLL was

8     taken before me at the time and place set forth;

9          The witness was by me first duly sworn to testify

10    the truth; and the testimony of the witness and all

11    objections made at the time of the examination were

12    recorded stenographically by me, and thereafter

13    transcribed by myself pursuant to WAC 308-14-135;

14         The foregoing transcript is a true record of the

15    testimony of the witness and of all objections made at

16    the time of the examination to the best of my ability.

17    I further certify that I am in no way related to the

18    parties or counsel in the action, nor do I have an

19    interest in the matter;

20         I will seal the deposition in an envelope with the

21    case title thereon and deliver it to:  Jesse Wing.

22             WITNESS MY HAND this 10TH day of JUNE, 2019.

23

24         _____

25         JOLENE C. HANECA, CCR #2741

# **<u>EXHIBIT 8</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

District Judge Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHERYL BISHOP,

          Plaintiff,

    v.

JEFF SESSIONS, ATTORNEY GENERAL,
DEPARTMENT OF JUSTICE, ALCOHOL,
TOBACCO, FIREARMS & EXPLOSIVES,

          Defendant.

No. C18-00599-TSZ

PLAINTIFF CHERYL BISHOP'S NOTICE
OF INSPECTION TO DEFENDANT

TO:          Jeff Sessions, Attorney General, Department of Justice, Alcohol, Tobacco,
               Firearms & Explosives, Defendant;

AND TO:     Priscilla T. Chan and Sarah K. Morehead, Defendant's Counsel.

      Please take notice that under Federal Rules of Civil Procedure 26 and 34, Plaintiff

requests that on **July 5, 2019** she inspect and search each **mobile (cell) phone *and* laptop,**

**including their text messages and iphone back-ups**, issued by Defendant to Doug Dawson,

Celinez Nunez, Brad Devlin, Michael Glysteen, Donald Robinson, John Ryan, Raphael

Martinez, Charlie Patterson, and Jay Brown and used by any of these individuals during the

periods of January 1, 2016 to the present, for documents responsive to Plaintiff's written

discovery requests and to obtain prompt copies of same in the format identified in Plaintiff's

written discovery request.

PLAINTIFF CHERYL BISHOP'S NOTICE
OF INSPECTION TO DEFENDANT - 1

No. C18-00599-TSZ
11256.01 hh036707

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    As appropriate, Defendants may designate such copies subject to the Stipulated

2  Protective Order already entered by the Court.  Plaintiff is amenable to designating a consultant

3  or third-party to conduct the inspection, search, and copying and to negotiating search terms or

4  other appropriate methods of identifying the existence of responsive documents.

5    DATED this 3ʳᵈ day of June, 2019.

6                                     MacDONALD HOAGUE & BAYLESS

7

8                          By:  */s/Jesse Wing*
                               Jesse Wing, WSBA #27751
9                              JesseW@MHB.com
                               705 Second Avenue, Suite 1500
10                             Seattle, Washington 98104
                               Tel: 206-622-1604
11                             *Attorney for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF CHERYL BISHOP'S NOTICE
OF INSPECTION TO DEFENDANT - 2

No. C18-00599-TSZ
1126.01 nn036701

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

<u>DECLARATION OF SERVICE</u>

The undersigned declares under penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served in the manner noted below a copy of this document entitled PLAINTIFF CHERYL BISHOP'S NOTICE OF INSPECTION TO DEFENDANT on the following individual(s):

**Counsel for Defendants**

UNITED STATES ATTORNEY'S OFFICE
Priscilla T. Chan, WSBA #28533
Sarah K. Morehead, WSBA #29680
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Email: Priscilla.Chan@usdoj.gov
Email: Sarah.Morehead@usdoj.gov
Email: Julene.Delo@usdoj.gov
Email: Caitlin.Froelich@usdoj.gov

[ ] Via Facsimile
[ ] Via First Class Mail
[X] Via Email – *e-service agreement*
[ ] Via Messenger
[ ] Via Overnight Delivery

DATED this 3rd day of June, 2019, at Seattle, Washington.

*/s/Noemi Villegas*
Noemi Villegas, Legal Assistant

PLAINTIFF CHERYL BISHOP'S NOTICE
OF INSPECTION TO DEFENDANT - 3
No. C18-00599-TSZ
11256.01 lm036701

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

# **EXHIBIT 9**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHERYL BISHOP,

                    Plaintiff,

          v.

WILLIAM BARR, ATTORNEY GENERAL,
DEPARTMENT OF JUSTICE, ALCOHOL,
TOBACCO, FIREARMS & EXPLOSIVES,

                    Defendant.

Case No. C18-00599 TSZ

DEFENDANT'S OBJECTIONS TO
PLAINTIFF'S NOTICE OF INSPECTION TO
DEFENDANT

COMES NOW defendant William Barr, Attorney General of the United States

("Defendant"), by and through his attorneys, Brian T. Moran, United States Attorney for the

Western District of Washington, Priscilla T. Chan and Sarah K. Morehead, Assistant United

States Attorneys for said District, and states the following objections to Plaintiff's Notice of

Inspection to Defendant (the "Notice").

          Defendant objects to the Notice on the grounds that it seeks information that is not

relevant to this matter.  Parties are not entitled to discovery on matters that are not relevant.  Fed.

R. Civ. P. 26(b)(1).

          Defendant also objects because the Notice is unduly burdensome.  The numerous

individuals whose laptops and phones plaintiff seeks to search are located in numerous locations

OBJECTIONS (C18-00599 TSZ) – 1

across the United States, making collection unduly burdensome, and those individuals require their phones and computers to do their government jobs.

Furthermore, because the Notice seeks irrelevant information and is unduly burdensome, the request is not proportional to the needs of the case.  The Notice therefore violates Fed. R. Civ. P. 26(b)(1).  Plaintiff has already sought, and been provided with, extensive discovery in this case.  The provision of that discovery further demonstrates the lack of relevance and proportionality of the Notice.

Defendant further objects on the grounds that the Notice seeks information protected by the work product doctrine and/or attorney client privilege, and information that is Classified, law enforcement sensitive, protected by the Privacy Act, and/or otherwise protected from disclosure.

Defendant also objects because the Notice does not comply with Federal Rule of Civil Procedure 34(b)(1)(B) because it does not include the information required therein.

DATED this 2nd day of July, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

s/ Priscilla T. Chan
PRISCILLA T. CHAN, WSBA #28533

s/ Sarah K. Morehead
SARAH K. MOREHEAD, WSBA #29680
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Email: Priscilla.Chan@usdoj.gov
Email: Sarah.Morehead@usdoj.gov

OBJECTIONS (C18-00599 TSZ) – 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that I am an employee in the Office of the United States Attorney for the Western District of Washington and am a person of such age and discretion as to be competent to serve papers;

I hereby certify that on this date, I emailed the foregoing pursuant to the parties e-service agreement to:

Jesse Wing:            JesseW@MHB.com

Noemi Villegas:        noemiv@mhb.com

Dated this 2nd day of July, 2019.

s/ Sarah K. Morehead
SARAH K. MOREHEAD, WSBA #29680
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Email: Sarah.Morehead@usdoj.gov

CERTIFICATE OF SERVICE

# **<u>EXHIBIT 10</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

**MHB** MacDonald Hoague & Bayless
ATTORNEYS AND COUNSELORS AT LAW

705 Second Avenue
Suite 1500
Seattle, Washington
98104-1745

Tel 206.622.1604
Fax 206.343.3961

Alec Bayless (1921-1991)
Francis Hoague (1909-1993)
Kenneth A. MacDonald (1917-2012)

Miguel A. Bocanegra
Tiffany M. Cartwright
Katherine C. Chamberlain
Andrew T. Chan
Kirsten Eklund
Timothy K. Ford
Katrin E. Frank
Ester Greenfield
Leslie J. Hagin
Breanne Johnson
Sam Kramer
Joe Shaeffer
Jeffrey L. Taren
Eryne Walvekar
David J. Whedbee
Jesse Wing
Lola S. Zakharova

December 12, 2018

***VIA U.S. MAIL AND EMAIL (Priscilla.Chan@usdoj.gov;
Sarah.Morehead@usdoj.gov)***

Priscilla T. Chan
Sarah K. Morehead
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271

RE:     *Bishop v. Sessions et al* – **Plaintiff's 1ˢᵗ Set of Discovery to Defendant**

Dear Priscilla and Sarah:

I am writing to address the following deficiencies in the Government's discovery responses and to arrange a discovery conference to discuss them.

**Interrogatory (ROG) No. 1** asks for information about comparators. The Government unilaterally limited its answer to employees whose additional non-canine handling duties lasted "a minimum of 120 days." That limit is not part of the Plaintiff's request. And, we do not think it's a legitimate limit. The ATF has never identified any duration of time for which it is acceptable to train a canine for fewer hours per day that it has claimed is necessary for every canine handler to train their dog for. As a result, the Government's limit arbitrarily reduces the number of comparators.

**Request for production (RFP) 4** asks for documents pertaining to comparators responsive to Interrogatory 1. The Government has identified a comparator but answered RFP 4 by stating that there are no responsive documents. It is hard to accept this answer as accurate. The response to Interrogatory No. 4 acknowledges that SACH Dvorak was assigned duties by RAC Bray and ASAC Humphries that took up 6-8 hours per day for 18 months—namely as OJT Instructor. It is not believable that the federal government has no documentation of what SACH Dvorak did to fulfill his federal employment for 6-8 hours per day for 18 months. Among other documents, a job description, performance evaluations, emails, texts, and communications with the Canine Division are all responsive documents that are highly likely to exist. And, as noted above under ROG 1, we believe there are other responsive comparators, about who responsive documents need to be produced.

www.mhb.com

Priscilla T. Chan
December 12, 2018
Page 2

**Interrogatory No. 2/RFP 6** asks for all communications to and from Brad Devlin about the Plaintiff from January 1, 2016 to the present. The Government's answer identifies some documents but fails to: (1) identify a single oral communication—which is clearly incomplete given the testimony at depositions and suggests a failure to conduct a diligent inquiry before responding to discovery; and (2) fails to identify whether it has diligently searched for and produced all responsive written communications or withheld any. Reliance on any steps taken by the Agency when this case was pending before the EEOC is insufficient since there was ample evidence that the Agency failed to comply with discovery collection.

**Interrogatory No. 3** asks for all communications about Plaintiff's temporary HQ assignment. In response, the Government has merely cited declarations collected in the ROI despite the fact that they are plainly incomplete. Emails produced by the Defendant in discovery reflect numerous written communications between many other employees of the ATF about Plaintiff's assignment, such those at the National Canine Division and the D.C. area office. It is not plausible that none of the many employees who were in written communication about this topic ever communicated orally let alone via text. The Government's answer reflects a failure to diligently investigate.

**RFPs 9/10** ask for materials and communications relating to the Canine Handling class in which Plaintiff was selected and trained, and about John Ryan's presence during the training. It appears that the Government has produced no documents in response, claiming that they are irrelevant. But they are not irrelevant. Responsive documents would establish whether the Government trained its Canine Handlers consistent with or contrary to the requirements for training that it is asserting as a defense to this lawsuit, or that it failed to articulate any specific training requirements. Responsive documents would also show which of the witnesses identified in this case were present during portions of the training, communicated policies, procedures, or practices to the SACH attendees, and which of them had contact with Plaintiff during that time, including Mr. Ryan.

**RFP 11** asks for certain documents of the West Coast SRT during which time Michael Gleysteen was Team Leader and during which Plaintiff was a member of his Team. The Government has refused to produce any documents on the ground that they are irrelevant. They are not irrelevant. Plaintiff has made allegations against Mr. Gleysteen, who has claimed he does not know her. Responsive documents are directly relevant to Mr. Gleysteen's assertions and his credibility.

**RFP 14** asks for documents reflecting Michael Gleysteen's loss of his HQ position as Assistant Director, not long after I deposed him, dropping two levels in the ATF hierarchy to SAC followed shortly thereafter by alleged retirement. Since Mr. Gleysteen is a core witness in this case and he is the subject of several EEO complaints, including Plaintiff's, his apparent rapid downfall is highly relevant to his credibility and to what information the Government knew

Priscilla T. Chan
December 12, 2018
Page 3

about his behavior and integrity, and when.  Any purported privacy concerns can be addressed
through redaction, and in any event the Court has already entered a Stipulated Protective Order.

      Finally, it is troubling that in all of its discovery production the Government has failed to
produce a single text message.  It is well known that AFT agents, supervisors, and management
communicate by text frequently at all levels of the organization.  This was established in
numerous depositions.  For example, former ASAC now Ass't Director Celinez Nunez testified
under oath:

```
 2     Q.   There were times when you were not in
 3   the office together, though; is that right?
 4     A.   Correct.
 5     Q.   And so you'd communicate by phone?
 6     A.   By phone.
 7     Q.   By texts?
 8     A.   By both, phone and text, yes.
 9     Q.   Was that -- and by email?
10     A.   By email, as well.
11     Q.   Was that true of the other officers in
12   the Seattle field office?
13     A.   Yes.
14     Q.   Those were three common ways of
15   communicating?
16     A.   Yes, absolutely.
```

Nunez Dep. at 150.  And she admitted having texted with the Plaintiff, testifiying:

```
15              (Whereupon, Nunez Deposition
16               Exhibit No. 68 was marked for
17               identification.)
18   BY MR. WING:
19     Q.   Have you had an opportunity to look at
20   Exhibit 68?
21     A.   Yes.
22     Q.   And do you recognize those?
23     A.   Yes.
24     Q.   These are texts that you had with

 1   Cheryl Bishop?
 2     A.   That's correct.
```

Priscilla T. Chan
December 12, 2018
Page 4

Nunez Dep. at 176-177.  The Government did not produce ASAC (Ass't Dir.) Nunez's texts on
the claimed ground that she lost her phone.  That fails to satisfy a diligent effort by the
Government to determine and explain whether her relevant texts to Bishop and to others are
saved elsewhere.  And, the Government has failed to explain its efforts, or lack thereof, to obtain
texts from the many other witnesses since Bishop filed her EEO complaint over two years ago.

   Please let me know when you are available next week to discuss these matters.

         Very truly yours,

         MACDONALD HOAGUE &BAYLESS

         Jesse Wing
         Attorney

JW:nv

# **<u>EXHIBIT 11</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

**Jesse Wing**

| | |
|---|---|
| **From:** | Morehead, Sarah (USAWAW) <Sarah.Morehead@usdoj.gov> |
| **Sent:** | Friday, July 19, 2019 12:56 PM |
| **To:** | Jesse Wing |
| **Cc:** | Chan, Priscilla (USAWAW); Noemi Villegas |
| **Subject:** | RE: Discovery Conference |
| **Attachments:** | RE: Bishop v. Barr |

Jesse, responses are below in red font.

---

**From:** Jesse Wing <JesseW@mhb.com>
**Sent:** Wednesday, July 17, 2019 3:22 PM
**To:** Chan, Priscilla (USAWAW) <PChan@usa.doj.gov>
**Cc:** Noemi Villegas <NoemiV@mhb.com>; Morehead, Sarah (USAWAW) <SMorehead@usa.doj.gov>
**Subject:** RE: Discovery Conference

Priscilla,

I am writing to confirm the discovery issues that I raised with you today after the deposition of Agent Hodnett:

1.  In his deposition today, Agent Hodnett testified that he in fact served as an acting supervisor for more than a 30-day period, and that two documents reflect that, the first one of which he reviewed recently in his personnel file:  (1) a SF 50 (I'm not sure that's the exact name of the form); and (2) a slip sent by his supervisor.  Both documents are responsive to Plaintiff's RFP 4, but have not been produced to us.  Please produce them promptly.
    -as stated in the prior attached email dated May 22, 2019, ATF does not agree that Agent Hodnett's information is responsive to RFP 4.

2.  Agent Hodnett also testified that and the other SACHs received emails asking them to look for and produce documents somehow related to this litigation.  Such emails and the content of them are responsive to RFP 7 and Interrogatory No. 7 about litigation holds.
    -The email Hodnett is referring to was not a litigation hold, but a request for information.  Those emails are privileged as ATF has previously maintained.

3.  Defendants' blanket objections to Plaintiff's Rule 34 Request to Inspect the cell phones and laptops of specified witnesses and the Government allowing witnesses to check their own phones and iTunes back-ups despite evidence that they did not preserve, collect, and produce relevant evidence.  Before I received the Government's blanket objections but after I served the Request, when you, I, and Sarah discussed these issues

1

during our a discovery conference and you or Sarah said you would confer with your client about whether it would agree to someone else besides the records custodians checking their phones and laptops. I have never heard back. When I asked Mr. Devlin to look at his phone during his deposition, you initially objected that the Government wants to approach this issue the same for all witnesses causing me to believe that the Government in fact may be planned to conduct additional searches. Please promptly update me on your client's position on what if anything it is agreeing will be done, by whom, and by when, so I can make a decision on a motion to compel discovery.
- Defendant continues to assert its Objections set forth in its July 2, 2019 to the Notice of Inspection. In addition, comprehensive searches have already been performed as explained in Carroll's deposition and by each individual record holder. These efforts and preservation efforts have been explained repeatedly in depositions and discovery responses. This would also be unduly burdensome on the agency as the individuals are in different locations throughout the country, they utilize the devices for performance of their duties and the devices may contain law enforcement sensitive information.

