# Exhibit B

Affidavit of
Bradford Devlin

I, Bradford L. Devlin make the following statement freely and voluntarily to
(Affiant's Name)

___Douglas Luehr_____, on this day of ____5/24/2018_____who has identified
(Investigator Name)                              (Month, Day, Year)

Himself/herself to me as a Contract EEO Investigator, c/o MRM EEO Services, Inc.,
assigned by the Bureau of Alcohol, Tobacco, Firearms and Explosives to conduct this
investigation _ATF-2018-00227___. I acknowledge that this statement may be used in
evidence, and I understand that this statement is not confidential and may be shown to
any party who must have access to this information in order to carry out his or her official
duties.

I am aware the accepted claim(s) for investigation is/are:

**ATF-2018-00227**

Whether Complainant was discriminated against and subjected to harassment
based on race (black) and in retaliation for prior EEO activity when on
December 1, 2017, she learned that the Resident Agent in Charge (RAC) in
Eugene, Oregon whom she filed a prior complaint against continuously makes
disparaging comments (she's unqualified, a train wreck, and ATF did not
want to hire her after she left for a position with Amazon, Inc.) about her to
others.

1.    Please state your name, position title, series and grade, work location, work
      address, work telephone number, and work email address.

   **A. Brad Devlin, Resident Agent in Charge, Eugene, Oregon Field Office
      Series: 1811, Grade GS 14, Work Location: Eugene, Oregon
      Address: 211 E. 7th Ave. Rm 460, Eugene, Ore. 97401
      Telephone: 206 251-8097 (Cell)
      Email Address: Bradford.Devlin@atf.gov**

2.    When did you start working in the Federal Government?

   **A. I have worked for the Government since June, 1999.**

3.    When did you start working in the Bureau of Alcohol, Tobacco, Firearms and
      Explosives?

Initials

**A. June, 1999.**

4.  When did you start your current position?

**A. I assumed my position as Resident Agent in Charge of the Eugene Field Office in August, 2015. However, I have been a Resident Agent in Charge since October, 2007.**

5.  Please identify who were your first and second-line supervisors (by name, position title, grade and series, work location, work address, telephone number, and email address) during the time referred to in the above claims.

**A. First Line Supervisor:**
> **ASAC Jonathan Blais**
> **Seattle Field Division, Seattle, WA**
> **Phone Number: 206 204-3208**
> **Email:** JonathanBlais@atf.gov

**Second Line Supervisor:**
> **SAC Darek Pleasants**
> **Seattle Field Division, Seattle, WA**
> **Phone Number: 206 204-3266**
> **Email:** DarekPleasants@atf.gov

6.  Do you know Cheryl Bishop, hereafter referred to as the Complainant? If so, how do you know her and state your organizational relationship to her? If not, please state, "I do not know Complainant."

**A. Yes, I know Cheryl Bishop. I was Cheryl's supervisor in 2009 for approximately 1 year when she was assigned to the Violent Gang Task Force, Seattle, WA.**

7.  For the record, what is your race?

**A. Caucasian**

8.  For the record, have you been involved in EEO activity or other protected activity or opposed unlawful discrimination? If so, what was the nature of that activity and when?

**A. Yes, Cheryl Bishop has submitted a prior EEO Complaint against me in 2016 (Investigation # ATF-2016-00924).**

9.   Complainant's complaint of discrimination was accepted based on race. To
     your knowledge, what is Complainant's race and state when and how you
     became aware of her race. If not known, please state, "I do not know."

   **A.  Cheryl Bishop is an African American.  I know this from personal
   observation.  I became aware of her race in 2002 when I first met her.**

10.  Complainant's complaint of discrimination was accepted based on retaliation
     for prior EEO or other protected activity. To your knowledge, what was
     Complainant's prior EEO or other protected activity or opposition of unlawful
     discrimination and state when and how you became aware of her prior EEO or
     other protected activity or opposition of unlawful discrimination.  If not
     known, please state, "I do not know."

   **A.  I became aware of Cheryl's prior EEO activity in 2016 when she filed an
   EEO Complaint stating I was the cause of workplace harassment and
   defamation of character based on her race.**

   **Claim:**
11.  What knowledge (if any) do you have regarding Complainant's allegation that
     on December 1, 2017, she learned that the Resident Agent in Charge (RAC) in
     Eugene, Oregon whom she filed a prior complaint against continuously makes
     disparaging comments (she's unqualified, a train wreck, and ATF did not
     want to hire her after she left for a position with Amazon, Inc.) about her to
     others?

