# EXHIBIT 13

Affidavit of
Cheryl Bishop

I, Cheryl Bishop make the following statement freely and voluntarily to
   (Affiant's Name)

Caryl D. Wooten, on this day of  DEC 6th, 2016 who has identified
   (Investigator Name)          (Month, Day, Year)

herself to me as a Contract EEO Investigator, c/o MRM EEO Services, Inc., assigned by the Bureau of Alcohol, Tobacco, Firearms and Explosives to conduct this investigation ATF-2016-00924. I acknowledge that this statement may be used in evidence, and I understand that this statement is not confidential and may be shown to any party who must have access to this information in order to carry out his or her official duties.

I am aware the accepted **amended** claim(s) for investigation is:

> Whether the Complainant **(Cheryl Bishop)** was discriminated against and subjected to harassment based on race (African-American) and in reprisal for opposing discriminatory practices of the Agency when the following harassing events occurred:
>
> 1) On June 14, 2016, management changed the term to a one year promotional detail from Seattle, WA to Washington, DC, as a Program Manager, GS-14/5.
>
> 2) On or around May 3, 2016, management retaliated against Ms. Bishop when she forwarded a memorandum to the management officials in Seattle, WA alleging workplace harassment and defamation of character.

1. Please describe the specific act of retaliation that occurred on or around May 3, 2016 that you believe to be discriminatory.

A. I submitted a complaint of racial discrimination/harassment by ATF Supervisor Brad Devlin summarized and outlined in a memorandum (dated May 3rd, 2016) addressed to ATF Seattle Field Division Management (ASAC Celinez Nunez and SAC Douglas Dawson). A copy of this memorandum was attached to my initial Affidavit. Retaliation for my complaint occurred soon afterwards.

Before June 14, 2016, ATF management had approved me for a one-year temporary promotional detail that would fulfill the requirement for future promotion to the GS 15 level, and that as part of this detail I would bring and maintain my explosives detection canine so that I would then return to Seattle as a GS 14, and resume my

Page 1 of 4

Initials

J1256.01 J1018502.002

position as an Explosives Detection Canine Handler. These are the terms of the MOU that was approved.

However, on June 14, 2016, (conveyed by ASAC Nunez) ATF management changed the conditions of my promotional detail, and I was advised that I would be required to permanently retire my current canine, sign a new five-year commitment to continue as a canine handler (through mandatory retirement), thereby preventing me from taking any promotion, and I would have to repeat the 16-week canine handler course with a new dog in spite of the documented performance and certifications of my current canine.

Five days after I was first informed of the unfair and discriminatory changes to my temporary promotion, on June 19, 2016, I was told (via ASAC Nunez on behalf of SAC Dawson) that when I return from my D.C. assignment I will also have to relocate to Portland, which would place me at greater risk of continuous contact with Brad Devlin, and at times be subject to his supervision. This condition requiring that I relocate to Portland was placed on the promotional detail by SAC Dawson following statements made by him as stated in response to question number 16 of my initial Affidavit. Specifically: SAC Dawson told me that (1) Supervisor "Devlin has always been a separatist"; ASAC Nunez reported to me that SAC Dawson had stated, Supervisor "Devlin does not like black people."

ATF has never given me a written explanation. Program Manger Raphael Martinez (who was aware of the promotional detail and previously congratulated me on receiving the promotional detail) called me and told me that a decision had been made to no longer support me in the promotional detail and that I would have to permanently retire my canine. Manager Martinez told me this had been approved by senior executives and Deputy Director Turk, or words to that effect. ASAC Nunez gave me different explanations during different conversations. She said that management did not want "Lazy Canine Handlers to go on details thinking that they could collect per diem. But, I'm not talking about you," or words to that effect. She later said that the Agency "does not want to set a precedent," or words to that effect. Finally, she told me that it "is impossible to do both because the dog must work," or words to that effect.