4. After conducting the CR 30(b)(6) deposition of Greg Carroll, I received the Government's production of a slew of documents (presumably from the Sunflower system) about the phones and laptops of witnesses that I should have received before his deposition so that I could ask him to explain their significance. The Government produced a two page document bates-numbered PROD-00002186-87 that appears to be a summary of those documents as they relate to each witness. If the Government will stipulate that document is intended to be an accurate, complete, and reliable summary of those documents I could dispense with having to re-depose him on those documents covering January 1, 2016 forward. Please let me know.
   - This is outside the scope of the 30(b)(6) notice. Defendant is not willing to stipulate regarding PROD-00002186-2187.

5. Also, since the deposition of Mr. Carroll, the Government produced the litigation hold notices and search terms, about which Sarah instructed him not to answer questions in his deposition. I will need to depose Mr. Carroll on those topics to get my questions answered and now that I have received the responsive documents.
   - This is outside the scope of the 30(b)(6) notice. In addition, the litigation hold emails have been produced, even though the agency could claim privilege regarding those documents. Those emails set forth the recipients and search terms. Plaintiff has propounded discovery requests on this topic, and defendant has fully responded and produced documents.

6. Additionally, Mr. Carroll lacked the requisite knowledge to answer questions about policies and practices and the litigation holds and efforts made to preserve and collect

information and documents responsive to Plaintiff's discovery requests, namely RFPs 17, 18, and 20 and ROG 8.  Here are examples:

a. (1) Regarding Order ATF 1340.4A, Mr. Carroll testified that the order governs what the Bureau is supposed to do when it receives litigation requests but when asked whether the order applies "before litigation has actually begun" Mr. Carroll answered "I can't speak to that."  Carroll Dep. at PP. 13-14.
--This question improperly calls for a legal conclusion.  It is also beyond the scope of the 30(b)(6) notice; the witness also testified about when hold obligations arise (page 27)

b. (2) When whether Order No. ATF O 1340.4A was modified when recertified on 1/28/2019, he answered:  "I can't tell you. It's not my order."  Page 15.
-There is no prior version of ATF Order 1340.4A.  The 1/28/14 version of ATF Order 1340.4A is the current version.  The recertification date on an agency order is 5 years after the effective date of the order.  A recertification date is not an expiration date.

c. (3) When asked, "while a record might need to be kept for the Freedom of Information Act or some other reason that might not require maintaining information, civil litigation might require the maintenance of information?" Mr. Carroll testified, "Outside my scope. I wouldn't know."  Page 16.
-This is an inappropriate question that call for a legal conclusion; also outside the scope of the 30(b)(6) deposition notice.

d. (4) When asked, "What are the routine practices of the ATF as to how long to maintain communications about personnel disputes," Mr. Carroll answered:  "I can't answer that."  Page 26.
--I objected to the form (because the question is vague).  Nevertheless, the witness did answer the question at p. 27 and answered all subsequent questions about specific types of what could be characterized as "personnel disputes"

e. (5) when asked about an Order's definition of "information" referring to "user-friendly form," Mr. Carroll responded, "I can't tell you, because I did not write this order."  Page 29.
-This mischaracterizes the testimony; the witness answered the question

f. (6) Mr. Carroll testified that he does not know what responsibilities a Discovery Team has and what a "Preservation Plan" is, although AFT Orders list them as components of its discovery collection and production process.  Page 30.

-The responsibilities of the discovery team are set out in paragraph 7g of 1340.4A.

g.  (7) when asked to identify what documents reflect the back-up instructions for cell phones, he answered:  "I can't tell you that.  I would have to – I'd have to look for that."  Page 36.
-The witness corrected this testimony and answered this question, see correction sheet

h.  (8) When asked whether the iTunes data is kept "in the cloud," Mr. Carroll doesn't know.  He just answered, "I don't believe so."  Page 36.
--this is a mischaracterization of testimony.  The witness answered this question.

i.  (9) When asked whether the ATF is able to remote back-up a device, he said only, "Not to my knowledge," which speaks only to his own knowledge not to that of the Agency.  Page 39.
--this is a mischaracterization of testimony.  The witness answered this question, and he answered as the 30(b)(6) deponent so his knowledge is the agency's knowledge.

j.  (10) Mr. Carroll testified that he does not know how iTunes saves or locates or looks at text messages.  Page 47
--This is outside the scope of the deposition notice, and outside the scope of the agency's expected knowledge since it is about a third party system (Apple iTunes); the witness also answered the question asked

k.  (11) When asked about "the specific instruction as to what text messages to preserve," Mr. Carroll just answered: "Chief counsel would be the expert on that," despite acknowledging that he had seen the litigation holds the previous week.  Pages 65-66.
--The litigation hold notices have been produced, so this issue has been answered.  Those documents speak for themselves.  The witness cannot be expected to memorize all of the words in a detailed document.

l.  (12) When asked what ATF requires a person required to preserve evidence who loses the evidence is supposed to do, Mr. Carroll, responded, "I'm not sure from the chief counsel's standpoint."  Page 67-68; 93.
--This mischaracterizes the testimony; the witness went on to answer the question

m.  (13) When asked questions about the collection and production of documents in this case regarding RFP 18, Mr. Carroll stated, "I don't know."  Page 72.

--This mischaracterizes the nature of the question and the answer.  Counsel asked a very specific question about two specific pages produced; the witness did not know why Frande responded a particular way.  This question was outside the scope of the deposition notice re why Frande responded a particular way.

n.  (14) Mr. Carroll did not have answers as to whether any of the witnesses deleted responsive texts.  Page 89-80.
--Presumably this refers to pages 79-80; this mischaracterizes the testimony.

o.  (15) Mr. Carroll did not know whether the same or different search criteria were used to locate emails or texts to/from Mr. Devlin versus other witnesses.  Pages 81-82.
--The witness answered this question.  Regarding emails, the question was outside the scope of the 30(b)(6) notice.

p.  (16) When asked who has the authority to examine an employee's phone to collect records on it, Mr. Carroll said he does not know.  Page 83.
--This question is outside the scope of the deposition notice regarding who has "authority" and potentially calls for a legal conclusion.

q.  (17) When asked how text messages can be searched on the Agency's iPhones, Mr. Carroll had to guess.  Page 84.
--The witness answered the question.  When asked if one can search with multiple terms, he did not know, but that question (about the search capabilities of an iPhone) is outside the scope of the deposition notice.

r.  (18) When asked whether the ATF gives instructions to its employees on how to search for texts that are responsive to litigation holds or discovery, Mr. Carroll said only, "I believe that is part of the litigation hold request."  Pages 94-95.
--The witness answered this question

s.  (19) When asked, "is there any obligation for Ms. Nunez to have told Ms. Meng, 'Some possible responsive records were lost last year when I lost my phone'" Mr. Carroll answered only, "I do not know the chief counsel process, but I would guess."  Page 96.
--The witness answered this question even though it was outside the scope of the 30(b)(6) deposition notice.

t.  (20) When asked when the Chief Counsels' office collected from Nunez any documents, records or texts, My Carroll had to "guess."  Page 97.
--This mischaracterizes the question and answer.  The witness answered the question.  In addition, what a specific number means in a particular entry in the

privilege log or an email is outside the scope of the deposition notice.  This information is privileged.

u.  (21) When asked to explain why Mr. Martinez actually produced responsive documents long after the Chief Counsel's request for them, Mr. Carroll had to "speculate."  Pages 97-98
--outside the scope of the deposition notice and privileged.

v.  (22) Mr. Carroll conceded that he does not know what documents were produced by which witnesses on what date.  Page 100.
--outside the scope of the deposition notice

Near the end of the deposition, I also articulated concerns about questions that Mr. Carroll was unable to answer under the Topics he was designated for.  Page 94-95, 99.  As a result, I need a follow-up deposition with him or some other witness who has been educated to answer my questions.

**Jesse Wing**
**MacDonald Hoague & Bayless**
**705 Second Avenue, Suite 1500**
**Seattle, WA 98104**
☎  **206.622.1604 | Fax 206.343.3961**
✉  **jessew@mhb.com   www.mhb.com**

*This email is intended only for the individual(s) to whom it is addressed and it may be a confidential communication protected by law.  Any unauthorized use, dissemination, distribution, disclosure, or copying is prohibited.  If you have received this communication in error, please notify me immediately by return email and delete this message from your system.*

---

**From:** Morehead, Sarah (USAWAW) [mailto:Sarah.Morehead@usdoj.gov]
**Sent:** Wednesday, June 05, 2019 11:17 AM
**To:** Jesse Wing; Chan, Priscilla (USAWAW)
**Cc:** Noemi Villegas
**Subject:** RE: Discovery Conference

Yes, we will.

---

**From:** Jesse Wing <JesseW@mhb.com>
**Sent:** Wednesday, June 05, 2019 10:42 AM
**To:** Morehead, Sarah (USAWAW) <SMorehead@usa.doj.gov>; Chan, Priscilla (USAWAW) <PChan@usa.doj.gov>
**Cc:** Noemi Villegas <NoemiV@mhb.com>
**Subject:** RE: Discovery Conference

That works.  Do you want to call me then?

Thank you,

Jesse

**Jesse Wing**
**MacDonald Hoague & Bayless**
**705 Second Avenue, Suite 1500**
**Seattle, WA 98104**
☎  **206.622.1604 | Fax 206.343.3961**
✉  **jessew@mhb.com   www.mhb.com**

---

*This email is intended only for the individual(s) to whom it is addressed and it may be a confidential communication protected by law.  Any unauthorized use, dissemination, distribution, disclosure, or copying is prohibited.  If you have received this communication in error, please notify me immediately by return email and delete this message from your system.*

---

**From:** Morehead, Sarah (USAWAW) [mailto:Sarah.Morehead@usdoj.gov]
**Sent:** Wednesday, June 05, 2019 9:20 AM
**To:** Jesse Wing; Chan, Priscilla (USAWAW)
**Cc:** Noemi Villegas
**Subject:** RE: Discovery Conference

How about tomorrow at 1:30 for a call?

---

**From:** Jesse Wing <JesseW@mhb.com>
**Sent:** Tuesday, June 04, 2019 3:47 PM
**To:** Morehead, Sarah (USAWAW) <SMorehead@usa.doj.gov>; Chan, Priscilla (USAWAW) <PChan@usa.doj.gov>
**Cc:** Noemi Villegas <NoemiV@mhb.com>
**Subject:** Discovery Conference

Sarah and Priscilla,

I am writing to address four discovery issues:

1.  **Mr. O'Sullivan**.  So far as I know, I have not received any documents about Mr. O'Sullivan that would be responsive to RFP 4.  When will I receive those documents?

2.  **Mr. Dvorak**.  Mr. Dvorak's 2014-2015 Performance Appraisal states that "While serving in the Oakland Field Office, SA Dvorak was relied upon to serve as Acting RAC a total of five (5) times during this reporting period, in addition to serving in this same capacity an additional five (5) times since arriving in Montana."  See bates number PRO2-00000034.  I would to receive the records reflecting the ten (10) times that he served as

a RAC in Montana and in Oakland while serving as a RAC, as they appear responsive to RFP 4 and would appear to require supplementing the Agency's answer to ROG 1.

3.  **ATF K9 Handler Michael Hodnett (of Baltimore)**.  I would like to schedule a deposition of Mr. Hodnett via VTC.  I expect it to last no more than 2 hours.  Please let me know some dates/times that work for that deposition.

4.  **Discovery Conference**.  When are you available for a discovery conference this week?  I am widely available.  I would like to discuss the following items, which include the issues that I raised in my email to you on Friday:

    a.  Instructions to Scott Carroll at his deposition not to answer questions about litigation holds, search terms, discovery collection, and production;

    b.  Objections to and incomplete and deficient answers and production response to Plaintiff's second set of written discovery, namely RFPs 17, 18, and 20 and ROG 8;

    c.  Addressing what I believe was an untimely litigation hold by the Agency; and

    d.  Inadequate search for documents responsive to Plaintiff's written discovery during the EEOC proceeding and continuing into this court proceeding, including allowing records custodians to conduct their own searches, failure to properly investigate denial of responsive documents, and failure to check itunes back-ups.

Thank you,

Jesse


**Jesse Wing**
**MacDonald Hoague & Bayless**
**705 Second Avenue, Suite 1500**
**Seattle, WA 98104**
☎  **206.622.1604 | Fax 206.343.3961**
✉  **jessew@mhb.com   www.mhb.com**

*This email is intended only for the individual(s) to whom it is addressed and it may be a confidential communication protected by law.  Any unauthorized use, dissemination, distribution, disclosure, or copying is prohibited.  If you have received this communication in error, please notify me immediately by return email and delete this message from your system.*

# **<u>EXHIBIT 12</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

**Jesse Wing**

| | |
|---|---|
| **From:** | Morehead, Sarah (USAWAW) <SMorehead@usa.doj.gov> |
| **Sent:** | Wednesday, May 22, 2019 9:55 AM |
| **To:** | Jesse Wing; Chan, Priscilla (USAWAW) |
| **Subject:** | RE: Bishop v. Barr |

Defendant will not be supplementing its answer to Interrogatory No. 1 or RFP 4 because information about Agent Hodnett is not responsive.

---

**From:** JesseW <JesseW@mhb.com>
**Sent:** Tuesday, May 21, 2019 2:18 PM
**To:** Morehead, Sarah (USAWAW) <SMorehead@usa.doj.gov>; Chan, Priscilla (USAWAW) <PChan@usa.doj.gov>
**Subject:** Bishop v. Barr

Sarah and Priscilla,

I have received information that ATF K9 Handler in Baltimore (Michael J. Hodnett) is also a medic on an SRT team and has served also as Acting Supervisor of an Arson Explosives group for an extended period.  Please investigate and supplement the Government's answer to Interrogatory No. 1 and supplement the Government's production of related documents under RFP No. 4.  If this information is correct, I'll want to depose him via VTC as well.

Thank you,

Jesse

**Jesse Wing**
**MacDonald Hoague & Bayless**
**705 Second Avenue, Suite 1500**
**Seattle, WA 98104**
☎ **206.622.1604 | Fax 206.343.3961**
✉ **jessew@mhb.com   www.mhb.com**

*This email is intended only for the individual(s) to whom it is addressed and it may be a confidential communication protected by law.  Any unauthorized use, dissemination, distribution, disclosure, or copying is prohibited.  If you have received this communication in error, please notify me immediately by return email and delete this message from your system.*

# **<u>EXHIBIT 13</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Office of Equal Employment Opportunity*

September 7, 2016

Washington, DC 20226

www.atf.gov

106000: BB
2623

MacDonald Hoague & Bayless
RECEIVED

**SEP 20 2016**

Mr. Jesse Wing
MacDonald Hoague & Bayless
Attorneys and Counselors at Law
705 Second Avenue, Suite 1500
Seattle, Washington 98104

RE:   NOTICE OF RECEIPT OF COMPLAINT OF DISCRIMINATION
        DOCKET NUMBER:  ATF-2016-00924

Dear Mr. Wing:

This is to acknowledge receipt of the discrimination complaint of your client, Cheryl Bishop,
dated and filed on August 31, 2016, against the Department of Justice (DOJ), Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF).  This complaint has been assigned DOJ, Docket
Number:  ATF-2016-00924.  Please include this case number on all future correspondence or
any documents regarding this complaint.

If your complaint is accepted, it will be investigated.  ATF is required to conduct a complete
investigation of all complaints within **180 days** of the filing date, unless the parties agree in
writing to extend the investigation.  You will receive a copy of the investigative file and will
have an opportunity to request a final agency decision or a hearing before an Equal Employment
Opportunity Commission (EEOC) Administrative Judge.

If your entire complaint is dismissed, you may appeal the Department's decision to the EEOC
Office of Federal Operations, within **30 days** of your receipt of the Department's dismissal.
Partial dismissals of complaints are not immediately appealable to the EEOC.  However, a partial
dismissal is reviewable by an EEOC Administrative Judge, if a hearing is requested on the
remainder of the complaint.  The Department's decision to dismiss a portion of a complaint is
not appealable until the Department takes final action on the remainder of the complaint.  If
settlement of the complaint is reached, the terms of the settlement will be stated, in writing, and
you will be given a copy.

-2-

ATF-2016-00924

If, within **30 days** after your receipt of the investigative file, you fail to request a final agency decision or a hearing, your complaint will be forwarded to the Department's Complaint Adjudication Officer for a final agency decision.

If you are dissatisfied with the final agency decision, you may file a Notice of Appeal with the EEOC, Office of Federal Operations within 30 calendar days after receiving the final decision.

The appeal should be mailed to the:

> Director, Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 77960
> Washington, DC  20013

Or hand delivered to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> Appellate Review Programs
> 131 M Street, NE
> Washington, DC  20507

Or sent by fax to:

> (202) 663-7022

At the same time, you must furnish a copy of the appeal to this office.  In or attached to the appeal to the EEOC, you must certify the date and method by which service was made on the Department of Justice.  You may submit a brief or statement to support your appeal to the Office of Federal Operations, EEOC, within 30 calendar days after filing the Notice of Appeal.

Instead of an appeal, you have the right to file a civil action in Federal District Court on matters raised in the administrative process:

a.   Within **90 days of receipt** of the final action on an individual or class complaint if no appeal has been filed;

b.   After **180 days from the date of filing** an individual or class complaint if an appeal has not been filed and final action has not been taken;

c.   Within **90 days of receipt** of the EEOC's final decision on the appeal; or

-3-

ATF-2016-00924

      d.      After **180 days from the date of filing an appeal** with the EEOC if there has been no final decision by the EEOC.

If you have any questions, please contact me at (202) 648-7398.