   A.            **The knowledge I have regarding Cheryl's allegation is as
   follows: On December 1, 2017 while attending a RAC (Resident Agent in
   Charge) Conference in Seattle, I, the RAC of Eugene, Oregon was sitting
   next to Portland RAC Ben Scoll and we were discussing the possibility of
   being involuntarily sent to Headquarters (Washington, DC).  I told RAC
   Scoll that I probably would not be sent to DC due to the fact that I had
   been expelled from Headquarters as a result of a racism complaint.**

   **RAC Scoll stated that he had heard about that (me being
   expelled from Headquarters) and wanted to know 'what the whole deal
   was with Cheryl Bishop.' I gave RAC Scoll a very condensed version of
   the incident; explaining to him that an Assistant United States Attorney
   (AUSA) asked for my opinion of Cheryl Bishop.  I told the AUSA I
   thought Cheryl was a train wreck and she lacked street experience.  The
   AUSA asked for my opinion of Cheryl and I told him what I thought.  I
   also told RAC Scoll that Cheryl made an official complaint against me
   alleging that I made the "train wreck" statement based on her race and
   that I had a Swastika tattoo (I have never had a swastika tattoo).**

   **I was not making disparaging remarks about Cheryl to
   anyone.  I merely retold the events of what I told the AUSA and the fact
   that Cheryl had filed a complaint based on my statement. Cheryl Bishop**

**was present at this RAC Conference but not part of the conversation between myself and RAC Scoll nor was Cheryl close enough to hear our conversation.**

12. What role, if any, did you play in this action?

   A. **See above.**

13. If you were not involved in this action, do you know who was? Please identify by name, position title, series and grade, work location, and work contact information.

   A. **See above.**

14. If you know, did Complainant notify anyone that the comments were unwelcome? How did Complainant notify them? What was their reaction?

   A.       **Assistant Special Agent in Charge (ASAC) Jonathan Blais had told me sometime after December 1, 2017 that Cheryl had complained about my conversation with RAC Ben Scoll to Division Management, Special Agent in Charge (SAC) Darek Pleasants and ASAC Jonathan Blais.**
           **ASAC Blais informed me that SAC Pleasants had consulted with ATF Counsel regarding Cheryl's concern. ASAC Blais told me that SAC Pleasants wanted me to stop discussing Cheryl's EEO Complaint because Cheryl was still in litigation with ATF. I did not know Cheryl was involved in litigation regarding her EEO Complaint.**

15. If you know, what were the reasons for these comments?

   A. **See above.**

16. Please respond to the Complainant's allegation that these comments were due to her race and/or in retaliation. Did Complainant's race and/or prior EEO activity have anything to do with the RAC making comments about her to others?

   A.       **Cheryl's allegation that my discussion with RAC Scoll is retaliatory is ridiculous. I have avoided direct communication with Cheryl since her 2016 EEO Complaint. My discussion with RAC Scoll was not and was never intended to be based on race or any type of retaliation or harassment.**
           **My previous statement that Cheryl is a "train wreck" and has little street experience is based solely on my prior work history and direct observations while serving as Cheryl's supervisor. Cheryl's contemptuous attitude and her lack of competence as an ATF Special**



Initials

**Agent are what led me to call her a "train wreck." It had nothing to do with race.**

17.   Was Complainant treated differently than her coworkers with regards to allegations in this claim? If so, please explain.

**A. No. I have not been Cheryl's supervisor since 2009. I have not worked in the same Field Office or the same State as Cheryl for over 8 years.**

18.   If you are aware of any, please describe any ATF policy(ies) related to this issue. (Please cite relevant portions.)

**A. No.**

19.   Do you have any documents to provide for the record that support your testimony with regards to these matters? If so, please provide copies.

**A. No.**

20.   Do you have any witnesses that have **direct, firsthand knowledge** to support your testimony in these matters? If so, provide name, address, telephone number, role in, or knowledge of the issue(s) being investigated, and **briefly state in one or two sentences** what you believe that person will state.