I am not aware of any Canine Handler who has been prevented from performing a non-canine handling detail on any of the grounds that ASAC Nunez gave as explanations for the change in terms of my promotional detail. Jason Johnson, former lead Trainer at ATF National Canine Division has knowledge of other canine handlers who were approved for details and for keeping their dogs in service during the details. Mr. Johnson is now employed by TSA. I explained Mr. Johnson's knowledge about this to ASAC Nunez on June 15, 2016. I do not know the prior EEO activity based on race of these canine handlers, but I believe there is only one other African-American agent (and he is male) of about 35 canine handlers so odds are very strong that none these handlers brought EEO activity based on their race as African-American.

Page 2 of 4

Initials

11256.01 jl018502.002

2. Please identify the management official(s) you deem to be responsible for the alleged retaliation when you forwarded a memorandum to the management officials in Seattle, WA alleging workplace harassment and defamation of character

A. I believe the management officials who are responsible include: Michael Gleysteen, Assistant Director of Field Operations; Donald G. Robinson, SAC of National Center for Explosives, Training and Research; and SAC Douglas Dawson of Seattle. There may be others who participated in the decision that a proper investigation would reveal. Program Manager Raphael Martinez and SAC John Ryan of the ATF National Canine Division and ASAC Nunez conveyed the discriminatory change in terms of my promotional detail so they had knowledge of these changes. Without a proper investigation, I do not know their levels of involvement in the discriminatory decision.

3. Do you have any witnesses that have **direct evidence or direct knowledge** of the retaliation against you when you forwarded a memorandum to the management officials in Seattle, WA alleging workplace harassment and defamation of character? If so, please state his/her name, position title, work address, telephone numbers, email address and **briefly state** in one or two sentences what that person will state. If not, please state, "No."

A. AD Gleysteen, SAC Dawson, SAC Robinson, Program Manager Martinez, SAC Ryan, ASAC Nunez, as explained above in response to question numbers: 15

AD Roger Beasely and Acting Deputy Assistant Director Francis Frande of ATF's Office of Science and Technology in Washington, D.C., approved my promotional detail to work for them. AD Beasley told me during phone calls and through emails that maintaining my explosives detection canine during the promotional detail had been approved by senior executives with Field Operations, AD Gleysteen, National Canine Division and Seattle Division SAC Dawson, and ASAC Nunez. I am aware that AD Beasley has additional emails from Senior Executives with Field Operations and ATF National Canine Division approving maintenance of my canine during the detail, which the ATF later retracted in the conditions that it placed on me.

Jason Johnson, former lead Trainer at ATF National Canine Division has knowledge of other canine handlers who were approved for details and for keeping their dogs in service during the details. Mr. Johnson is now employed by TSA.

Deputy Assistant Director Daryl McCrary with ATF Office of Professional Responsibility and Security Operations told me that he was in attendance at a senior executive staff meeting at HQ in Washington, DC, when Deputy Director Turk discussed me and my promotional detail. DAD McCrary stated that DD Turk had said he was fully supportive of me receiving a promotional detail and that my maintaining the canine during a promotional detail was not an issue. DAD McCrary told me that

Page 3 of 4

Initials

11256.01 jl018502.002

in light of what DD Turk had said, he was surprised that conditions had been imposed on my promotional detail.

Group Supervisor in Eugene, Oregon Brad Devlin, about who I made racial harassment complaints, may have knowledge.

4. Do you have any documents to provide to support your allegation of retaliation when you forwarded a memorandum to the management officials in Seattle, WA alleging workplace harassment and defamation of character. If yes, please provide those documents. If no please state, "No."

A. Please see all of the documents submitted together with my initial Affidavit.

I have reviewed this statement, which consists of __4__ pages, and hereby solemnly __✓__ swear __✓__ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____        12-6-16
(Signature of Affiant)                                                (Date)


_____
(Signature of Investigator/Witness)