                Sincerely,

                Robynn Ferguson-Russ
                Deputy Chief, EEO

cc:     Cheryl D. Bishop
        11520 20th Avenue, NE
        Seattle, WA  98125

# **EXHIBIT 14**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Office of Equal Employment Opportunity*

MacDonald Hoague & Bayless
RECEIVED

AUG 30 2016

August 19, 2016

Washington, DC 20226

www.atf.gov

# NOTICE OF RIGHT TO FILE A DISCRIMINATION COMPLAINT

SUBJECT:        Notice of Right to File a Discrimination Complaint

FROM:           Brenda Bryant
                EEO Complaints Manager (EEO Counselor)

TO:             Jesse Wing
                MacDonald Hoague & Bayless
                705 Second Avenue, Suite 1500
                Seattle, WA 98104

This is to inform you that on August 19, 2016, you were notified of the final counseling interview regarding the matter your client, Cheryl Bishop, presented to the Equal Employment Opportunity (EEO) Complaints Manager, Bureau of Alcohol, Tobacco, Firearms, and Explosives, Department of Justice.

The dispute you brought to my attention has not been resolved to your satisfaction, you are now entitled to file an individual discrimination complaint based on race, color, religion, sex, national origin, physical or mental disability, age, genetic information, and/or reprisal.  If you file a complaint, it must be in writing, signed, and filed within fifteen (15) calendar days after receipt of this notice to:

<div align="center">

Snider Page
Chief, Equal Employment Opportunity
99 New York Avenue, N. E., Room 3-E.320
Washington, DC 20226

</div>

A complaint shall be deemed timely if it is received or postmarked before the expiration of the 15-day filing period, or in the absence of a legible postmark, it is received by mail within five days of the expiration of the filing period.

2

The complaint must be specific and contain only those issues either specifically discussed with me or issues that are like or related to the issues that you discussed with me. It must also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same claims.

If you retain an attorney or any other person to represent you, you or your representative must immediately notify the Chief, EEO, in writing. You and/or your representative will receive a written acknowledgement of your discrimination complaint from the appropriate agency official.

If you file a complaint, you should name Loretta E. Lynch, Attorney General, Department of Justice.

EEO Complaints Manager

NOTE: A copy of this notice must be provided to the Chief, EEO or designee with the EEO Counselor's Report and will be made part of the complaint file.

You may contact me if a reasonable accommodation is needed to navigate the EEO process.

This notice was delivered by the following method:

| Certified/ | 7014 2120 0002 0887 5843 | 8/19/2016 |
| Registered Mail | Certified/Registered Number | Date Mailed |

| Hand Delivered | | |
| | Complainant's Signature | Date Delivered |

Enclosure:    Form DOJ-201A

        cc:    Cheryl Bishop
               11520 20th Avenue NE
               Seattle, WA  98125

# __EXHIBIT 15__

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

1

1        UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3

4    CHERYL BISHOP,

5                    Plaintiff,

6         vs.                    Case No. C18-00599-TSZ

7    JEFF SESSIONS, ACTING ATTORNEY
     GENERAL, DEPARTMENT OF JUSTICE,
8    ALCOHOL, TOBACCO, FIREARMS &
     EXPLOSIVES,
9
                     Defendant.
10   _____

11

12

13

14   VIDEOTAPED VIDEO TELECONFERENCED 30(b)(6) DEPOSITION OF

15                  CELINEZ NUNEZ

16

17                  July 8, 2019

18                  12:23 p.m.

19

20        1000 SW Third Avenue, Suite 600

21                  Portland, Oregon

22

23   REPORTED BY:

24   Melinda Hermansen

25   CSR No. 10-0420, RPR

49

1          THE WITNESS:  Correct.

2          MS. CHAN:  -- to the extent it goes outside the

3   scope.

4          MR. WING:  Okay.  Just to be clear, I think I

5   noted this deposition of her individually, and you

6   identified her also as a 30(b)(6).

7          MS. CHAN:  No.  You just -- you noted her as a

8   30(b)(6), and then we had her testify specifically as a

9   30(b)(6) for topic 5 and part of number 6.

10  BY MR. WING:

11     Q.  Okay.  Ms. Nunez, do you remember testifying in

12  your first deposition that you did not look for text

13  messages when asked for documents in this litigation

14  because you lost your phone three times in the past two

15  years?

16          MS. CHAN:  Object to the form.  Answer if you

17  know.

18          THE WITNESS:  I -- I went back and read my

19  affidavit.  And I didn't lose my phone.  I lost the

20  information because I had broken my phone.  So I didn't

21  physically lose my phone.

22  BY MR. WING:

23     Q.  So why did you testify that you had lost your

24  phone?

25     A.  I misspoke.  I didn't mean I lost my phone.  I

1    lost my information.  Once I broke my phone and I had to

2    get my phone replaced and I had to transfer everything

3    from one phone to the other.  So if I said that, I -- I

4    misspoke.  It's not that I lost it.

5        Q.  Now, do you recognize the name Scott Carol

6    (phonetic)?

7        A.  Yes.

8        Q.  Who is he?

9        A.  Wait, Scott Carol?  No, I don't.  I don't know

10   who Scott Carol is.

11           MS. CHAN:  I think you got the first name

12   wrong.

13           MR. WING:  What's his name?

14           MS. CHAN:  I don't know.

15           THE WITNESS:  If you're saying Gregory Carol --

16           MR. WING:  Oh.

17           MS. CHAN:  I think it's Greg Carol.

18   BY MR. WING:

19       Q.  Who is Gregory Carol?

20       A.  He works in our OST shop.  I don't know his

21   exact title.

22       Q.  And did he contact you in the past month or two

23   asking you about what efforts you made to collect

24   documents related to Cheryl Bishop's lawsuit?

25           MS. CHAN:  Object to the form.

1              THE WITNESS:  He --

2              MS. CHAN:  Answer if you know.

3              THE WITNESS:  He came over to my office and

4  asked me had I saved anything in iTunes.  I said "no."

5  He asked if he can look at my computer, because I told

6  him I have no idea how to search my computer.  He said

7  he can look at it and take a screenshot and see if I

8  did.  I absolutely allowed him to do it.  He took a

9  screenshot of my computer.

10 BY MR. WING:

11     Q.  When did this occur?

12     A.  A couple weeks ago.  I'm not sure the exact

13 date and time.

14     Q.  Did he contact you before that?

15     A.  He contacted me via e-mail maybe a week prior

16 to that saying, "Hey, do you have" -- I think it was

17 maybe on Friday.  "Hey, do you have time so I can stop

18 by your office?"  I wasn't around.  I told him he would

19 have to come, you know, later that afternoon.  I wasn't

20 available.

21              He e-mailed me again, said, "Hey, are you

22 available?"  At that point I said "yes," and that's when

23 he came to my office.

24     Q.  So you've only had one contact with him?

25     A.  I'm not sure.  Maybe I had two or three

1    versions -- I was trying to coordinate our schedules.

2        Q.   I guess I mean did you have only one contact

3    with him where you conveyed whether you had any

4    information that was -- or documents that were

5    responsive to requests?

6            MS. CHAN:  Object to the form.  Answer if you

7    know.

8            THE WITNESS:  That's correct.

9    BY MR. WING:

10       Q.   And didn't you tell him during those

11   communications that you had lost your phone three times

12   in the past two years?

13           MS. CHAN:  Object to the form, argumentative.

14   Answer if you know.

15           THE WITNESS:  No.  He had asked me if I had

16   lost my phone, and I said, "I never lost my phone.  I

17   lost my information."

18           And he said, "No.  I believe" -- he said, "No.

19   Maybe I" -- "maybe I misheard.  I thought you said you

20   had lost it."

21           I said, "I never lost it.  I just lost my

22   information."  So that's -- I actually spoke to our

23   counsel here about that.  I said, "Hey" --

24           MS. CHAN:  I'm going to object to the extent it

25   conveys any privileged communications between your

53

```
 1    counsel.

 2              THE WITNESS:  Thank you.

 3    BY MR. WING:

 4        Q.   So you broke your phone three times in two

 5    years?

 6        A.   Yeah.

 7        Q.   How did that happen?

 8        A.   About three times.

 9        Q.   How did that happen?

10        A.   I've dropped it.  I'm clumsy.  I've dropped my

11    phone.  I drop my personal phone all the time.

12        Q.   And so your work phone actually was destroyed

13    by dropping it each of these three times?

14        A.   It wasn't destroyed.  No, it wasn't destroyed.

15    The screen was cracked, and so I had to get a

16    replacement for it.  So they would send me a

17    replacement, and I -- it just takes me forever to

18    transfer everything over.  So I just -- I don't even do

19    all the transfers.  All I do is just change my number

20    and that's it.

21        Q.   Doesn't the agency recommend synching up with

22    iTunes?

23              MS. CHAN:  Again, I'm going to object to this

24    line of questioning as before as beyond the scope of the

25    30(b)(6) notice and what we've designated her for as a
```

54

1    30(b)(6) witness.

2    BY MR. WING:

3        Q.  You can answer.

4        A.  I'm not -- I'm not sure.  I'm not aware of the

5    agency's policy regarding backing up the information.

6        Q.  You don't recall ever getting e-mails from the

7    agency that says, "Remember to back up your phone"?

8            MS. CHAN:  Same objection, beyond the scope.

9    Answer if you know.

10           THE WITNESS:  I recall getting e-mails about

11   synching your computer, but I don't recall if I did get

12   any.  I'm not saying I never did.  I just don't recall

13   ever getting anything about synching my cell phone.

14   BY MR. WING:

15       Q.  And so when you cracked your glass on your

16   phone, you exchanged it without ever attempting to

17   transfer your data from your old phone to your new

18   phone?

19           MS. CHAN:  Objection, beyond the scope.  Answer

20   if you know.

21           THE WITNESS:  Oh, no.  We tried.  In fact, we

22   had a representative that came in from iPhones -- I

23   think it was -- AT&T was our -- my provider -- to help

24   me switch information over, but I didn't know the

25   initial password.  It was very difficult.  It took

1                        REPORTERS CERTIFICATE

2

3

4          I, Melinda Hermansen, CSR No. 10-0420,

5     Certified Shorthand Reporter, do hereby certify:

6          That the foregoing proceedings were taken

7     before me at the time and place therein set forth, at

8     which time the witness was put forth under oath by me;

9          That the testimony of the witness, the

10    questions propounded, and all objections and statements

11    made at the time of the examination were recorded

12    stenographically by me and were thereafter transcribed;

13         That a review of the transcript by the deponent

14    was not requested;

15         I further certify that I am not a relative or

16    employee of any attorney of the parties, nor financially

17    interested in the action.

18         I declare under penalty of perjury under the

19    laws of Oregon that the foregoing is true and correct.

20         Dated this day 20th day of July, 2019.

21

22

23

24    _____
      Melinda Hermansen
25    CSR No. 10-0420, RPR

# **<u>EXHIBIT 16</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

**Jesse Wing**

| | |
|---|---|
| **From:** | Morehead, Sarah (USAWAW) <Sarah.Morehead@usdoj.gov> |
| **Sent:** | Tuesday, June 04, 2019 2:47 PM |
| **To:** | Jesse Wing |
| **Cc:** | Chan, Priscilla (USAWAW) |
| **Subject:** | RE: Bishop v. Barr -- work production objections during Carroll deposition today |

Thanks, Jesse.  We will review and get back to you.

Sarah

**From:** Jesse Wing <JesseW@mhb.com>
**Sent:** Friday, May 31, 2019 4:14 PM
**To:** Morehead, Sarah (USAWAW) <SMorehead@usa.doj.gov>
**Subject:** Bishop v. Barr -- work production objections during Carroll deposition today

Sarah,

I am following up on a discovery dispute from today's deposition.  During the deposition you instructed the witness not to identify the specific search terms that the Government used in locating potentially responsive documents to Plaintiff's discovery on the ground that the terms are protected by the work product doctrine.  And you instructed the witness not to answer questions about what documents were collected and produced by which witnesses, when, on work product grounds.  I argued that the Government's efforts to meet its duty to identify, collect, and produce documents responsive to Plaintiff's discovery are not protected as work product and indeed the Model ESI Protocol and other efforts require cooperation and disclosure of the parties efforts.  You said to send you authority for my position.  Here it is.

Courts routinely require parties to disclose the search terms and other efforts that they engaged in to fulfill their responsibilities to comply with discovery. A local ruling to this effect is directly on point.  *See McNearney v. Washington Dep't of Corr.*, No. 11-5930, 2012 WL 3155099, at *6 (W.D. Wash. Aug. 2, 2012) (compelling defendant to supply the "identity of persons who performed the ESI searches, the ESI storage locations that were searched, and the search terms that were used" because they are relevant to "whether Defendant has made a reasonable and thorough search for responsive electronic records that may yield admissible evidence.").

Here are other examples.  *Ruiz-Bueno v. Scott*, No. 12-0809, 2013 WL 6055402, at *1 (S.D. Ohio Nov. 15, 2013) (compelling interrogatory response regarding the "efforts [defendants] made to comply with plaintiffs' previous discovery requests" and "what procedures or methods were used."); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 231-32 (E.D.N.Y.2007) (same); *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, No. 11-04001, 2013 WL 4511925, at *2 (N.D. Cal. Aug. 23, 2013) (ordering "disclosure in writing of the custodians searched, sources (e.g., emails, hard drives, hard copies) searched, and search terms used.").

In fact, in a fairly recent ruling, a court bluntly commented:  "During their meetings, **Google maintained that its search terms and choice of custodians were privileged under the work-product immunity doctrine,9 an argument it has abandoned no doubt in part because case law suggests otherwise.10** *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-0630, 2013 WL 1942163, at *1

1

(N.D. Cal. May 9, 2013) (ordering third party to provide a "list of the search terms and custodians [it] used to find and produce documents."). This case is noteworthy also because Google was ordered to disclose its efforts to comply with a subpoena, as a third party, and the court ruled that it was subject to the very same obligations to be cooperative and transparent in its compliance with discovery requests that parties are. Below are some excerpts from this ruling:

*2 Google opposed Apple's request during their meet-and-confer[8] and continues to oppose it before the court, although its arguments have shifted. During their meetings, Google maintained that its search terms and choice of custodians were privileged under the work-product immunity doctrine,[9] an argument it has abandoned no doubt in part because case law suggests otherwise.[10] In its opposition brief, Google asserts that producing the terms and the custodians would be unduly burdensome, but it provides no evidence from which the court could find that collecting a list of search terms and custodians compiled within the last six months would be oppressive or burdensome.[11] Google also offers to consider search terms and custodians that Apple believes should be used, but it refuses to explain its own search efforts.[12]

Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *2 (N.D. Cal. May 9, 2013)

Google raises an important question: is it "extraordinary" to expect third parties to be transparent about their discovery methods? Underlying Google's premise is that transparency in the discovery process is a burden or that the methods of discovery are somehow sacrosanct, and that revealing those methods opens the floodgates to more requests for discovery.

Although neither party cited to it, the court finds *DeGeer v. Gillis* instructive.[15] There, the court addressed search terms, custodians, and cost-shifting in conjunction with an ongoing dispute between the defendants in the case and a third party on whom the defendants had served a subpoena.[16] The defendants sought additional search terms and custodians based on their belief that the third party's terms and custodians did not lead to production of all responsive documents.[17] The defendants and the third party earlier had reached an impasse not unlike the one before this court: the third party refused to turn over its search terms and the defendants refused to offer new terms for the third party to consider for new searches.[18] To resolve that threshold conflict, the court notably ordered the third party to produce to the defendants the search terms and custodians it had used in an effort to facilitate meaningful discussions between the parties regarding the deficiencies.[19]

*3 In her discussion of cost-shifting, Judge Nolan provided what this court considers a persuasive answer to the question Google raises. She noted that the third party's "failure to promptly disclose the list of employees or former employees whose emails it proposed to search and the specific search terms it proposed to be used for each individual violated the principles of an open, transparent discovery process."[20] But Judge Nolan also noted that the third party's intransigence was no excuse for the defendants' failure to suggest any search terms or custodians of its own.[21] Looking to the principles of "cooperative, collaborative, and transparent discovery, electronic or conventional,"[22] she explained that "[t]he proper and most efficient course of action would have been agreement by [the third party and the defendants] as to search terms and data custodians prior to [the third party's] electronic document retrieval."[23] As Judge Nolan observed, "[s]electing search terms and data custodians should be a matter of cooperation and transparency among parties and non-parties."[24]

As the *DeGeer* court observed, transparency and collaboration is essential to meaningful, cost-effective discovery. Google's attempt to stand outside of these tenets because of its thirdparty status is unpersuasive. Although it should not be required to "subsidize" litigation to which it is not a party,[25] it confuses undue burden with its obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. Third-party status does not confer a right to obfuscation or obstinacy.

Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *2–3 (N.D. Cal. May 9, 2013)


There are many more court opinions that stand for these propositions.  Please let me know promptly whether you withdraw your instructions to Mr. Carroll not to answer my questions.  I expect to ask the same type of questions to other witnesses so I'd like to determine in short order whether I will need to file a motion on this issue.

Thank you.

Have a great weekend.