**A. Yes. RAC Scoll will state facts which will coincide with my statement.**

> **Resident Agent in Charge**
> **Benjamin Scoll**
> **1201 NE Lloyd Blvd Rm 700**
> **Portland, Or  97232**
>
> **Office Phone: 503 331-7870**

21.   Do you have anything to add, which is not covered above, concerning any of Complainant's allegations?

A.          **Cheryl Bishop has filed two EEO Complaints against me and has complained about me to Division Management on two separate occasions: one complaint for inappropriately spending government funds and the other complaint was that Cheryl feared I would subject her to "workplace violence."**

          **Because of Cheryl's absurd complaints and allegations, I have been subjected to not only EEO investigations but also an Internal Affairs Investigation for disparaging comments based on race.**



Initials

I was previously selected for a Headquarters position with an increase in pay just prior to Cheryl's first EEO Complaint. I later lost this position and was expelled from Headquarters for stating that Cheryl was a "train wreck" and because the deciding official believed I was racist and possessed a swastika tattoo. Neither of which are true. In addition, my past supervisor informed me that, as a result of Cheryl's EEO complaint and the Internal Affairs investigation, my name is now "mud."

While Cheryl was promoted to a supervisory position after her initial EEO complaint against me; I was subjected to an Internal Affairs investigation, was expelled from a Headquarters position, lost a pay increase, my reputation was tarnished and had my career plans significantly altered. Who is being harassed? Not Cheryl Bishop.

I have reviewed this statement, which consists of __6__ pages, and hereby solemnly swear and affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_B. Dawlin_                                    _5/24/18_

(Signature of Affiant)                              (Date)

(Signature of Investigator/Witness)

Initials

Affidavit of

Michael Gleysteen

I, Michael Gleysteen make the following statement freely and voluntarily to
(Affiant's Name)

Caryl D. Wooten, on this day of October 27, 2016 who has identified
(Investigator Name)          (Month, Day, Year)

herself to me as a Contract EEO Investigator, c/o MRM EEO Services, Inc., assigned by
the Bureau of Alcohol, Tobacco, Firearms and Explosives to conduct this investigation
ATF-2016-00924. I acknowledge that this statement may be used in evidence, and I
understand that this statement is not confidential and may be shown to any party who
must have access to this information in order to carry out his or her official duties.

I am aware the accepted claim(s) for investigation is:

>     Whether the Complainant was discriminated against and subjected to
>     harassment based on race (African-American) and in reprisal for opposing
>     discriminatory practices of the Agency when on June 14, 2016, management
>     changed the term to a one year promotional detail from Seattle, WA to
>     Washington, DC, as a Program Manager, GS-14/5.

1. Please state your name, position title, series and grade, work location, work
   address, work telephone number, work email address and the dates you have
   been in this position.

**A. Michael Gleysteen, Assistant Director (Field Operations), Senior Executive
Service, 99 New York Ave., NE, Washington D.C. 20226, Telephone 202-648-
8324, mobile 816-853-8474, e-mail mike.p.gleysteen@atf.gov.**

2. How long have you worked in the Government?

**A. Approximately 27 years.**

3. How long have you worked at the Bureau of Alcohol, Tobacco, Firearms and
   Explosives?

**A. Approximately 25 years.**

4. Please state the specific date you assumed your current position.

**A. I became the Assistant Director of Field Operations in April 2015.**

Page 1 of 5

M G
Initials

5.  Please identify your current first and second-line supervisor by name, position title, series and grade, work location, telephone number, and email address.

A.  **Currently, Mr. Turk (Associate Deputy Director, 1811 job series) is my first line supervisor and Mr. Brandon (Deputy Director, 1811 job series) is my second line supervisor. Mr. Turk's email is Ronald.Turk@atf.gov and Mr. Brandon's email is Thomas.Brandon@atf.gov. Both of them may be reached at (202) 648-8700.**

6.  Do you know Cheryl Bishop, hereafter referred to as Complainant? If so, how do you know her and state your current organizational relationship to her? If not, please state; "I do not know Complainant."