Jesse


**Jesse Wing**
**MacDonald Hoague & Bayless**
**705 Second Avenue, Suite 1500**
**Seattle, WA 98104**
☎ **206.622.1604 | Fax 206.343.3961**
✉ **jessew@mhb.com   www.mhb.com**


*This email is intended only for the individual(s) to whom it is addressed and it may be a confidential communication protected by law.  Any unauthorized use, dissemination, distribution, disclosure, or copying is prohibited.  If you have received this communication in error, please notify me immediately by return email and delete this message from your system.*

# **<u>EXHIBIT 17</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

| Bates Numbers | Title | Date | From | To | CC | BCC | Privilege |
|---|---|---|---|---|---|---|---|
| RFP17-00000001-RFP17-00000004 | LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 09/21/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MENG, KATHERI9F0F2427-C050-4FCE-966F-E1647EED0949D14> | LIT Holds <LITHolds@ATF.GOV>; Meng, Katherine A. <Katherine.Meng@atf.gov> | | Nunez, Celinez <Celinez.Nunez@atf.gov>; Robinson, Donald G. <Donald.Robinson@atf.gov>; Beasley, Roger L. <Roger.Beasley@atf.gov>; Gleysteen, Michael <Mike.P.Gleysteen@atf.gov>; Turk, Ronald B. <Ronald.Turk@atf.gov>; Hill, Thomas D. <Thomas.Hill@atf.gov>; Frande, Francis H. <Francis.Frande@atf.gov>; McMullan, William P. <William.McMullan@atf.gov>; Ryan, John F. <John.F.Ryan@atf.gov>; Leathem, Paul A. <Paul.Leathem@atf.gov>; Walker, S. Symone <Symone.Walker@atf.gov>; Ferguson-Russ, Robynn F. <Robynn.Ferguson-Russ@atf.gov>; Patterson, Charlie J. <Charlie.Patterson@atf.gov>; Martinez, Raphael <Raphael.Martinez@atf.gov>; Carroll, Gregory T. <Gregory.Carroll@atf.gov> | Attorney/Client / Work Product |
| RFP17-00000013-RFP17-00000023 | LITIGATION HOLD NOTICE Cheryl Bishop | 05/10/2017 | Meng, Katherine A. <Katherine.Meng@atf.gov> | LIT Holds <LITHolds@ATF.GOV>; Meng, Katherine A. <Katherine.Meng@atf.gov> | | | Attorney/Client / Work Product |
| RFP17-00000024-RFP17-00000035 | LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 02/28/2019 | Bolton, Katherine A. </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=4C69EEA439F54BCF8FF4371D613C8426-BOLTON, KAT> | LIT Holds <LITHolds@ATF.GOV>; Monfort, Lillian M. <Lillian.Monfort@atf.gov> | | Nunez, Celinez <Celinez.Nunet@atf.gov>; Robinson, Donald G. <Donald.Robinson@atf.gov>; Beasley, Roger L. <Roger.Beasley@atf.gov>; 'Gleysteen, Michael' <Mike.P.Gleysteen@atf.gov>; 'Turk, Ronald B.' <Ronald.Turk@atf.gov>; Hill, Thomas D. <Thomas.Hill@atf.gov>; Frande, Francis H. <Francis.Frande@atf.gov>; McMullan, William P. <William.McMullan@atf.gov>; Ryan, John F. <John.F.Ryan@atf.gov>; Leathem, Paul A. <Paul.Leathem@atf.gov>; Walker, S. Symone <Symone.Walker@atf.gov>; Ferguson-Russ, Robynn F. <Robynn.Ferguson-Russ@atf.gov>; Patterson, Charlie J. <Charlie.Patterson@atf.gov>; Martinez, Raphael <Raphael.Martinez@atf.gov>; Stewart, Tom R. <Thomas.Stewart@atf.gov>; Carroll, Gregory T. <Gregory.Carroll@atf.gov>; Blais, Jonathan E. <Jonathan.Blais@atf.gov>; Pleasants, Darek G. <Darek.Pleasants@atf.gov> | Attorney/Client / Work Product |
| RFP17-00000036-RFP17-00000046 | LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 09/28/2018 | Bolton, Katherine A. </O=MMS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MENG, KATHERI9F0F2427-C050-4FCE-966F-E1647EED0949D14> | LIT Holds <LITHolds@ATF.GOV>; Monfort, Lillian M. <Lillian.Monfort@atf.gov> | | Nunez, Celinez <Celinez.Nunez@atf.gov>; Robinson, Donald G. <Donald.Robinson@atf.gov>; Beasley, Roger L. <Roger.Beasley@atf.gov>; Gleysteen, Michael <Mike.P.Gleysteen@atf.gov>; Turk, Ronald B. <Ronald.Turk@atf.gov>; Hill, Thomas D. <Thomas.Hill@atf.gov>; Frande, Francis H. <Francis.Frande@atf.gov>; McMullan, William P. <William.McMullan@atf.gov>; Ryan, John F. <John.F.Ryan@atf.gov>; Leathem, Paul A. <Paul.Leathem@atf.gov>; Walker, S. Symone <Symone.Walker@atf.gov>; Ferguson-Russ, Robynn F. <Robynn.Ferguson-Russ@atf.gov>; Patterson, Charlie J. <Charlie.Patterson@atf.gov>; Martinez, Raphael <Raphael.Martinez@atf.gov>; Stewart, Tom R. <Thomas.Stewart@atf.gov>; Carroll, Gregory T. <Gregory.Carroll@atf.gov> | Attorney/Client / Work Product |
| RFP17-00000047-RFP17-00000049 | LITIGATION HOLD NOTICE_ Cheryl Bishop | 05/10/2017 | Meng, Katherine A. <Katherine.Meng@atf.gov> | LIT Holds <LITHolds@ATF.GOV>; Meng, Katherine A. <Katherine.Meng@atf.gov> | | | Attorney/Client / Work Product |



EXHIBIT 15
WIT: CARROLL
DATE: 5/31/19
Jolene C. Haneca CCR 2741

| Bates Numbers | Title | | | | | | BCC | Privilege |
|---|---|---|---|---|---|---|---|---|
| RFP17-00000058-<br>RFP17-00000068 | LITIGATION HOLD NOTICE REMINDER | Cheryl Bishop<br>(1) | 01/18/2018 | Meng, Katherine A. </O=MMS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MENG, KATHERI9F0F2427-C050-4FCE-966F-E1647EED0949D14> | Meng, Katherine A. <Katherine.Meng@atf.gov> | LIT Holds </o=mms/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=LIT Holdsfca3e97c-b377-4661-b7fd-dc17873dfab681b>; Monfort, Lillian M. <Lillian.Monfort@atf.gov> | Nunez, Celinez </o=mms/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=nunez, celinez2f1ad4c-6945-4e6f-b518-0e630a4f07a976f>; Robinson, Donald G. <Donald.Robinson@atf.gov>; Beasley, Roger L. <Roger.Beasley@atf.gov>; Gleysteen, Michael <Mike.P.Gleysteen@atf.gov>; Turk, Ronald B. <Ronald.Turk@atf.gov>; Hill, Thomas D. <Thomas.Hill@atf.gov>; Frande, Francis H. <Francis.Frande@atf.gov>; McMullan, William P. <William.McMullan@atf.gov>; Ryan, John F. <John.F.Ryan@atf.gov>; Leathem, Paul A. <Paul.Leathem@atf.gov>; Walker, S. Symone </o=mms/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=walker, s s.09aadd49-afc0-498d-98bb-c274fb504098498>; Ferguson-Russ, Robynn F. <Robynn.Ferguson-Russ@atf.gov>; Patterson, Charlie J. <Charlie.Patterson@atf.gov>; Martinez, Raphael </o=mms/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=martinez, rape61366eb-2b5b-4064-a6cf-d731e4218fdb3f2>; Stewart, Tom R. <Thomas.Stewart@atf.gov>; Carroll, Gregory T. | Attorney/Client /<br>Work Product |
| RFP17-00000069-<br>RFP17-00000079 | LITIGATION HOLD NOTICE REMINDER | Cheryl Bishop<br>(2) | 01/18/2018 | Meng, Katherine A. </O=MMS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MENG, KATHERI9F0F2427-C050-4FCE-966F-E1647EED0949D14> | Meng, Katherine A. <Katherine.Meng@atf.gov> | LIT Holds <LITHolds@ATF.GOV>; Monfort, Lillian M. <Lillian.Monfort@atf.gov> | Nunez, Celinez <Celinez.Nunez@atf.gov>; Robinson, Donald G. <Donald.Robinson@atf.gov>; Beasley, Roger L. <Roger.Beasley@atf.gov>; Gleysteen, Michael <Mike.P.Gleysteen@atf.gov>; Turk, Ronald B. <Ronald.Turk@atf.gov>; Hill, Thomas D. <Thomas.Hill@atf.gov>; Frande, Francis H. <Francis.Frande@atf.gov>; McMullan, William P. <William.McMullan@atf.gov>; Ryan, John F. <John.F.Ryan@atf.gov>; Leathem, Paul A. <Paul.Leathem@atf.gov>; Walker, S. Symone <Symone.Walker@atf.gov>; Ferguson-Russ, Robynn F. <Robynn.Ferguson-Russ@atf.gov>; Patterson, Charlie J. <Charlie.Patterson@atf.gov>; Martinez, Raphael <Raphael.Martinez@atf.gov>; Stewart, Tom R. <Thomas.Stewart@atf.gov>; Carroll, Gregory T. <Gregory.Carroll@atf.gov> | Attorney/Client /<br>Work Product |
| RFP17-00000080-<br>RFP17-00000090 | LITIGATION HOLD NOTICE REMINDER | Cheryl Bishop | 01/18/2018 | Meng, Katherine A. <Katherine.Meng@atf.gov> | Meng, Katherine A. <Katherine.Meng@atf.gov> | LIT Holds <LITHolds@ATF.GOV>; Monfort, Lillian M. <Lillian.Monfort@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP17-00000091-<br>RFP17-00000101 | LITIGATION HOLD NOTICE REMINDER | Cheryl Bishop<br>(1) | 05/25/2018 | Meng, Katherine A. </O=MMS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MENG, KATHERI9F0F2427-C050-4FCE-966F-E1647EED0949D14> | Meng, Katherine A. <Katherine.Meng@atf.gov> | LIT Holds <LITHolds@ATF.GOV>; Monfort, Lillian M. <Lillian.Monfort@atf.gov> | Nunez, Celinez <Celinez.Nunez@atf.gov>; Robinson, Donald G. <Donald.Robinson@atf.gov>; Beasley, Roger L. <Roger.Beasley@atf.gov>; Gleysteen, Michael <Mike.P.Gleysteen@atf.gov>; Turk, Ronald B. <Ronald.Turk@atf.gov>; Hill, Thomas D. <Thomas.Hill@atf.gov>; Frande, Francis H. <Francis.Frande@atf.gov>; McMullan, William P. <William.McMullan@atf.gov>; Ryan, John F. <John.F.Ryan@atf.gov>; Leathem, Paul A. <Paul.Leathem@atf.gov>; Walker, S. Symone <Symone.Walker@atf.gov>; Ferguson-Russ, Robynn F. <Robynn.Ferguson-Russ@atf.gov>; Patterson, Charlie J. <Charlie.Patterson@atf.gov>; Martinez, Raphael <Raphael.Martinez@atf.gov>; Stewart, Tom R. <Thomas.Stewart@atf.gov>; Carroll, Gregory T. <Gregory.Carroll@atf.gov> | Attorney/Client /<br>Work Product |
| RFP17-00000102-<br>RFP17-00000112 | LITIGATION HOLD NOTICE REMINDER | Cheryl Bishop | 05/25/2018 | Meng, Katherine A. <Katherine.Meng@atf.gov> | Meng, Katherine A. <Katherine.Meng@atf.gov> | LIT Holds <LITHolds@ATF.GOV>; Monfort, Lillian M. <Lillian.Monfort@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP17-00000113-<br>RFP17-00000123 | LITIGATION HOLD NOTICE REMINDER | Cheryl Bishop<br>(1) | 10/23/2018 | Bolton, Katherine A. </O=MMS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MENG, KATHERI9F0F2427-C050-4FCE-966F-E1647EED0949D14> | LIT Holds <LITHolds@ATF.GOV> | Bolton, Katherine A. <Katherine.Bolton@atf.gov> | Blais, Jonathan E. <Jonathan.Blais@atf.gov>; Pleasants, Darek G. <Darek.Pleasants@atf.gov> | Attorney/Client /<br>Work Product |

| Bates Numbers | Title | | | BCC | Privilege |
|---|---|---|---|---|---|
| RFP17-00000124-<br>RFP17-00000134 | LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 10/23/2018 | Bolton, Katherine A.<br><Katherine.Bolton@atf.gov> | LIT Holds <LITHolds@ATF.GOV> | Bolton, Katherine A.<br><Katherine.Bolton@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000001-<br>RFP18-00000001 | RE Bishop - discovery requests | 10/01/2018 | Beasley, Roger L. <Roger.Beasley@atf.gov> | Bolton, Katherine A.<br><Katherine.Bolton@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000002-<br>RFP18-00000004 | Re Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Beasley, Roger L. <Roger.Beasley@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000005-<br>RFP18-00000006 | Re Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Beasley, Roger L. <Roger.Beasley@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000007-<br>RFP18-00000007 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/11/2017 | Beasley, Roger L. <Roger.Beasley@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000008-<br>RFP18-00000009 | RE Bishop - discovery requests | 10/01/2018 | Bolton, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Beasley, Roger L. <Roger.Beasley@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000010-<br>RFP18-00000012 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Beasley, Roger L. <Roger.Beasley@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000013-<br>RFP18-00000014 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Beasley, Roger L. <Roger.Beasley@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000015-<br>RFP18-00000025 | FW LITIGATION HOLD NOTICE Cheryl Bishop | 09/21/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Devlin, Bradford L. <Bradford.Devlin@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000026-<br>RFP18-00000026 | I acknowledge, and I have domain and control over<br>responsive Agency records LITIGATION HOLD NOTICE<br>Cheryl Bishop | 05/11/2017 | Ferguson-Russ, Robynn F. <Robynn.Ferguson-<br>Russ@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000027-<br>RFP18-00000027 | I acknowledge, and I do not have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 02/28/2019 | Frande, Francis H. <Francis.Frande@atf.gov> | Bolton, Katherine A.<br><Katherine.Bolton@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000028-<br>RFP18-00000028 | I acknowledge, and I do not have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 05/25/2018 | Frande, Francis H. <Francis.Frande@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000029-<br>RFP18-00000030 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Frande, Francis H. <Francis.Frande@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000031-<br>RFP18-00000031 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/15/2017 | Frande, Francis H. <Francis.Frande@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000032-<br>RFP18-00000033 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Frande, Francis H. <Francis.Frande@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000034-<br>RFP18-00000035 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Frande, Francis H. <Francis.Frande@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000036-<br>RFP18-00000036 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 09/22/2017 | Gleysteen, Michael<br><Mike.P.Gleysteen@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000037-<br>RFP18-00000038 | RE Bishop - follow-up discovery | 09/06/2017 | Gleysteen, Michael<br><Mike.P.Gleysteen@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000039-<br>RFP18-00000039 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/11/2017 | Gleysteen, Michael<br><Mike.P.Gleysteen@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000040-<br>RFP18-00000041 | Bishop - follow-up discovery | 09/05/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Gleysteen, Michael<br><Mike.P.Gleysteen@atf.gov> | | Attorney/Client /<br>Work Product |

| Bates Numbers | Title | | | | BCC | Privilege |
|---|---|---|---|---|---|---|
| RFP18-00000042-<br>RFP18-00000042 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 05/25/2018 | Hill, Thomas D. <Thomas.Hill@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000043-<br>RFP18-00000044 | Re Revised Cheryl Bishop emails | 08/30/2017 | Hill, Thomas D. <Thomas.Hill@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | Hill, Thomas D. <Thomas.Hill@atf.gov> | Attorney/Client /<br>Work Product |
| RFP18-00000045-<br>RFP18-00000046 | RE Revised Cheryl Bishop emails | 08/30/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Hill, Thomas D. <Thomas.Hill@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000047-<br>RFP18-00000047 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 09/28/2018 | Martinez, Raphael <Raphael.Martinez@atf.gov> | Bolton, Katherine A.<br><Katherine.Bolton@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000048-<br>RFP18-00000048 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 05/25/2018 | Martinez, Raphael <Raphael.Martinez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000049-<br>RFP18-00000049 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 01/18/2018 | Martinez, Raphael <Raphael.Martinez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000050-<br>RFP18-00000051 | RE Bishop - discovery requests - response requested by<br>72117 | 09/05/2017 | Martinez, Raphael <Raphael.Martinez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000052-<br>RFP18-00000052 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/18/2017 | Martinez, Raphael <Raphael.Martinez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000053-<br>RFP18-00000054 | RE Bishop - discovery requests - response requested by<br>72117 | 09/05/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Martinez, Raphael<br><Raphael.Martinez@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000055-<br>RFP18-00000056 | RE Bishop - discovery requests - response requested by<br>72117 | 09/05/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Martinez, Raphael<br><Raphael.Martinez@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000057-<br>RFP18-00000058 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Martinez, Raphael<br><Raphael.Martinez@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000059-<br>RFP18-00000060 | RE Bishop - discovery requests - response requested by<br>72117 | 08/30/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | McMullan, William P.<br><William.McMullan@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000061-<br>RFP18-00000063 | Re Bishop - discovery requests - response requested by<br>72117 | 09/22/2017 | Nunez, Celinez <Celinez.Nunez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000064-<br>RFP18-00000066 | Re Bishop - discovery requests - response requested by<br>72117 | 09/22/2017 | Nunez, Celinez <Celinez.Nunez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000067-<br>RFP18-00000068 | Re Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Nunez, Celinez <Celinez.Nunez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000069-<br>RFP18-00000069 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/15/2017 | Nunez, Celinez <Celinez.Nunez@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000070-<br>RFP18-00000072 | Re Bishop - discovery requests - response requested by<br>72117 | 09/22/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Nunez, Celinez <Celinez.Nunez@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000073-<br>RFP18-00000074 | Re Bishop - discovery requests - response requested by<br>72117 | 09/22/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Nunez, Celinez <Celinez.Nunez@atf.gov> | | Attorney/Client /<br>Work Product |