A.  **She is an employee of the Field Operations Directorate and she is located in the Seattle Field Division. I oversee the Field Operations Directorate and she is one of approximately 3900 employees in our Directorate.**

7.  Please state your organizational relationship to Complainant on June 14, 2016.

A.  **On or about June 14, 2016, Ms. Bishop was assigned to the ATF Seattle Field Division, which during this period of time, was led by Doug Dawson, Special Agent in Charge.**

8.  Do you know the Complainant's race? If so, please state her race.

A.  **The EEO office informed me that she was an African American female.**

9.  For the record, what is your race?

A.  **White**

10. Do you know if the Complainant has participated in the EEO process before filing the instant complaint?

A.  **I was not aware that Ms. Bishop was engaged in any EEO activity until I was contacted by the ATF EEO office and the EEO office told that Ms. Bishop was filing a EEO complaint.**

11. Please state when (date) and how you first became aware of the Complainant's participation in the EEO process?

A.  **In following up on my answer to question 10 - I believe the contact with the ATF EEO office was in September 2016. I believe the ATF EEO office would have the precise date.**

M.G.
_____
Initials

12. Were you directly involved in Complainant's prior EEO complaint? If so please explain your involvement/role in the complaint.

A. **No. The only complaint that I am aware of involving Ms. Bishop is the one that is addressed in this declaration.**

13. Have you ever participated in the EEO process before the instant complaint? If so please state when and describe your role (i.e., Complainant, Responding Management Official, Witness, etc.)

A. **I have been both a witness and a responsible management official in several EEO matters.**

14. Please state and describe your role in the decision to change the Complainant's term(s) to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.

A. **At the request of Associate Deputy Director Turk, I spoke to several people in Field Operations attempting to get Ms. Bishop a developmental detail to ATF headquarters. I was told that Ms. Bishop was interested in becoming a supervisor and she wanted a developmental detail that would assist her with these endeavors. Ms. Bishop was (and currently is) a grade 13 Special Agent Canine Handler (SACH) and was/is assigned an ATF duty K-9 trained to detect explosives.**

**On or about April 2016, Assistant Director (AD) Roger Beasley (Office of Science and Technology "OST") expressed interest in having Ms. Bishop come to OST on detail. During this period of time, I recall speaking to AD Beasley and he said that he was uneasy with some aspects of the detail as Ms. Bishop wished to bring her ATF duty K-9 to the proposed assignment with OST at ATF national headquarters. My understanding is that Ms. Bishop indicated to OST managers that she would have to "work" with the K-9 during her detail to OST.**

**Ms. Bishop has a food-reward K-9, the K-9 only eats when it finds explosives -when it is working or training. This duty takes a significant amount of training each and every day to maintain proficiency standards. ATF SACH employees are also paid overtime pay for their work on weekends due to this requirement.**

Note:

**TRAINING:  ATF's food-reward paradigm is based on proven Pavlovian principles. Our training regime was developed with, and based upon, principles developed by the Connecticut State Police and validated after years of scientific oversight.  It was determined that in order for an explosive detection canine to operate at 100 percent**

Page 3 of 5

M.G.
Initials

proficiency, four to six hours a day of odor recognition and operational training is required. Six hours is ideal when exercise and physical fitness training is taken into consideration.

MAINTENANCE "TRAINING": ATF's 2 hour per day maintenance training policy was developed for use on weekends and holidays only. Although 4-6 hours of training per day is ideal, ATF made this exception because it would be fiscally prohibitive to pay SACHs 12 hours of scheduled overtime per weekend. SACHs have always been encouraged to train over 2 hours each day on weekends and/or to train additional hours during the week to make up for the hours they lose during the weekend.

I also recall speaking to Charlie Patterson (Acting Deputy Assistant Director Programs) about Ms. Bishop's K-9 handler duties. The SACH job announcement that Ms. Bishop applied under (dated 5/6/13), specifically stated that the handler must be willing to serve a minimum 5-year commitment to the ATF Canine Detection Program. During my discussions with Mr. Patterson, I believe we also discussed alternatives that included Ms. Bishop returning her ATF issued K-9 in order to help her out with the detail. Normally, we would not allow an ATF K-9 handler to prematurely step out of the K-9 program because of the significant time and financial investment with both the handler and the K-9 but we were willing to make an exception for Ms. Bishop to help her out. For the record, the duty K-9s of ATF are not personal property and are U.S. government property.

Later, I received an e-mail from AD Beasley stating that Ms. Bishop was declining the detail opportunity. This was the extent of my involvement with this process.

15. Please identify the official making the final decision to change the Complainant's term(s) to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.