| Bates Numbers | Title | | | | BCC | Privilege |
|---|---|---|---|---|---|---|
| RFP18-00000075-<br>RFP18-00000076 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Nunez, Celinez <Celinez.Nunez@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000077-<br>RFP18-00000078 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Nunez, Celinez <Celinez.Nunez@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000079-<br>RFP18-00000081 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Patterson, Charlie J.<br><Charlie.Patterson@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000082-<br>RFP18-00000082 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/11/2017 | Patterson, Charlie J.<br><Charlie.Patterson@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000083-<br>RFP18-00000085 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Patterson, Charlie J.<br><Charlie.Patterson@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000086-<br>RFP18-00000087 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Patterson, Charlie J.<br><Charlie.Patterson@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000088-<br>RFP18-00000088 | RE Robinson Deposition | 10/13/2017 | Robinson, Donald G.<br><Donald.Robinson@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000089-<br>RFP18-00000089 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/10/2017 | Robinson, Donald G.<br><Donald.Robinson@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000090-<br>RFP18-00000090 | RE No text messages re Bishop | 08/30/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Robinson, Donald G.<br><Donald.Robinson@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000091-<br>RFP18-00000093 | RE Bishop - discovery requests - response requested by<br>72117 | 09/05/2017 | Ryan, John F. <John.F.Ryan@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000094-<br>RFP18-00000094 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/11/2017 | Ryan, John F. <John.F.Ryan@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000095-<br>RFP18-00000096 | RE Bishop - discovery requests - response requested by<br>72117 | 08/31/2017 | Meng, Katherine A. </O=MMS/OU=EXCHANGE<br>ADMINISTRATIVE GROUP<br>(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MEN<br>G, KATHERI9F0F2427-C050-4FCE-966F-<br>E1647EED0949D14> | Ryan, John F. <John.F.Ryan@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000097-<br>RFP18-00000101 | RE Bishop - discovery request | 10/02/2018 | Stewart, Tom R. <Thomas.Stewart@atf.gov> | Bolton, Katherine A.<br><Katherine.Bolton@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000102-<br>RFP18-00000102 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE REMINDER Cheryl Bishop | 09/25/2017 | Turk, Ronald B. <Ronald.Turk@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000103-<br>RFP18-00000103 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/16/2017 | Turk, Ronald B. <Ronald.Turk@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |
| RFP18-00000104-<br>RFP18-00000104 | I acknowledge, and I have responsive records<br>LITIGATION HOLD NOTICE Cheryl Bishop | 05/11/2017 | Walker, S. Symone <Symone.Walker@atf.gov> | Meng, Katherine A.<br><Katherine.Meng@atf.gov> | | Attorney/Client /<br>Work Product |

# **<u>EXHIBIT 18</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

1

```
 1            U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

 2                    San Francisco District Office
   _____
 3
   CHERYL BISHOP,                )
 4                               )
              Complainant,       )
 5                               )
         -vs-                    )
 6                               )EEOC NO.:  550-2017-00322X
   JEFF SESSIONS, ATTORNEY       )
 7 GENERAL, DEPARTMENT OF        )AGENCY NO.:  ATF-2016-00924
   JUSTICE, ALCOHOL, TOBACCO,    )
 8 FIREARMS & EXPLOSIVES,        )
                                 )
 9            Agency.            )
   _____
10

11                         DEPOSITION OF

12                        DOUGLAS DAWSON

13 _____

14                         10:02 A.M.

15                  WEDNESDAY, OCTOBER 18, 2017

16                     SEATTLE, WASHINGTON

17

18

19

20

21

22

23                        REPORTED BY:

24                   AMY P. ROSTAD, RPR
                       WA CCR NO. 1901
25                     BCSRA NO. 524
```

26

1           You may answer.

2    A. Yes.

3    Q. (By Mr. Wing)  Okay.  Did you communicate via e-mail?

4    A. At times we communicated via e-mail, yes.

5    Q. Did you communicate with each other via text?

6    A. We did.

7    Q. And, of course, in person?

8    A. Yes.

9    Q. And on the telephone?

10   A. On the telephone.

11   Q. Okay.  At the time of this document, June of 2016, what

12      was your working relationship with your supervisor,

13      Mr. McMullan?

14   A. It was fresh and brand new.  We'd just transitioned --

15      I had just transitioned from one DAD to Bill McMullan,

16      but we had a very, you know, open and jovial

17      relationship.  Very professional, as well.

18   Q. You'd known him for many years; is that right?

19   A. We kind of laughed that at one point I supervised him

20      and now he was supervising me, so . . .

21   Q. Okay.  What sort of things did you communicate about

22      with your supervisor?

23   A. Significant developments in the Seattle field division,

24      both, you know, law enforcement issues, compliance,

25      regulatory issues, personnel issues.

180

1    DATE:  THURSDAY, NOVEMBER 9, 2017

2    TO:  KATHERINE A. MENG
          Katherine.Meng@atf.gov

3

     CASE:  CHERYL BISHOP vs JEFF SESSIONS, ATTORNEY GENERAL,
4    DEPARTMENT OF JUSTICE, ALCOHOL, TOBACCO, FIREARMS &
     EXPLOSIVES

5    CASE NO.:  550-2017-00322X
     DEPOSITION OF:  DOUGLAS DAWSON
6    DATE TAKEN:  WEDNESDAY, OCTOBER 18, 2017
     PLACE TAKEN:  SEATTLE, WASHINGTON
7    COURT REPORTER:  AMY PATRICIA ROSTAD, RPR, CCR NO. 1901
     SIGNATURE:  RESERVED

8

         Please have the witness read your copy of the
9    transcript, make any corrections or changes on the errata
     sheet attached, and sign the affidavit.  You may file the
10   signed affidavit along with any corrections with the
     original transcript that was sent to you.  Please also
11   e-mail a scanned copy to amy@lakesidereporting.com.

12       If the witness does not read and sign the transcript
     within 30 days, the original transcript may be used in
13   these proceedings without his/her corrections.

14       If you have any questions, please call.  Thank you for
     your assistance.

15

16
                         Sincerely,
17

18

19
                 Amy P. Rostad, RPR, CCR No. 1901
20                 amy@lakesidereporting.com

21

22

23

24

25   cc: JESSE WING

# **<u>EXHIBIT 19</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

1

The Honorable Thomas S. Zilly

2

3

4

5

6

7                                       UNITED STATES DISTRICT COURT
                                       WESTERN DISTRICT OF WASHINGTON
8                                                AT SEATTLE

9    CHERYL BISHOP,                                    No. C18-00599-TSZ

10                        Plaintiff,                   DEFENDANT'S OBJECTIONS AND
                                                      RESPONSES TO PLAINTIFF CHERYL
11         v.                                          BISHOP'S SECOND SET OF DISCOVERY
                                                      TO DEFENDANT
12   WILLIAM BARR, ATTORNEY GENERAL,
     DEPARTMENT OF JUSTICE, ALCOHOL,
13   TOBACCO, FIREARMS & EXPLOSIVES,

14                        Defendant.

15

16

17              **INTERROGATORIES AND REQUESTS FOR PRODUCTION**

18   **REQUEST FOR PRODUCTION NO. 17:**  Please produce all litigation hold notices pertaining

19   to Complainant's allegations at all stages of her current dispute with Defendant, including but

20   not limited to in response to her initial May 2016 memorandum alleging discrimination and

21   harassment, her EEOC charge thereafter, pleadings with the EEOC, and the filing of her federal

22   lawsuit.

23   **RESPONSE:**  Defendant objects to this request for production as seeking documents that are

24   irrelevant and not likely to lead to the discovery of admissible evidence.  Defendant also objects

25   because the request seeks documents that are protected by the work product doctrine and

26   attorney client privilege. Without waiving those objections, Defendant is producing documents

27   RFP17-00000005-12.

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 1

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**REQUEST FOR PRODUCTION NO. 18:**  Please produce all communications about the preservation of, search for, and collection of text messages relevant to Plaintiff's allegations, responsive to the Agency's litigation hold, or responsive to Plaintiff's discovery requests at any stage of her dispute that culminated in this federal lawsuit.

**RESPONSE:**  Defendant objects to this request for production as seeking documents that are irrelevant and not likely to lead to the discovery of admissible evidence.  Defendant also objects to the request on the grounds that it seeks information that is protected by attorney client privilege and/or the work product doctrine.  The Agency further objects to the extent this request seeks information that is already in the possession of Plaintiff or equally accessible to her.

**INTERROGATORY NO. 7:**  Please identify the name and job title of each person who was issued: (a) a litigation hold notice pertaining to Complainant's allegations at any stage of her dispute with Defendant; (b) the date and method by which that person received such notice; (c) and all communications about the preservation of, search for, and collection of text messages relevant to Plaintiff's allegations, responsive to the Agency's litigation hold, or responsive to Plaintiff's discovery requests at any stage of her dispute that culminated in this federal lawsuit.

**ANSWER:**  Defendant objects to this interrogatory as seeking information that is irrelevant and not likely to lead to the discovery of admissible evidence.  Defendant also objects to the request on the grounds that it purports to seek information that is protected by attorney client privilege and/or the work product doctrine.

| Name | Title | Method | Date |
|------|-------|--------|------|
| | | | |
| Celinez Nunez | Assistant Special Agent in Charge | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 2

Case No. C18-00599-TSZ

| | | | |
|---|---|---|---|
| Donald Robinson | Special Agent in Charge | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Roger Beasley | Assistant Director | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Michael Gleysteen | Assistant Director | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Ronald Turk | Associate Deputy Director | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Thomas Hill | Chief of Staff | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Francis Frande | Acting Deputy Assistant Director | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| William McMullan | Deputy Assistant Director | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| John Ryan | Division Chief | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Paul Leathem | Chief of Staff | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018 |

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 3

Case No. C18-00599-TSZ

| | | | 2/28/2019 |
|---|---|---|---|
| S. Symone Walker | Attorney | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Robynn Fergusson-Russ | Deputy Chief | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Charlie Patterson | Acting Deputy Assistant Director | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Raphael Martinez | Branch Chief | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Gregory Carroll | Records Officer | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Thomas Stewart | Program Manager | Email | 1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| Jonathan Blais | Assistant Special Agent in Charge | Email | 10/23/2018<br>2/28/2019 |
| Darek Pleasants | Special Agent in Charge | Email | 10/23/2018<br>2/28/2019 |
| Thomas Coutcher | Contractor | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| John Jones | IT Management Information Specialist | Email | 5/10/2017<br>9/21/2017<br>1/18/2018<br>5/25/2018<br>9/28/2018<br>2/28/2019 |
| George Fuller | IT Specialist | Email | 5/10/2017<br>9/21/2017 |

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 4

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | 1/18/2018 |
| | | | 5/25/2018 |
| | | | 9/28/2018 |
| | | | 2/28/2019 |
| Lillian Monfort | Attorney | Email | 1/18/2018 |
| | | | 5/25/2018 |
| | | | 9/28/2018 |
| | | | 2/28/2019 |
| Katherine Meng | Attorney | Email | 5/10/2017 |
| | | | 9/21/2017 |
| | | | 1/18/2018 |
| | | | 5/25/2018 |
| | | | 9/28/2018 |
| | | | 10/23/2018 |
| | | | 2/28/2019 |
| Bradford Devlin | Special Agent | Email | 5/10/2017 |
| | | | 9/21/2017 |
| | | | 1/18/2018 |
| | | | 5/25/2018 |
| | | | 9/28/2018 |
| | | | 2/28/2019 |

**REQUEST FOR PRODUCTION NO. 19:**  Please produce all spoliation memos (or other documentation of intentional destruction of data) since January 1, 2016 regarding the Agency-owned cell phones issued to Doug Dawson, Celinez Nunez, Brad Devlin, Michael Glysteen, Donald Robinson, John Ryan, Raphael Martinez, Charlie Patterson, and Jay Brown.

**RESPONSE:** Defendant objects to this request for production as irrelevant and not likely to lead to the discovery of admissible evidence.  Defendant further objects to this interrogatory as assuming facts not in evidence to the extent Plaintiff asserts that the Agency intentionally destroyed data.  Defendant additionally objects to this interrogatory on the grounds that it is argumentative and calls for speculation.  Defendant further objects to this request for production as overly broad in time as this request for production seeks information from January 1, 2016, which is prior to any event triggering a preservation obligation.  Without waiving those objections, Defendant does not have any responsive documents.

**INTERROGATORY NO. 8:**  Since January 2016, please explain in detail how you have preserved the data, text messages, photographs, and any other electronically stored information

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 5

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   on the cell phones that you issued to Special Agents and their superiors.  Your answer should

2   include the frequency of back-up, the retention period, the location of storage, the medium on

3   which it is stored, and the name and job title of the person most knowledgeable about these

4   topics.

5       **ANSWER:**  Defendant objects to this interrogatory as irrelevant and not likely to lead to

6   the discovery of admissible evidence.  Defendant further objects to the request because it is

7   vague and fails to reasonably identify what is sought.  Defendant further objects to this

8   interrogatory as overly broad in time as this interrogatory seeks information from January 1,

9   2016, which is prior to any event triggering a preservation obligation.  Notwithstanding those

10  objections and without waiving same, ATF O 1340.5A establishes the policy that electronic

11  messaging information related to ATF business is considered to be transitory record content, to

12  be deleted when no longer needed but in no more than 180 days, pursuant to DOJ Order 0801.04,

13  except in certain circumstances. Gregory Carroll, Records Office, Office of Science and

14  Technology, is the person most knowledgeable about these topics.

15

16  **INTERROGATORY NO. 9:**   Since January 2016, please explain in detail the policies and

17  procedures for reporting and documenting lost, stolen, or replaced Agency cell phones.

18      **ANSWER:**  Defendant objects to this interrogatory as irrelevant and not likely to lead to

19  the discovery of admissible evidence.  Defendant further objects to this interrogatory as overly

20  broad in time as this interrogatory seeks information from January 1, 2016, which is prior to any

21  event triggering a preservation obligation.  Notwithstanding those objections and without

22  waiving same, ATF O 1850.2F requires that within one hour of discovery, employees must

23  report any incident involving the loss or theft of a mobile wireless device to the Joint Support

24  Operations Center (JSOC), the Office of Science and Technology (OST) and to his/her

25  supervisor.  The employee must immediately complete and submit ATF F 1851.11, Initial

26  Reporting of Loss or Stolen Sensitive Property and Data.  Service will be suspended for 30 days

27

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 6

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   or until the device is recovered or found.  See produced documents Bates numbered RFP20-

2   000001-114.

3

4   **REQUEST FOR PRODUCTION NO. 20:**  Please produce all documentation of lost, stolen, or

5   replaced Agency phones issued to Doug Dawson, Celinez Nunez, Brad Devlin, Michael

6   Glysteen, Donald Robinson, John Ryan, Raphael Martinez, Charlie Patterson, and Jay Brown

7   since January 2016.

8   **RESPONSE:**  Defendant objects to this request for production as irrelevant and not likely to

9   lead to the discovery of admissible evidence.  Notwithstanding those objections and without

10  waiving same, see produced documents Bates numbered RFP20-000001-114.

11

12  **REQUEST FOR PRODUCTION NO. 21:**  Please produce all policies and procedures

13  regarding reporting and documenting lost or stolen Agency cell phones and preservation of data,

14  text messages, photographs, and any other electronically stored information on the cell phones

15  issued to Special Agents and their superiors.

16  **RESPONSE:**  Defendant objects to this interrogatory as irrelevant and not likely to lead to the

17  discovery of admissible evidence.  Notwithstanding those objections and without waiving same,

18  see produced documents Bates numbered RFP21-000001-319.

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 7

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    DATED this 28th day of May, 2019.

2                                        Respectfully submitted,

3                                        BRIAN T. MORAN
                                         United States Attorney
4

5                                        s/ Priscilla T. Chan
                                         PRISCILLA T. CHAN, WSBA #28533
6

7                                        s/ Sarah K. Morehead
                                         SARAH K. MOREHEAD, WSBA #29680
8                                        Assistant United States Attorneys
                                         United States Attorney's Office
9                                        700 Stewart Street, Suite 5220
                                         Seattle, Washington 98101-1271
10                                       Phone: (206) 553-7970
                                         Email: Priscilla.Chan@usdoj.gov
11                                       Email: Sarah.Morehead@usdoj.gov

12                                       Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 8

Case No. C18-00599-TSZ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        ~~VERIFICATION~~

2

3        I, Melissa Anderson, Associate Chief Counsel (Litigation), Bureau of Alcohol, Tobacco,

4    Firearms and Explosives, being duly sworn, states:

5    1.        I have read the Defendant's interrogatory responses in Defendant's Objections and

6    Responses to Plaintiff's Second Set of Discovery to Defendant.

7    2.        The factual information sought by the interrogatories is not within the personal

8    knowledge of any one employee or several employees of defendant.

9    3.        Information necessary to answer these interrogatories seeking factual information was

10   based on information from various sources within ATF or as provided by Plaintiff.