A. I do not know. You might want to check with AD Beasley or Special Agent in Charge Doug Dawson of the Seattle Field Division.

16. Please state when and how Complainant was notified of the change to the term(s) to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.

A. I do not know. You might want to check with AD Beasley or Special Agent in Charge Doug Dawson of the Seattle Field Division.

Page 4 of 5


Initials

17. Please state the specific reason(s) for the change in the term(s) to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.

**A. I do not know. You might want to check with AD Beasley or Special Agent in Charge Doug Dawson of the Seattle Field Division.**

18. Were the Complainant's race or prior participation in the EEO process considered in making the decision to change the term(s) to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5?

**A. I have no reason to believe that any decision involving Ms. Bishop was based on race, gender, or any prior EEO activity.**

19. Have you changed the term(s) to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5 of any other employee in the past two years? If so please identify the employee by name, position title, grade, work location, if known race, prior EEO activity, and state the date when the term(s) of the detail were changed and the reason(s) for the change in the term(s). If not please state, "No."

**A. I do not recall of any similarly situated employees (e.g. ATF K-9 handler) on detail that I have had any direct involvement with.**

20. Do you have any witnesses that have **direct evidence or direct knowledge** to support your responses to the issue accepted for investigation in the instant complaint? If so, please state his/her name, position titles, work address, telephone numbers, email address and **briefly state** in one or two sentences what that person will state. If not, please state, "No."

**A. You might want to check with AD Beasley and/or Special Agent in Charge Doug Dawson of the Seattle Field Division.**

21. Do you have any documents to provide to support changing the term(s) to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5 on or around June 14, 2016? If so, please provide those documents. If not please state, "No."

**A. I have located some e-mails (attached) and I am not immediately aware of any other documents; however, I have only performed a cursory search of my saved e-mailed.**

22. Do you have anything to add related to the accepted claim that is not covered above?

Page 5 of 5

M.G.
Initials

**A. No.**

I have reviewed this statement, which consists of 6 pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

Michael Gluckstern (Signature of Affiant) 10/27/16 (Date)

(Signature of Investigator/Witness

Initials

Amended Affidavit of

Michael Gleysteen

I, Michael Gleysteen make the following statement freely and voluntarily to
(Affiant's Name)

Caryl D. Wooten, on this day of December 1, 2016 who has identified
(Investigator Name)                    (Month, Day, Year)

herself to me as a Contract EEO Investigator, c/o MRM EEO Services, Inc., assigned by
the Bureau of Alcohol, Tobacco, Firearms and Explosives to conduct this investigation
ATF-2016-00924. I acknowledge that this statement may be used in evidence, and I
understand that this statement is not confidential and may be shown to any party who
must have access to this information in order to carry out his or her official duties.

I am aware the accepted **amended** claim(s) for investigation is:

> Whether the Complainant **(Cheryl Bishop)** was discriminated against and
> subjected to harassment based on race (African-American) and in reprisal for
> opposing discriminatory practices of the Agency when the following
> harassing events occurred:
>
> 1) On June 14, 2016, management changed the term to a one year
>    promotional detail from Seattle, WA to Washington, DC, as a Program
>    Manager, GS-14/5.
>
> 2) On or around May 3, 2016, management retaliated against Ms. Bishop
>    when she forwarded a memorandum to the management officials in
>    Seattle, WA alleging workplace harassment and defamation of
>    character.

1. Did you receive and/or read the memorandum that the Complainant forwarded
   to the management officials in Seattle, WA, where she alleged workplace
   harassment and defamation of character?

**A. No. I am not aware of any such complaint alleging workplace harassment
and defamation of character. I did not receive and/or read any such
memorandum.**

2. Please state when you received and/or read the memorandum. If you did not
   receive and/or read the memorandum please state, you have no knowledge
   about the memorandum.