11   4.        I have no first knowledge of the facts, but after a diligent search of ATF's materials, and

12   consultation with the appropriate personnel, I state under penalty of perjury pursuant to 28

13   U.S.C. § 1746 that to the best of my information and belief, the factual information contained in

14   Defendant's objections and interrogatory responses is true and correct.

15

16   Dated this ___24th___ day of May, 2019.

17

18

19                                          _Melissa Anderson_
                                            Melissa Anderson

20

21

22

23

24

25

26

27

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 9

Case No. C18-00599-TSZ

1

<u>CERTIFICATE OF SERVICE</u>

2

3     I hereby certify that I am an employee in the Office of the United States Attorney for the

4     Western District of Washington and am a person of such age and discretion as to be competent to

      serve papers;

5

6     I hereby certify that on this date, I sent the foregoing Defendant's Responses and

      Objections to Plaintiff's Second Set of Discovery to Defendant, Privilege Log and disc

7     containing documents numbered RFP17-00000005 – 12, RFP20-00000001 - 114 and

8     RFP21-00000001 - 319 to the following recipient by e-mail and by United States first class mail,

9     postage pre-paid:

10

11            Jesse Wing
              MacDonald Hoague & Bayless

12            705 Second Avenue, Suite 1500
              Seattle, Washington 98104

13            Tel: 206-622-1604
              Email: JesseW@MHB.com

14

15

      DATED this 28th day of May, 2019.

16

17                              <u>s/ Julene Delo</u>
                                JULENE DELO, Legal Assistant

18                              United States Attorney's Office
                                700 Stewart Street, Suite 5220

19                              Seattle, Washington 98101-1271
                                Phone:  206-553-7970

20                              Fax:  206-553-4067
                                Email:  julene.delo@usdoj.gov

21

22

23

24

25

26

27

RESPONSES TO PLAINTIFF CHERYL BISHOP'S
SECOND SET OF DISCOVERY TO DEFENDANT - 10

Case No. C18-00599-TSZ

# **EXHIBIT 20**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

## Nunez, Celinez

| | |
|---|---|
| **From:** | Nunez, Celinez |
| **Sent:** | Friday, April 22, 2016 3:40 PM |
| **To:** | Bishop, Cheryl D. |
| **Cc:** | Dawson, Doug R. |
| **Subject:** | Re: Cheryl Bishop |

Sounds like you have it worked out! That's awesome! I will wait for the call.

Celinez Nunez
Assistant Special Agent in Charge
Seattle Field Division
Mobile: 202-341-6674
Office: 206-204-3205



On Apr 22, 2016, at 3:36 PM, Bishop, Cheryl D. <Cheryl.Bishop@atf.gov> wrote:

> I spoke earlier this week with OST AD Beasley and then today with his A-DAD Frande. Both conversations went very well and they would like to offer me the opportunity to TDY under their shop. It sounds like I can be of value to them and I'd like to pursue that option. I believe either AD Beasley or ADAD Frande will be reaching out to Division to discuss and confirm time frame that would be acceptable.
>
> AD Beasley also said he has spoken with AD Gleysteen who looked into the matter of bringing Alle. Beasley said Gleysteen approved of whatever Beasley wanted to do and bringing Alle and maintaining her certification was not an issue.
>
> Sent from my iPhone
>
> On Apr 22, 2016, at 2:49 PM, Nunez, Celinez <Celinez.Nunez@atf.gov> wrote:
>
>> Your thoughts?
>>
>> Celinez Nunez
>> Assistant Special Agent in Charge
>> Seattle Field Division
>> Mobile: 202-341-6674
>> Office: 206-204-3205
>>
>> 
>>
>> Begin forwarded message:

1

Bishop
Ex. 2

From: "Dawson, Doug R." <Douglas.Dawson@atf.gov>
Date: April 22, 2016 at 2:35:47 PM PDT
To: "Nunez, Celinez" <Celinez.Nunez@atf.gov>
Subject: FW: Cheryl Bishop

Another possibility.

Thank you,

Douglas R. Dawson
Special Agent in Charge
Seattle Field Division
206-204-3266
206-730-3702 (cell)

From: Robinson, Donald G.
Sent: Friday, April 22, 2016 10:14 AM
To: Dawson, Doug R. <Douglas.Dawson@atf.gov>
Subject: Cheryl Bishop

Hey Doug, just fyi. I don't know how the NETF position
went over, but we could also work something out to get her
in as a liaison officer (LNO) with the DHS Explosives Division
up in DC. We don't have anyone there for our R&D Division,
and they are definitely a partner we are trying to cultivate
now that they have some new management in place. We
have a small project in the works with them, but looking to
expand partnerships there. Obviously both positions count
as HQ time, but this isn't in fbi HQ...

*Donald G. Robinson*
*Special Agent in Charge*
**ATF National Center for Explosives Training and
Research**
**Corporal Road, Bldg. 3750**
**Redstone Arsenal**
**Huntsville, AL 35898**
**Office - (256) 261-7602**
**Cellular - (443) 250-1868**
**Email: Donald.Robinson@atf.gov**

2

# **<u>EXHIBIT 21</u>**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

**To:**      Nunez, Celinez[Celinez.Nunez@atf.gov]
**From:**    Dawson, Doug R.
**Sent:**    Thur 4/21/2016 9:31:24 PM
**Subject:** Re: Disparaging Remarks?

I await our conversation.

Douglas R. Dawson
Special Agent in Charge
Seattle Field Division
206-204-3266
206-730-3702 (cell)

Sent from my iPhone

On Apr 21, 2016, at 2:03 PM, Nunez, Celinez <Celinez.Nunez@atf.gov> wrote:


I would like to talk to you about this because I will need to address it.

Celinez Nunez
Assistant Special Agent in Charge
Seattle Field Division
Mobile: 202-341-6674
Office: 206-204-3205




Begin forwarded message:


**From:** "Bishop, Cheryl D." <Cheryl.Bishop@atf.gov>
**Date:** April 21, 2016 at 2:51:48 PM MDT
**To:** "Nunez, Celinez" <Celinez.Nunez@atf.gov>
**Subject: Re: Disparaging Remarks?**


He did via email.  I think he is minimizing, distorting and not being truthful
because of the source of the info on what he has been saying both inside and
outside the agency.  He claims that he told only one AUSA he thought I
"lacked street experience" and said that is his opinion and he doesn't care
what I think.  Not worth arguing with him - he's unprofessional and has
repeatedly engaged in inappropriate bullying behavior for years without
consequence.  He was not even with the agency when I was working
undercover, complex investigations and T-IIIs - he knows nothing about me.
And while he is certainly entitled to his personal opinion - what he is doing
and the behavior he is engaged in is out of line, inappropriate and
unprofessional.

Bishop
Ex. 3

I'll forward you his reply.

Sent from my iPhone

On Apr 21, 2016, at 1:11 PM, Nunez, Celinez <Celinez.Nunez@atf.gov> wrote:

> Has he replied to you? Once he does please let me know. I will be addressing this with him.

Celinez Nunez
Assistant Special Agent in Charge
Seattle Field Division
Mobile: 202-341-6674
Office: 206-204-3205

On Apr 21, 2016, at 1:27 PM, Bishop, Cheryl D. <Cheryl.Bishop@atf.gov> wrote:

> FYI, as his ASAC wanted you to know that I sent this to Devlin. I do not appreciate at all what he reportedly has been saying - but more importantly, the audience he is apparently saying it to.

-----Original Message-----
From: Bishop, Cheryl D.
Sent: Thursday, April 21, 2016 12:24 PM
To: Devlin, Bradford L. <Bradford.Devlin@atf.gov>
Subject: Disparaging Remarks?

Brad -

I've never been fond of rumor mills - and am old enough to understand the importance of going directly to the source.  But it has come to my attention that you've reportedly been making disparaging remarks about me and my qualifications if I were to put in for the RAC position in Eugene.

I tend to stand by the belief that people should form opinions of others for themselves and that who I am as a person, my work abilities and character will speak for itself.  I might think you're a jerk - but it would not be my place to try and convince others of that - they should judge you for themselves.

PROD-00000430

If is true that you've been engaged in making disparaging commentary about me - and comments to the effect that I lack the professional qualifications and would be a "train wreck" for the Eugene office - then I'd appreciate it if you would stop.  And  If it is your goal to somehow taint the image of me to other agents, especially the cadre of new young impressionable agents coming in, as well as other agency representatives  - then your actions do nothing but a dis-service to not only me both personally and professionally - but the image of our agency as well.

Despite the negative history between us - If you feel you have something you'd like to talk about or say to me directly - or express your opinion on my abilities - or lack of in your view - or why you feel I should not be the RAC in Eugene (or anywhere else for that matter) -  my cell is always on.

If the information I've received is incorrect - then I'd appreciate knowing that as well.

Sent from my iPhone

# **EXHIBIT 22**

To Declaration of Jesse Wing

In Support of Plaintiff's

Motion to Compel

1

2

3

4

5

6

7

8

9

The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | CHERYL BISHOP,

CASE NO.  C18-00599-TSZ

11 |                    Plaintiff,

12 |          v.

13 | MATTHEW WHITAKER,

14 |

15 |                    Defendant.

DEFENDANT'S FIRST SET OF
INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO PLAINTIFF *AND
PLAINTIFF'S OBJECTIONS, ANSWERS
AND RESPONSES THERETO*

16

17         Defendant requests that the plaintiff, Cheryl Bishop, under Fed. R. Civ. P. Rules 33 and

18 34, provide disclosures and responses under oath to the following interrogatories and requests for

19 production within thirty (30) days after service of the same and that plaintiff, under CR 26(e),

20 supplement disclosures and responses so provided.

21                          **I.        DEFINITIONS**

22         The following definitions apply throughout these requests:

23         1.        "Complaint" or "Amended Complaint" means the Amended Complaint you filed

24 in the above-captioned lawsuit.

25         2.        "Concerning" means all matters or things that in any way refer to, relate to,

26 describe, evidence, discuss, pertain to, constitute, bear upon, support, refute, undercut, or

27 comment in any way on the subject of the request.

28         3.        "Defendant" refers to Matthew Whitaker, Acting Attorney General, and any

person acting on behalf of the United States Department of Justice, including its employees,

agents, representatives, investigators, consultants, and attorneys.

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 1
11286.01 ne151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.     "Describe in detail" means to set out every aspect of every fact, circumstance, act, omission, or course of conduct known to you, relating in any way to the matter inquired about, including, without limitation, the date and place, the identity of each person present or connected with, or who has knowledge of the matter inquired about and the identity of any documents relating to the matter inquired about, and if anything was said by any person, the identity of each such person and each such statement, and if the statement in whole or in part was contained, reported, summarized or referred to in any documents, the identity of each such document.

5.     "Document" is synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Rule 34(a)(1)(A), and includes any written, recorded, or other graphic matter, however produced or reproduced. This definition includes, for example, papers, writings, emails, text messages, drawings, graphs, charts, calendars, diaries, notes, drafts, photographs, sound recordings, images, film or video, and other data or data compilations stored in any medium. The term "document" includes documents you possess or over which you have control, as well as documents in another's possession, of which you are aware. If a document has been prepared in several copies, or if additional copies have been made, and the copies are not identical or have undergone alteration, then each non-identical copy is a separate "document."

6.     "Identify," when referring to a document, means to state: (a) the type of document, (b) the general subject matter of the document; (c) the date of the document, (d) the author or authors, according to the document, and (e) the person or persons to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, instead of summarizing the document's contents in this way, you may simply produce a copy of the subject document. If for some reason it cannot be produced, state its present location and the name and address of the custodian, and why it cannot be produced.

7.     "Identify," when referring to a natural person, means to state the person's (a) full name, (b) present or last know residential address, (c) present or last known residential and cellular telephone numbers, (d) present or last known personal email address(es), (e) present or last known place of employment, (f) present or last known job title or description, (g) present or last known business address, (h) present or last known business telephone numbers, and (i) present or last known business email address.  Once a person has been identified in accordance

Defendant's First Set of Interrogatories and Requests for Production to Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case No. C18-00599-TSZ] - 2
11236.01 me15120f

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 with this subparagraph, only the name of that person need be listed in response to subsequent

2 discovery requesting the identity of that person.

3        8.      "Identify," when referring to an entity or organization, means to give (a) the legal

4 name of the entity or organization, (b) any business or assumed name under which it does, or has

5 done, business, (c) the address(es) of its principal place of business, (d) its main telephone

6 number, and (e) website(es), if any.

7        9.      "Medical Care Provider" means any form or kind of healthcare provider,

8 including, but not limited to any physicians, surgeons, nurses, nurse practitioners, therapists,

9 chiropractors, physician assistants, psychiatrists, counselors, psychologists, naturopaths,

10 acupuncturists, hospitals, inpatient or outpatient treatment center, surgical center, or diagnostic

11 center.

12       10.     "Person" means any individual, partnership, corporation, firm, association, or

13 other business or legal entity.

14       11.     "You" and "Your" mean Plaintiff Cheryl Bishop, as well as her attorneys, agents,

15 other representatives, and any other person acting on her behalf or under her control or direction.

16       12.     The conjunctions "and" and "or" will be construed disjunctively or conjunctively

17 as necessary to bring within the scope of the discovery request all responses that might otherwise

18 be construed to be outside of its scope.

19       13.     Any other words used in these requests will be defined according to standard

20 American English usage, as shown in a dictionary of the English language.

21           **II.**      **GENERAL INSTRUCTIONS**

22       1.      These interrogatories and requests for production seek information and documents

23 within your possession, custody, or control, including information known to, and documents

24 within the possession of, you and your attorneys, agents, or other representatives.

25       2.      If a document responsive to a request for production was destroyed or disposed

26 of, or is otherwise no longer in your care, custody, or control, state what disposition was made of

27 the document, the reason for such disposition, the date upon which it was so disposed and, if

28 applicable, the person who now has possession, custody, or control of the document.

      3.      Objections and claims of privilege should not be made in a general, blanket

fashion.  Instead, you must indicate which objections or claims of privilege are asserted with

regard to each interrogatory or request for production.  If you object to only part of an

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 3
11236.01 mc15120f

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  interrogatory or document request, you should indicate which objections or claims of privilege

2  are asserted with regard to each such part.

3      4.      With regard to attorney-client and work-product claims of privilege to

4  interrogatories, describe the factual and legal basis for your privilege claims, including relevant

5  dates, persons involved in the communication, subject matters involved, all persons present when

6  the communications occurred, all persons who have been told about any details of the

7  communication, and other information that would permit the Court to decide the validity of your

8  privilege claims.

9      5.      With regard to attorney-client and work-product claims of privilege to document

10  requests, you must prepare a detailed privilege log listing each document withheld, stating the

11  type of document (*e.g.,* email, letter, fax, etc.), document date, name and address of the preparer,

12  name and address of the intended recipient(s), and subject matter(s) of the document(s).

13      6.      If you object only in part to any interrogatory or request for production, respond

14  in full to the remaining portion(s).

15      7.      In responding to each request for production, please identify by number the

16  request(s) to which the documents are responsive. A document that responds to more than one

17  request, however, may be produced and referred to in a later response if the relevant portion is

18  marked or indexed.

19      8.      All documents should be produced in the same order as they are kept or

20  maintained by you in the ordinary course of business and in the notebook, booklet, binder, file,

21  folder, envelope, manual, or other container in which they are ordinarily kept or maintained.  If

22  for any reason the container cannot be produced, you must produce copies of all labels or index

23  tabs or other identifying markings on the container.

24      9.      If any part of a document is responsive to any of the following discovery requests,

25  the entire document must be produced, along with any attachments, drafts, and "non-identical"

26  copies.  A document is to be considered non-identical if it contains any comment, notation, or

27  marking not contained on the produced original; any draft or preliminary form is also a non-

28  identical document.

    10.      Documents originating in paper format should be scanned as images into Portable

Document Format ("PDF") files of not less than 300 dots per inch resolution with Optical

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 4
11286.01 ne151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 Character Recognition ("OCR") searchable text. Emails and other electronically store

2 information should be produced as PDF files as well.

3     11.    Documents produced in PDF format should be produced as follows:

4     a.    PDF files must contain OCR searchable text,

5     b.    PDF files must be unitized (i.e., one document per PDF file),

6     c.    PDF documents should be Bates numbered,

7     d.    PDF file names should include the first Bates number in the document,

8     e.    PDF documents should not contain any gaps in Bates numbering,

9     f.    Provide a volume number identifier for each CD or DVD produced that is unique

10 and runs in succession from the last volume produced (e.g., VOL001, VOL002, VOL003, etc.).

11     12.    Files that are not easily converted to image format, such as spreadsheets, and

12 drawing files, should be produced in native format.

13     13.    These interrogatories and requests for production are a continuing obligation upon

14 you to provide all information requested below until final disposition of this case.  Corrections

15 and supplemental answers are required under Rule 26.

16     14.    Failing to comply with your duty to correct or supplement answers and responses

17 may subject you to sanctions under Rule 37, including, but not limited to, the exclusion of

18 evidence favorable to you.