Page 1
Ex. B to Declaration of
Sarah Morehead
C18-00599-TSZ - 19



Initials

155  155

**A. Please see my response to answer number 1.**

3. Please explain your response to the memorandum and any action you took after reading the memorandum.

**A. Please see my response to answer number 1.**

I have reviewed this statement, which consists of 2 pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

Michel Elegot

(Signature of Affiant)

12/1/16

(Date)

(Signature of Investigator/Witness)

M G
Initials

Affidavit of

Raphael Martinez

I <u>Raphael Martinez</u> make the following statement freely and voluntarily to Caryl D. Wooton, on this day

(Affiant's Name)                                                                              (Investigator Name)

Of February 26, 2016 who has identified herself to me as a Contract EEO Investigator, c/o MRM EEO
Services, Inc., assigned by the Bureau of Alcohol, Tobacco, Firearms and Explosives to conduct this
investigation <u>ATF-2016-00924.</u> I acknowledge that this statement may be used in evidence, and I
understand that this statement is not confidential and may be shown to any party who must have access
to this information in order to carry out his or her official duties.

I have been made aware that the accepted claim(s) for investigation are:

> Whether Complainant **(Cheryl Bishop)** was discriminated against and subjected to harassment
> based on race (African-American) and in reprisal for opposing discriminatory practices of the
> Agency when the following harassing events occurred:
>
> 1) On June 14, 2016, management changed the term to a one-year promotional detail from
>    Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.
>
> 2) On or around May 3, 2016, management retaliated against Ms. Bishop when she forwarded
>    a memorandum to the management officials in Seattle, WA alleging workplace harassment
>    and defamation of character.

1. What is your name, position title, series and grade, organization, and organizational address?

   A. **Raphael Martinez, Branch Chief (GS-1811-14), National Canine Division, 122 Calvary Dr.,
   Front Royal, VA 22630, (202)648-6571, raphael.martinez@atf.gov.**

2. How long with ATF?

   A. **I started with ATF in the fall of 1992. Approximately 24 years with ATF.**

3. How long in your current position?

   A. **Three years.**

Page 1 of 3

Initials

4.  Who were your first and second-line supervisors, with titles, in June 2016?

    A.  First Line: John F. Ryan, Division Chief (GS-1811-15), 122 Calvary Drive, Front Royal, VA 22630, 202-648-5981, john.f.ryan@atf.gov
        Second Line: Don Robinson, Special Agent in Charge NCETR, (GS-1811-15), Huntsville, AL, 256-261-7500, Donald.Robinson@atf.gov.

5.  Do you know Cheryl Bishop, hereafter referred to as the Complainant? If so, in what capacity and for how long (dates)?

    A.  I know Ms. Bishop. I first met Ms. Bishop in 2014. Ms. Bishop held the position of Special Agent Canine Handler and I was starting my current position as Branch Chief, National Canine Division. I have known Ms. Bishop in this capacity between 2014 to 2016.

6.  What is Complainant's Race?

    A.  I do not know Ms. Bishop's race. We have never discussed it.

7.  For the record, what is your race?

    A.  I am White of Hispanic descent.

8.  Do you know if the Complainant has participated in the EEO process before filing the instant complaint?

    A.  I do not know whether Ms. Bishop previously participated in the EEO process.

9.  Please state when (date) and how you first became aware of the Complainant's participation in the EEO process?

    A.  Today December 2, 2016, when I received a phone message and email from EEO Investigator Caryl D. Wooten.

10. Were you directly involved in Complainant's prior EEO complaint? If so please explain your involvement/role in the complaint.

    A.  I do not know of Ms. Bishop's prior EEO complaint.

11. Have you ever participated in the EEO process before the instant complaint? If so please state when and describe your role (i.e., Complainant, Responding Management Official, Witness, etc.)

    A.  I have been involved in prior EEO activity in February 2016 as a witness.

Page 2 of 3

*R M*

Initials

12. What direct knowledge, if any, do you have of Complainant's following claims:

    a. On June 14, 2016, management changed the term to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.

**A. I do not know what the terms for the one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5 were. I do not know if the terms were changed.**

    b. On or around May 3, 2016, management retaliated against Ms. Bishop when she forwarded a memorandum to the management officials in Seattle, WA alleging workplace harassment and defamation of character.