19

20     **II.    INTERROGATORIES & REQUESTS FOR PRODUCTION**

21

22 INTERROGATORY NO. 1.  Please describe each instance in which you claim in this lawsuit

23 that you were retaliated against by Defendant and describe in detail the basis for your belief that

24 each such instance constituted retaliation against you, including but not limited to the protected

25 activity you engaged in, the date you engaged in such activity, the acts and/or omissions of the

26 Agency that you contend constitute the basis for your complaint of retaliation, and every reason

27 why you believe that the protected activity you identified in your response was the reason for the

28 Agency's allegedly wrongful acts or omissions.

ANSWER:  Retaliation after Plaintiff filed a complaint of workplace harassment and

discrimination committed by ATF Supervisor Brad Devlin.  *See* May 3, 2016 memorandum of

Cheryl Bishop, Report of Investigation (ROI) pgs. 093-095.  Plaintiff's protected activity took

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 5
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  place on May 3, 2016, and in the days afterwards when she communicated with her chain of

2  command about her allegations.  *See* ROI pgs. 093-095.  In response, ATF management made

3  adverse changes to the conditions of Plaintiff's previously approved 1-year detail at headquarters

4  in Washington, D.C., shortly after Plaintiff submitted her complaint of workplace harassment and

5  discrimination committed by ATF Supervisor Brad Devlin.  *See* November 15, 2016 Affidavit of

6  Cheryl Bishop.  ROI pgs. 071-080.

7      ATF management had approved the Memorandum of Understanding (MOU) for

8  Plaintiff's promotional detail before Plaintiff's protected activity; then, after her protected

9  activity, ATF management altered the terms of her detail to add adverse terms and conditions,

10  including that she could not continue to work as a Canine Handler during her promotional detail,

11  that her canine would be retired, that after her detail she would have to recertify as a SACH and

12  with a new canine and commit to a new 5-year SACH position, and that after her detail ATF

13  would transfer her to Portland, OR, where she would have to work in close proximity to and at

14  times likely under the supervision of racist Supervisor Devlin—about who she had made EEO

15  complaints; ATF management's justifications for altering the MOU to add adverse conditions

16  were inconsistent, false, and illegitimate; and ATF treats comparators differently than it has

17  treated Plaintiff.

18      Special Agent Scott Dvorak, who did not engage in protected activity, was in ATF's

19  National Canine Division (NCD) canine class #104 with Plaintiff and received his assigned ATF

20  canine at the same time that Plaintiff received her assigned canine.  Agent Dvorak originally was

21  assigned to ATF San Jose Field Office as canine handler but received a paid move to Montana to

22  perform collateral duty as the On-the-Job Training Instructor (OJT) for new agents in the

23  Montana Office.  Agent Dvorak, while performing as OJT instructor for the Montana Office,

24  also continued to perform as a canine handler.  *See also* November 15th, 2016 Affidavit of

25  Cheryl Bishop.  ROI pgs. 071-080.

26      Special Agent Stephanie D'Andrea (white female): Less than two years as canine

27  handler. ATF offered Agent D'Andrea a position to serve simultaneously as ATF Public

28  Information Officer while maintaining her ATF canine. ATF management offered Agent

D'Andrea the options to perform both duties simultaneously, to perform canine duties only, or to

perform solely PIO duties and keep her ATF canine, named "Kara," as a pet.

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 6
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Supervisor Devlin continued to retaliate against Plaintiff.  Plaintiff was informed that as
2   of December 2017, Agent Jay Brown was aware of Supervisor Devlin continuing to make
3   negative, false, attacking, harmful, and derogatory comments about Plaintiff and her
4   qualifications as a special agent, including that she was unqualified and was a "train wreck."
5   Indeed, Devlin admitted in the second EEO investigation telling ATF Portland Supervisor
6   Benjamin Scoll that he made derogatory comments about Plaintiff, including calling her a
7   "trainwreck" and incompetent and that he was justified in making those comments about her.

8   Plaintiff also relies on the testimony taken during the depositions of Michael Gleysteen,
9   Donald Robinson, Douglas Dawson, Celinez Nunez, and Cheryl Bishop, and is awaiting
10  document production by Defendants as well as to schedule additional depositions. Discovery
11  continues.

12

13  REQUEST FOR PRODUCTION NO. 1:  Produce all documents concerning your Answer to
14  Interrogatory No. 1.

15  RESPONSE:  *See* Bishop 322 – 324 produced herewith.  Plaintiff already produced all
16  other responsive documents to Defendant as part of the EEO administrative process.  *See also*
17  Plaintiff's Initial Disclosures.

18

19  INTERROGATORY NO. 2.  Please identify each person whom you claim retaliated against you,
20  as described in your Answer to Interrogatory No. 1, describe in detail the basis for your belief
21  that you were retaliated against by that person, describe whether you believe that person was
22  aware of your protected activity and if so, all facts that support that belief.

23  ANSWER:
24  Assistant Special Agent in Charge Celinez Nunez
25  Special Agent in Charge Douglas Dawson
26  Assistant Director Michael Gleysteen
27  Special Agent in Charge Donald Robinson
28  Special Agent in Charge John Ryan
    Program Manager Raphael Martinez
    Acting Deputy Assistant Director Charlie Patterson
    Supervisor Bradford Devlin

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 7
11256.01 ne151200

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2   **Assistant Special Agent in Charge (ASAC) Celinez Nunez.**  After Plaintiff filed a

3   discrimination and harassment complaint against Supervisor Devlin, ASAC Nunez gave Plaintiff

4   several different explanations as to why the Agency changed the terms and conditions of

5   Plaintiffs detail to headquarters contrary to the signed MOU and what had been agreed.  ASAC

6   Nunez further advised Plaintiff that ATF would relocate Plaintiff to Portland if Plaintiff

7   proceeded with the headquarters detail.  Relocation to Portland would expose Plaintiff to

8   increased contact with Devlin and possibility of Devlin directly supervising the Plaintiff.  ASAC

9   Nunez was aware of Plaintiff's concerns because Plaintiff had engaged in several conversations

10  with ASAC Nunez describing to ASAC Nunez the history and pattern of Supervisor Devlin

11  committing incidents of racial harassment and discrimination.  ASAC Nunez was further aware

12  of Plaintiff's protected activity because Plaintiff had forwarded her May 3, 2016 memorandum

13  of workplace harassment and discrimination by Supervisor Devlin to ASAC Nunez, which

14  ASAC Nunez has admitted receiving.

15      On May 2, 2016, Plaintiff met with ASAC Nunez to discuss that Supervisor Devlin was

16  continuing to harass Plaintiff, was defaming Plaintiff to others inside and outside of ATF and

17  that Supervisor Devlin told Assistant United States Attorneys in Oregon that Plaintiff was a

18  "train wreck."  In response, ASAC Nunez told Plaintiff that she had a "candid" conversation

19  with Supervisor Devlin about his recently making disparaging comments about Plaintiff, but

20  ASAC Nunez made no mention of ATF taking any action, investigation, or discipline against

21  him for his misconduct.  During the conversation, ASAC Nunez asked Plaintiff, "would it make

22  you feel better if I wrote a letter for his file?"  ASAC Nunez then said, "you know, he will

23  probably just wipe his ass with it."  ASAC Nunez told Plaintiff that if Plaintiff "felt strongly

24  about it" and "if it would make you feel better" to have ASAC Nunez put something in Devlin's

25  file then Plaintiff was welcome to send ASAC Nunez something in writing and include any

26  relevant documents.  ASAC Nunez told Plaintiff it was "too bad previous managers did not

27  handle the situation" with Devlin.

28      On or about May 5, 2016, Plaintiff was speaking with ASAC Nunez outside the door of

ASAC Nunez's office.   ASAC Nunez and Plaintiff were discussing Plaintiff's harassment and

discrimination memorandum.  During the course of their conversation, ASAC Nunez told

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 8
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Plaintiff that Special Agent in Charge (SAC) Douglas Dawson told ASAC Nunez that "Devlin
2  does not like black people." ROI pg. 75

3        **Special Agent in Charge (SAC) Douglas Dawson.**  On May 4, 2016, SA Bishop saw
4  SAC Dawson standing outside the door of his office. She asked to speak with him to discuss the
5  complaint memo (dated May 3, 2016) that she had submitted about Supervisor Devlin so that he
6  could hear directly from her why she had written it. SAC Dawson invited her into his office and
7  they talked about her concerns and the incidents in her memo. It was apparent that SAC Dawson
8  had read the memo or had been briefed on it by ASAC Nunez. Plaintiff talked to SAC Dawson
9  about incidents outlined in her memo and how emotionally painful and tiring it had been for her
10 dealing with Devlin's inappropriate behavior over the years and that ATF never took action to
11 address it. She told SAC Dawson that the latest incident in which Devlin harassed her was
12 completely unprofessional, and that he had not only defamed and bad-mouthed her inside the
13 Agency but also had inflicted harm by defaming her to others outside the agency. Plaintiff was
14 emotional and frustrated speaking to SAC Dawson. SAC Dawson said he agreed that Devlin had
15 probably harmed Plaintiff's professional reputation. SAC Dawson then told Plaintiff that he was
16 the class coordinator when Devlin was a new hire at the academy. SAC Dawson told her that
17 Devlin "had issues" even then and stated "Devlin has always been a separatist" racially. *See* ROI
18 pg. 74/16-A.  SAC Dawson told Plaintiff that when the class was doing its final exercise, Devlin
19 and another student did not show up. The instructors searched for and found Devlin and the other
20 student on the beach drinking beer. SAC Dawson said Devlin probably should not have been
21 allowed to graduate. SAC Dawson also commented that he didn't understand why Devlin
22 behaved the way he did and he believed Devlin should "be more grateful" after "all the favors
23 Division had done" for him.

24        On June 19, 2016 ASAC Nunez advised Plaintiff via text that Plaintiff would have to
25 relocate to Portland if Plaintiff proceeded with the headquarters detail.  In the text message
26 ASAC Nunez wrote "according to Doug [Dawson], if we get a second Dog it will be for
27 Portland...if we get the March class the only spot you will be looking at upon your return will be
28 Portland." *See* ROI Affidavit of Cheryl Bishop exhibit 7d).

        Per the Agency's signed MOU, Plaintiff's one-year detail to headquarters would begin
July 10, 2016 and terminate July 8, 2017.  The Agency did not advertise a vacancy for a K9
handler in Seattle until December 27, 2017, and the corresponding K9 class to begin until April

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 9
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4, 2018, nine months after Plaintiff's HQ detail would have ended and she would have already

returned to Seattle.  In addition, the ATF K9 training class is 13 weeks and the advertised April

4, 2018 class ended on June 22, 2018.   Had the agency not retaliated against Plaintiff by

imposing several adverse conditions, including that Plaintiff retire her assigned K9, Plaintiff

would have resumed her K9 position and duties in Seattle in July 2017, almost a full-year before

a new handler could have started.  ASAC Nunez and SAC Dawson retaliated against Plaintiff

and threatened to transfer her to Portland despite the fact the agency had neither scheduled a K9

class nor advertised a K9 position in Seattle.  ASAC Nunez and SAC Dawson knew about

Supervisor Devlin's prior acts of harassment and threat of physical violence against Plaintiff and

knew that transferring her to Portland would subject her to increased contact with Devlin and

potential supervision by him.

      **Chief Raphael Martinez and Special Agent in Charge John Ryan**.  During the week

of April 25th, 2016 at Canine Recertification testing in San Diego, California, SAC Ryan and

Chief Martinez told Plaintiff they had heard about Plaintiff's HQ detail and congratulated her on

receiving the detail.  Plaintiff told SAC Ryan and Chief Martinez more specifics of the detail and

what it would entail.  Plaintiff told SAC Ryan and Chief Martinez that she would be working

under the Office of Science and Technology for Assistant Director (AD) Roger Beasely.

Plaintiff told them that per AD Beasley, the Special Agent in Charge of the Washington Field

Division (SAC Boxler) had heard Plaintiff would be on detail and had offered that anytime the

Washington Office needed a K9, the Plaintiff was welcome to participate.  Plaintiff told SAC

Ryan and Chief Martinez that AD Beasley said he was fully supportive of Plaintiff assisting the

Washington Field Division with her K9.  SAC Ryan and Chief Martinez expressed no concerns

or reservations about Plaintiff's detail or her assigned canine remaining in-service during the

detail; instead, they expressed their support and invited Plaintiff to visit and train whenever she

wished at the ATF canine facility in Front Royal, VA, while she was on detail to HQ.

      On June 9, 2016, after Plaintiff filed her May 3, 2016 memorandum complaint of racial

harassment and defamation by Supervisor Devlin, Chief Martinez told Plaintiff they were no

longer supportive of her detail and she would have to permanently retire her K9.  Plaintiff told

Chief Martinez she did not understand since it had been previously approved she could work and

keep her K9 in-service during the detail.  Chief Martinez told Plaintiff that the requirement she

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 10
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

retire her K9 had been approved by HQ and had gone as high as Acting Deputy Director Ronald
Turk.

**Assistant Director Michael Gleysteen.** AD Gleysteen had approved Plaintiff's HQ
detail and keeping her assigned K9 in-service. *See* November 15, 2016 Affidavit of Plaintiff;
ROI pgs. 071-080; December 6, 2016 Affidavit of Plaintiff, ROI pgs. 081-084.  But after
Plaintiff filed her May 3, 2016 complaint of racial harassment by Supervisor Devlin, AD
Gleysteen stated Plaintiff would have to return her ATF K9, contrary to the treatment of
similarly situated K9 handlers. *See* AD Gleysteen's affidavit statements in reference to Plaintiff
"returning her ATF issued K9" and "we would not allow an ATK K9 handler to prematurely step
out of the ATF K9 program," ROI pg. 152.

**Special Agent in Charge Donald Robinson** knew about Plaintiff's detail and that
Plaintiff would have her assigned K9 in-service during the detail.  SAC Robinson also offered
Plaintiff a HQ detail knowing that Plaintiff would keep her assigned K9 in-service during the
detail.  After Plaintiff filed her May 3, 2016 complaint of racial harassment by Supervisor
Devlin, SAC Robinson stated Plaintiff would have to retire her assigned K9 if Plaintiff
proceeded with the HQ detail.  *See* November 15, 2016 Affidavit of Plaintiff ROI, pgs. 071-080;
December 6,  2016 Affidavit of Plaintiff, ROI pgs. 081-084.

**Acting Deputy Assistant Director Charlie Patterson**. Shortly after Plaintiff's May 3,
2016 complaint of racial harassment by Supervisor Devlin, ADA Patterson participated in (at
least) email communications facilitating discussions among ATF management leading to the
agency imposing the adverse retaliatory terms and conditions on Plaintiff's promotional detail.

**Supervisor Bradford Devlin**.  *See* answer to Interrogatory No. 1.  A few days after
Plaintiff made her May 3, 2016 complaint, SAC Dawson and ASAC Nunez spoke to Supervisor
Devlin and notified him of Plaintiff's protected activity.

Plaintiff also relies on the testimony taken during the depositions of Michael Gleysteen,
Donald Robinson, Douglas Dawson, Celinez Nunez, and Cheryl Bishop, and is awaiting
document production by Defendants as well as to schedule additional depositions. Discovery
continues.

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 11
11256.01 ne151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  REQUEST FOR PRODUCTION NO. 2:  Produce all documents concerning your Answer to
2  Interrogatory No. 2.

3      RESPONSE:  Plaintiff already produced all responsive documents to Defendant as part of
4  the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

5

6  INTERROGATORY NO. 3.  Please describe the facts that you claim support your belief that
7  Defendant created a hostile work environment against you and the basis for the claim.

8      ANSWER:  Supervisor Devlin engaged in repeated incidents of racial harassment and
9  intimidation against Plaintiff.  *See* Plaintiff's May 3, 2016 memorandum to her chain of
10  command.  Despite notifying ATF management several times that Supervisor Devlin's behavior
11  was offensive, intimidating and unwelcome, the Agency failed to stop or prevent Supervisor
12  Devlin from continuing to harass Plaintiff.

13      When not physically located in the same office as Plaintiff, Devlin sent harassing emails
14  disparaging African Americans to the Plaintiff and the group she was temporarily supervising.
15  Plaintiff was the only African American in the group at the time that Devlin sent the racist and
16  disparaging emails.  ATF management in Seattle was told about the emails but took no action.
17  When Devlin was Plaintiff's direct Supervisor Devlin approached the Plaintiff as if he was going
18  to physically strike her.  Plaintiff reported the incident to management and documented it in an
19  email to Devlin's immediate Supervisor, however the Agency took no action.  Plaintiff remains
20  nervous and guarded about the possibility of physical violence occurring at work, most
21  specifically from Devlin, because the agency failed to address the previous incident and Plaintiff
22  suffered an adverse action (removal from her assigned group) after reporting the incident.
23  Plaintiff became aware that Devlin wears a white supremacist tattoo when he displayed it at a
24  work-related function and grinned at Plaintiff while displaying it.  Former SAC Dawson made a
25  statement under oath that Devlin said he would not get rid of the tattoo until others within the
26  agency got rid of theirs.  Plaintiff is disturbed and uncomfortable knowing Devlin has a racist
27  tattoo and that others at work might also have the tattoo or harbor resentment toward the Plaintiff
28  in solidarity with Devlin.

Supervisor Devlin continued to harass and discriminate against Plaintiff.  Plaintiff was
informed that as of December 2017, Agent Jay Brown was aware of Supervisor Devlin
continuing to make negative, false, attacking, harmful, and derogatory comments about Plaintiff

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 12
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    and her qualifications as a special agent, including that she was unqualified and was a "train

2    wreck."

3        Devlin's repetitive disparaging attacks of Plaintiff, both inside and outside of the Agency,

4    have caused Plaintiff to feel unwelcome at work, uncomfortable, nervous, anxious, and wary.

5        Despite Plaintiff's repeated reports of Devlin's misconduct, Defendant has failed to take

6    prompt and effective remedial action, and instead has engaged in retaliation against Plaintiff as

7    explained above in answer to Interrogatory No. 1.