**A. I was not aware that Ms. Bishop authored or forwarded a memorandum to management officials in Seattle, WA. I also do not know of their response to her memorandum.**

13. Have you observed any member of management discriminate against Complainant because of his/her race?

**A. I have not observed any member of management discriminate against Ms. Bishop due to her race.**

14. Do you have anything to add that is not covered above, on the claim(s) of this complaint?

**A. As I was not involved in either of these circumstances I do not have anything to add.**

I have reviewed this statement, which consists of <u>03</u> pages, and hereby solemnly ____swear _____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____         12-12-2016

(Signature of Affiant)                                   (Date)

_____

(Signature of Investigator/Witness)

Page 3 of 3

RM

Initials

Ex. B to Declaration of
Sarah Morehead
C18-00599-TSZ - 23         338

Affidavit of
John F. Ryan

I, John F. Ryan, make the following statement freely and voluntarily to
(Affiant's Name)

Caryl D. Wooten, on this day of January 12, 2017 who has identified
(Investigator Name)                    (Month, Day, Year)

herself to me as a Contract EEO Investigator, c/o MRM EEO Services, Inc., assigned by
the Bureau of Alcohol, Tobacco, Firearms and Explosives to conduct this investigation
ATF-2016-00924. I acknowledge that this statement may be used in evidence, and I
understand that this statement is not confidential and may be shown to any party who
must have access to this information in order to carry out his or her official duties.

I am aware the accepted claim(s) for investigation are:

> Whether the Complainant (**Cheryl Bishop**) was discriminated against and
> subjected to harassment based on race (African-American) and in reprisal for
> opposing discriminatory practices of the Agency when the following
> harassing events occurred:
>
> 1) On June 14, 2016, management changed the term to a one-year
>    promotional detail from Seattle, WA to Washington, DC, as a Program
>    Manager, GS-14/5.
>
> 2) On or around May 3, 2016, management retaliated against Ms. Bishop
>    when she forwarded a memorandum to the management officials in
>    Seattle, WA alleging workplace harassment and defamation of
>    character.

1. What is your name, position title, series and grade, organization, and
   organizational address?

A. John Francis Ryan
   Division Chief, National Canine Division
   1811-15
   NCD
   122 Calvary Drive
   Front Royal, VA 22630

2. How long with ATF?

A. 29 years, 8 months.

Page 1 of 4

Initials

3. How long in your current position?

A. 4 years, 4 months

4. Who were your first and second-line supervisors, with titles, in June 2016?

A. Donald Robinson (1st line)
   Special Agent in Charge
   National Center for Explosives Training and Research

   Daniel Kumor (2nd line)
   Deputy Assistant Director Programs

5. Do you know Cheryl Bishop, hereafter referred to as Complainant? If so, in what capacity and for how long (dates)?

A. I first met the Ms. Bishop in 2012 while conducting an office review in the Seattle Field Division. She was a liaison to the Review Team. I have had several brief interactions with Ms. Bishop since that date in my capacity as Chief of the National Canine Division.

6. What is Complainant's Race?

A. I am not aware of Ms. Bishop's race.

7. For the record, what is your Race?

A. White/Caucasian.

8. Do you know if the Complainant has participated in the EEO process before filing the instant complaint?

A. No.

9. Please state when (date) and how you first became aware of the Complainant's participation in the EEO process?

A. The date I received this Affidavit request on December 2, 2016.

10. Were you directly involved in Complainant's prior EEO complaint? If so please explain your involvement/role in the complaint.
A. No

11. Have you ever participated in the EEO process before the instant complaint? If so please state when and describe your role (i.e., Complainant, Responding Management Official, Witness, etc.)

Page 2 of 4

Initials

A. During my 18 years as a Manager, I have served as a witness in several EEO matters. I have not retained records in any of the matters. Please refer to ATF's EEO Office for more details.

B. What direct knowledge, if any, do you have of Complainant's following claims:

a. On June 14, 2016, management changed the term to a one-year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.

A. I was told by management officials that Ms. Bishop was seeking a Program Manager Detail in HQ. I have no knowledge of the term or grade for the detail.

b. On or around May 3, 2016, management retaliated against Ms. Bishop when she forwarded a memorandum to the management officials in Seattle, WA alleging workplace harassment and defamation of character.

A. No direct knowledge concerning this claim.

C. Have you observed any member of management discriminate against Complainant because of his Race?

A. No, I have not observed any manager discriminate against Ms. Bishop due to her race.

D. Do you have anything to add that is not covered above, on the claim(s) of this complaint?

A. No.

I have reviewed this statement, which consists of 3 pages, and hereby solemnly

_____swear _____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

(Signature of Affiant)

$\frac{1}{12}$/16

(Date)

Initials

Page 3 of 4

_____

(Signature of Investigator/Witness

Page 4 of 4



Initials