8

9        *See also* Plaintiff's answers to Interrogatory Nos. 14 and 15 in Complainants Answers

10   and Responses to Agency's Interrogatories, Requests for Admissions, and Requests for

11   Production of Documents (EEOC Dkt. No. 550-2017-00322X), dated August 10, 2017.

12

13       Plaintiff also relies on the testimony taken during the depositions of Michael Gleysteen,

14   Donald Robinson, Douglas Dawson, Celinez Nunez, and Cheryl Bishop, and is awaiting

15   document production by Defendants as well as to schedule additional depositions. Discovery

16   continues.

17

18   REQUEST FOR PRODUCTION NO. 3: Produce all documents concerning your Answer to

19   Interrogatory No. 3.

20       RESPONSE: *See* Bishop 325 – 329 produced herewith.  Plaintiff already produced all

21   responsive documents to Defendant as part of the EEO administrative process. *See also*

22   Plaintiff's Initial Disclosures.

23

24   INTERROGATORY NO. 4:  Please describe each instance in which you claim in this lawsuit

25   that Defendant discriminated against you based on your race and describe in detail the basis for

26   your belief that each such instance constituted discrimination against you.

27       ANSWER:  The adverse terms and conditions that ATF placed on Plaintiff's promotional

28   detail are discriminatory, and were imposed on Plaintiff based on her race. *See* Plaintiff's

     answer to Interrogatory No. 1.  ATF treats her non-black comparators better. Special Agent Scott

     Dvorak, who is not black, was in ATF's National Canine Division (NCD) canine class #104 with

     Plaintiff and received his assigned ATF canine at the same time Plaintiff received her assigned

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 13
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  canine.  Agent Dvorak originally was assigned to ATF San Jose Field Office as canine handler
2  but received a paid move to Montana to perform collateral duty as the On-the-Job Training
3  Instructor (OJT) for new agents in the Montana Office.  Agent Dvorak, while performing as OJT
4  instructor for the Montana Office, also continued to perform as a canine handler.  Yet, Defendant
5  refused to allow SA Bishop, who is African-American, to continue as a canine handler during
6  her promotional detail and subjected her to additional burdens to fulfill at the end of her detail
7  that Defendant did not subject Agent Dvorak to.  *See* also November 15th, 2016 Affidavit of
8  Cheryl Bishop.  ROI pgs. 071-080.

9

10  *See also* Plaintiff's answer to Interrogatory No. 6 in Complainants Answers and
11  Responses to Agency's Interrogatories, Requests for Admissions, and Requests for Production of
12  Documents (EEOC Dkt. No. 550-2017-00322X), dated August 10, 2017.

13

14  Plaintiff also relies on the testimony taken during the depositions of Michael Gleysteen,
15  Donald Robinson, Douglas Dawson, Celinez Nunez, and Cheryl Bishop and is awaiting
16  document production by Defendants as well as to schedule additional depositions. Discovery
17  continues.

18

19  REQUEST FOR PRODUCTION NO. 4:  Produce all documents concerning your Answer to
20  Interrogatory No. 4.

21  RESPONSE:  Plaintiff already produced all responsive documents to Defendant as part of
22  the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

23

24  INTERROGATORY NO. 5:  Please identify each person whom you claim discriminated against
25  you, as described in your Answer to Interrogatory No. 4, and describe in detail the basis for your
26  belief that that person discriminated against you.

27  ANSWER:
28  Assistant Special Agent in Charge Celinez Nunez
   Special Agent in Charge Douglas Dawson
   Assistant Director Michael Gleysteen
   Special Agent in Charge Donald Robinson

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 14
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Special Agent in Charge John Ryan

2  Program Manager Raphael Martinez

3  Acting Deputy Assistant Director Charlie Patterson

4  The discriminatory acts and omissions committed by these individuals are the same as

5  those illegally motivated by retaliation, as articulated by Plaintiff in her answer to Interrogatory

6  No. 1. Plaintiff also relies on the testimony taken during the depositions of Michael Gleysteen,

7  Donald Robinson, Douglas Dawson, and Celinez Nunez and is awaiting document production by

8  Defendants as well as to schedule additional depositions. Discovery continues.

9

10  REQUEST FOR PRODUCTION NO. 5: Produce all documents concerning your Answer to

11  Interrogatory No. 5.

12  RESPONSE: Plaintiff already produced all responsive documents to Defendant as part of

13  the EEO administrative process. *See also* Plaintiff's Initial Disclosures.

14

15  INTERROGATORY NO. 6: Please identify and describe in detail every reason why you contend

16  the Agency's acts and/or omissions identified in your response to Interrogatory No. 4 were

17  motivated by your race.

18  ANSWER: *See* Plaintiff's answer to Interrogatory No. 4. Plaintiff also relies on the

19  testimony taken during the depositions of Michael Gleysteen, Donald Robinson, Douglas

20  Dawson, Celinez Nunez, and Cheryl Bishop and is awaiting document production by Defendants

21  as well as to schedule additional depositions. Discovery continues.

22

23  REQUEST FOR PRODUCTION NO. 6: Produce all documents concerning your Answer to

24  Interrogatory No. 6.

25  RESPONSE: Plaintiff already produced all responsive documents to Defendant as part of

26  the EEO administrative process. *See also* Plaintiff's Initial Disclosures.

27

28  INTERROGATORY NO. 7: Do you allege individuals outside of your protected class were

treated more favorably than you? If so:

a. Identify every person you contend was treated more favorably, to include your understanding

of the individual's race and prior EEO activity;

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 15
11236.01 ne151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. Describe in detail the factual basis for your contention that each person identified in your response this interrogatory was treated more favorably than you.

ANSWER:  Yes.  *See* Plaintiff's answer to Interrogatory Nos. 1, 4.  Plaintiff also relies on the testimony taken during the depositions of Michael Gleysteen, Donald Robinson, Douglas Dawson, Celinez Nunez, and Cheryl Bishop and is awaiting document production by Defendants as well as to schedule additional depositions. Discovery continues.

REQUEST FOR PRODUCTION NO. 7:  Produce all documents concerning your Answer to Interrogatory No. 7.

RESPONSE:  Plaintiff already produced all responsive documents to Defendant as part of the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

INTERROGATORY NO. 8:  Please identify each and every person, including, but not limited to, all treating medical practitioners, supervisors, coworkers, friends, eyewitnesses, or family members of Plaintiff, known to Plaintiff, Plaintiff's attorneys, or any other person acting on Plaintiff's behalf, who may have personal knowledge of any facts or relevant matters pertaining to each of the allegations in the Complaint, or with whom Plaintiff has communicated in any way about the matters which are the subject of this action, and provide a summary of their knowledge and/or the substance of the communication.  Your answer should include, but is not limited to, each person who observed or was present during any instance of alleged retaliation, hostile work environment, discrimination, or violation of your rights.

ANSWER: Plaintiff objects to the scope of this request to the extent that it requests communications between Plaintiff and any health care provider.  Plaintiff has not waived her privileges with any such providers, will not be calling any provider to testify, and does not allege that Defendant's illegal conduct cause her to suffer a diagnosable condition.  *See Fitzgerald v. Cassil*, 216 F.R.D. 632 (N.D. Cal. 2003).

Subject and without waiving this objection, *see* Plaintiff's Initial Disclosures and Plaintiff's answers to Interrogatory Nos. 1-4, and the Agency's Report of Investigation, which includes emails and other documents that identify persons with personal knowledge of the events and communications in those documents to which Defendant has the same access as Plaintiff. *See* Fed. R. Civ. P. 33(d).

Defendant's First Set of Interrogatories and Requests for Production to Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case No. C18-00599-TSZ] - 16
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2   Plaintiff also relies on the testimony taken during the depositions of Michael Gleysteen,

3   Donald Robinson, Douglas Dawson, and Celinez Nunez and is awaiting document production by

4   Defendants as well as to schedule additional depositions. Discovery continues.

5   REQUEST FOR PRODUCTION NO. 8: Produce any written, signed, confirmed, verified, or

6   recorded statements made by any person identified in your answer to Interrogatory No. 8,

7   concerning any claims or allegations in the Amended Complaint or your Answers to these

8   discovery requests.

9   RESPONSE:  Plaintiff already produced all responsive documents to Defendant as part of

10  the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

11

12  INTERROGATORY NO. 9: Please give a fully itemized account of all damages, losses of any

13  kind or form, expenses, and costs that you claim were, or will be, incurred by you as a result of

14  the unlawful conduct alleged in the Amended Complaint and your Answers to these discovery

15  requests.

16  a.   Be sure to include in your answer those losses or expenses that are attributable to

17  past, present, or future medical care providers, medicines, and medical appliances.

18  b.   If the damages or losses are in the nature of pain and suffering or loss of

19  enjoyment of life, please describe in detail the nature and extent of such damages or losses.

20  c.   If the loss, expense, or cost has been or will be reimbursed, please identify the

21  person or entity that has or will pay for each loss, expense, cost or service, and the amount

22  reimbursed or to be reimbursed.

23  d.   With respect to lost wages, please set forth all damages, including without

24  limitation: (i) all claimed lost wages; (ii) all claimed lost future wages; and (iii) a description of

25  the manner and means by which you computed each such alleged amount of damages.

26  ANSWER:  Plaintiff has not yet calculated her losses with specificity.  Here methods of

27  calculation:

28  • The terms of Plaintiff's promotional detail to HQ were outlined in her MOU, so

    the lost compensation resulting from the denial of that opportunity is calculated by

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 17
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

determining the difference between the compensation that the Defendant actually paid to Plaintiff and the compensation that the Government would have paid to her during her promotional detail that year in salary and per diem.

- Her lost compensation includes the delay in promotion to Group Supervisor that results from the denial of her promotional detail to HQ, and which likewise postponed her promotion to GS 15, and the lost per diem and Marriot Hotel rewards, which require further discovery.

- Calculating the "Promotional credit" for all of her previous acting supervisory assignments and details requires further discovery.

- Calculating Plaintiff's lost retirement requires applying the Government's FERS, which requires further discovery.

- Plaintiff's emotional distress damages can be calculated only by the jury. As the Ninth Circuit jury instructions and precedent explains, there are no fixed ways to measure such damages.

REQUEST FOR PRODUCTION NO. 9:  Produce all documents concerning the damages, losses, expenses, and costs you identify in your answer to Interrogatory No. 9.

RESPONSE:  Plaintiff already produced all responsive documents to Defendant as part of the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

REQUEST FOR PRODUCTION NO. 10:   Produce all documents and written, signed, confirmed, verified, or recorded statements made or prepared by you concerning any claims or allegations in the Amended Complaint.

RESPONSE:  Apart from the transcript of Plaintiff's deposition that Defendant will need to obtain from the court reporter, Plaintiff already produced all responsive documents to Defendant as part of the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

REQUEST FOR PRODUCTION NO. 11:   Produce all documents in the nature of a diary, correspondence (including but not limited to e-mail and text messages), daily personal calendar, notes, tape recordings, videos, newspapers, or any other personal writings prepared or kept by

Defendant's First Set of Interrogatories and Requests for Production to Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case No. C18-00599-TSZ] - 18
11256.01 ne151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    you or on your behalf concerning any of the claims or allegations in the Amended Complaint or
2    your Answers to these discovery requests.

3       RESPONSE:  Plaintiff objects to the extent that this request seeks documents protected
4    by the attorney-client privilege or work product doctrine.  Subject to and without waiving these
5    objections, Plaintiff answers:  Plaintiff already produced all responsive documents to Defendant
6    as part of the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

7

8    REQUEST FOR PRODUCTION NO. 12: Produce all versions of your résumé, curriculum vitae,
9    or other documents, however titled, reflecting your education and work history created or used
10    by you over the past seven (7) years.

11       RESPONSE:  *See* Bishop 330 - 333 produced herewith.

12

13    INTERROGATORY NO. 10: If you have ever been or are now a party to any other claim or
14    lawsuit, civil or criminal, other than the present one, identify the name of the suit, the nature of
15    the suits, the court in which it was filed, and the cause number of the suit. These claims include,
16    but are not limited to, all other lawsuits, divorce or dissolution proceedings, all FTCA
17    administrative claims, Social Security claims, Veterans Affairs claims, workers' compensation
18    claims, FECA claims, disability claims, unemployment claims, or any other claim under any
19    program administered by federal, state, or local governments (or governments of other nations).

20       ANSWER:  Plaintiff objects that the scope of this request is overbroad and seeks to
21    unduly invade Plaintiff's privacy.  Subject to and without waiving these objections, Plaintiff
22    answers: She made a prior EEO charge of discrimination to the ATF in 2005, which resulted in
23    ATF rehiring her.

24

25    REQUEST FOR PRODUCTION NO. 13: Please produce all documents relating to any lawsuit
26    or any other claim identified in the answer to Interrogatory No. 10.

27       RESPONSE:  Plaintiff objects that this request is overbroad and unduly burdensome.
28    Plaintiff's prior EEO claim is fourteen (14) years old.  Moreover, Defendant already possesses
   relevant documents because Plaintiff's claim was made directly to defendant.  Accordingly,
   Defendant has equal access to these documents.

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 19
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  REQUEST FOR PRODUCTION NO. 14:  Produce all documents referenced either directly or
2  by category in your Rule 26(a) initial disclosures if they have not already been produced.

3         RESPONSE:  Plaintiff already produced all responsive documents within her possession,
4  custody, or control to Defendant.

5

6

7  REQUEST FOR PRODUCTION NO. 15:  Please produce Plaintiff's W2, 1099, and tax returns
8  for 2013 to the present.

9         RESPONSE:  Plaintiff objects that these records are wholly irrelevant to her claims or
10 damages, and the request seeks to unduly invade her privacy.

11

12 INTERROGATORY NO. 11: Are your responses and answers to the Agency's Interrogatories,
13 Requests for Admissions, and Requests for Production of Documents dated August 10, 2017 and
14 verified by you on August 2, 2017 still correct and complete?  If not, please explain how the
15 answers and responses are no longer correct and/or complete, and amend or supplement your
16 prior answer(s) to make them correct and complete.

17        ANSWER:  Yes.

18

19 REQUEST FOR PRODUCTION NO. 16:  To the extent that you have not already done so in
20 response to the preceding requests, produce all documents relating to or regarding your answers
21 to the foregoing discovery requests or to the allegations in your Amended Complaint.

22        RESPONSE:  RESPONSE:  Plaintiff already produced all responsive documents to
23 Defendant as part of the EEO administrative process.  *See also* Plaintiff's Initial Disclosures.

24

25

26        DATED this _____ day of _____, 2019.

27

28        Respectfully submitted,

          ANNETTE L. HAYES
          United States Attorney

          s/ *Priscilla T. Chan*_____

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 20
11256.01 mc151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

PRISCILLA T. CHAN, WSBA #28533

*s/ Sarah K. Morehead*
SARAH K. MOREHEAD, WSBA #29680
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Email: Priscilla.Chan@usdoj.gov
Email: Sarah.Morehead@usdoj.gov

Attorneys for Defendant

ANSWERS/RESPONSES Respectfully Submitted this 19th day of March, 2019.

MacDONALD HOAGUE & BAYLESS

By:  */s/Jesse Wing*

Jesse Wing, WSBA #27751
JesseW@MHB.com
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel: 206-622-1604
*Attorney for Plaintiff*

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 21
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**VERIFICATION**

2

3     STATE OF WASHINGTON          )

4                                                        )ss

5     COUNTY OF                               )

6

7          Cheryl Bishop, being first duly sworn on oath, upon oath states as follows: I am the

8     Plaintiff in this lawsuit.  I have read the Answers and Responses to Defendant's First Set of

9     Interrogatories and Requests for Production of Documents to Plaintiff, and have provided full,

10    truthful, and complete responses to each of them to the best of my ability pursuant to the Federal

11    Rules of Civil Procedure.

12

13    Cheryl Bishop

14

15    SUBSCRIBED and SWORN to before me this 18ᵗʰ day of March, 2019.

16

17    Jesse Wing.

18    (Print Name)

19

**JESSE A WING**
**NOTARY PUBLIC**
**STATE OF WASHINGTON**
My Commission Expires November 13, 2021

20

21    (Signature)

22    Notary Public in and for the State of Washington, residing at

23

24    King County, WA.

25    My commission expires:  11/13/21        .

26

27

28

Defendant's First Set of Interrogatories and Requests for Production to
Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case
No. C18-00599-TSZ] - 22
11256.01 mel31201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE

The undersigned declares under penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served in the manner noted below a copy of this document entitled DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF *AND PLAINTIFF'S OBJECTIONS, ANSWERS AND RESPONSES THERETO* on the following individual(s):

**Counsel for Defendants**

UNITED STATES ATTORNEY'S OFFICE
Priscilla T. Chan, WSBA #28533
Sarah K. Morehead, WSBA #29680
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Email: Priscilla.Chan@usdoj.gov
Email: Sarah.Morehead@usdoj.gov

[ ] Via Facsimile
[ ] Via First Class Mail
[X] Via Email – *per e-service agreement*
[ ] Via Messenger
[ ] Via Overnight Delivery

DATED this 19th day of March, 2019, at Seattle, Washington.

/s/Noemi Villegas
Noemi Villegas, Legal Assistant

Defendant's First Set of Interrogatories and Requests for Production to Plaintiff *and Plaintiff's Objections, Answers and Responses Thereto* [Case No. C18-00599-TSZ] - 23
11256.01 me151201

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970